## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC, *et al.*,[1] | Case No. 26-90621 (CML) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, EMPLOYMENT TAXES, OTHER EMPLOYEE-BENEFIT OBLIGATIONS, AND GRANTING RELATED RELIEF

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:00 A.M. (PREVAILING CENTRAL TIME) ON JUNE 30, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on JUNE 30, 2026 at 9:00 a.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Avenue, Houston, TX 77002.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

Camp Mystic, LLC, and its debtor affiliates, as debtors and debtors in possession in above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their proposed counsel, file this *Emergency Motion for Order Authorizing the Debtors to Pay Prepetition Wages, Employment Taxes, Other Employee-Benefit Obligations, and Granting Related Relief* (the "**Motion**").  In support of this Motion, the Debtors respectfully state as follows:

## I.  SUMMARY

1.      This Motion relates to payroll and other employment-related expenses earned from June 1, 2026 through June 30, 2026.  The Debtors have eleven (11) employees (the "**Employees**"),[2] all of whom are on salary. None of the Employees are affiliates of the Debtors, and they include individuals needed to care for and maintain the Debtors' grounds and facilities and a media coordinator.  The Debtors' Employees are paid monthly on the last day of the month, and the next payroll is due on June 30, 2026, which will cover the pay period of June 1, 2026 through June 30, 2026.  The Debtors use a five (5) day work week, and June 2026 has twenty-two (22) workdays.  Consequently, the pay period includes seventeen (17) prepetition workdays and five (5) post-petition workdays.

2.      The Debtors[3] also pay a monthly stipend ("**President's Stipend**") of $2,000 to William Neel Bonner, III, the President of Natural Fountains Properties, Inc.  The President's Stipend is paid to Mr. Bonner as compensation for his services as the President of Natural Fountains Properties, Inc.  The President's Stipend is also paid monthly and includes seventeen (17) prepetition workdays and five (5) post-petition workdays.

---

[2] Debtor Camp Mystic, LLC directly employs all of the Employees.

[3] Debtor Natural Fountains Properties, Inc. employs the President as a 1099 independent contractor and pays the President Stipend.

3.      By this Motion, the Debtors seek authorization from the Court to: (a) pay the unpaid prepetition portion of the Debtors' payroll for salaries earned from June 1, 2026 through June 23, 2026, (b) pay employer taxes associated with the prepetition salaries requested to be paid herein, (c) pay the unpaid prepetition portion of the President's Stipend, equal to approximately $1,545.45, (d) pay employment benefits, (e) permit Employees to use, post-petition, paid time off, holidays, and sick leave days that they accrued prepetition, and (f) reimburse any *de minimis* expenses incurred prepetition by the Employees in the ordinary course of business (collectively, the "**Prepetition Workforce Obligations**").

## II.  PRELIMINARY STATEMENT

4.      The continued loyalty of a debtor's employees is a necessary component of any successful reorganization.  The filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees, most of whom are not familiar with the nuances of bankruptcy that many practitioners often take for granted.  Such stress and uncertainty often cause poor employee morale at a time when the debtor needs its employees to be most loyal.  Moreover, some employees live paycheck to paycheck and will suffer immediate adverse consequences if they fail to receive their full compensation.

5.      Honoring the Prepetition Workforce Obligations will minimize the hardship that Employees will certainly endure if payroll or benefits are interrupted.  Honoring such obligations will also prevent the wholesale loss of Employees that may ensue as a result of the Employees' loss of the reasonable expectation that they will be compensated for services rendered.  As such, the Debtors seek to continue paying Prepetition Workforce Obligations in the ordinary course and to direct the bank at which the Debtors maintains its accounts to receive, process, honor, and pay all payroll and workforce related checks, drafts, wires, or automated clearing house transfers

(provided sufficient funds are available to honor all such payments), without regard to when the applicable payroll check was issued.

### III.  JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over the Debtors, their estates, and these chapter 11 cases (the "**Chapter 11 Cases**") pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The predicates for the relief requested are sections 105(a), 363(b), 507(a)(4), 507(a)(5), and 541(d) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003(b) and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### IV.  BACKGROUND

8.      Originally built in 1926, the Debtors own and operate a private Christian summer camp for girls named Camp Mystic in the hill country of west-central Texas.

9.      On June 24, 2026 (the "**Petition Date**"), the Debtors commenced voluntary cases under the Bankruptcy Code. The Debtors are operating their business and managing their properties as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

10.     The Debtors filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules. [See ECF 12].

11.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of Karen Nicolaou, Debtors' Chief Restructuring Officer, in Support of Certain First-Day Pleadings* (the "**First Day Declaration**"),[4] incorporated herein by reference.

## V.  THE PREPETITION WORKFORCE OBLIGATIONS

12.     The Debtors currently employ eleven (11) full time employees, all of whom are on salary.  As of the Petition Date, the Debtors owed to the Employees certain prepetition obligations, including without limitation, the following: (a) amounts for salaries, and other compensation; (b) expense reimbursements, (c) maintenance of employee health insurance and other similar benefits; (c) accrued and unused vacation pay or paid time off; (d) and other miscellaneous work-related expenses and benefits.  As of the Petition Date, the Debtors also owed the President of Natural Fountains Properties, Inc., the prepetition portion of the President's Stipend, all as more particularly described below.

## A.     Worker Payroll Obligations

13.     The Debtors' next payroll for salaries will be due Tuesday, June 30, 2026 (the "**June 30 Payroll**").  The June 30 Payroll covers the period from June 1, 2026 through June 30, 2026, which includes seventeen (17) prepetition workdays and five (5) post-petition workdays.  The June 30 Payroll is approximately $52,740.45 in gross wages and other benefits[5] for the eleven (11) salaried Employees.  From that amount, the Debtors will withhold the required employee and employer portions for federal income taxes, social security, and Medicare

---

[4] The First Day Declaration is forthcoming.

[5] The gross payroll figure includes the approximately $1,292.23 in "insurance allowances" and the approximately $660.23 in employer contributions to certain of its Employee's individual retirement accounts (described *infra*).

in the aggregate amount of approximately $11,077.64[6] and remit same to the appropriate taxing authorities.  The Debtors will also withhold and remit all such other amounts as designated by the Employees or judicial authorities.  The prepetition portion of the June 30 Payroll is approximately $40,753.98.[7]

14.     Accordingly, the Debtors seek authority to pay the foregoing prepetition salaries and employee benefits and any related payroll tax obligations that may have accrued as of the Petition Date and remain unpaid (the "**Unpaid Compensation**") to the Employees.  This request relates solely to Employees who are employed as of the Petition Date.

15.     None of the payments to Employees for Unpaid Compensation will exceed the $17,150.00 priority claim cap provided in section 507(a)(4)(A) of the Bankruptcy Code.

16.     In addition, the Debtors' prior payroll was made on May 31, 2026.  Although it was several weeks before the Petition Date, the Debtors believe that all the payroll checks issued on May 31, 2026, may not have been presented to and honored by the applicable drawee bank.  Accordingly, it is possible that some of the Debtors' prepetition payroll checks remain in float post-petition, which banks will not honor absent explicit authority and direction to do so.  Although the Debtors do not know the precise amount of prepetition checks that remain in float and owing for past payroll periods, to the extent any such amounts remain owing, the Debtors submit that the administrative costs resulting from determining such information with precision substantially exceed any benefit to be gained from such exercise.  Accordingly, the Debtors request the authority to honor payroll checks in float but not presented or otherwise honored

---

[6] The $11,077.64, which is not broken down between prepetition and post-petition amounts, includes $3,842.00 in required withholding for federal employment taxes, $5,864.18 in required employee and employer withholding for social security, and $1,371.46 in required employee and employer withholding for Medicare.

[7] This figure represents the Debtors' gross payroll for this period ($52,740.45) divided by twenty-two (22) workdays (or $2,397.29 per day) times 17 prepetition workdays, which equals $40,753.98.

timely for payment.

**B.      Employee Expense Reimbursement**

17.      Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed Employees for valid business expenses incurred in the ordinary course of their employment, including office supplies or other expenses relating to the maintenance of the camp (the "**Reimbursable Expenses**").

18.      To the best of the Debtors' knowledge, as of the Petition Date, no prepetition Reimbursable Expenses owing to current Employees are outstanding.  Out of an abundance of caution, however, in the event any Employee applies, post-petition, for reimbursement of valid prepetition business expenses, the Debtors seek permission to make reimbursements to Employees for valid business expenses up to $1,500 total.

**C.      Employee General Welfare Benefits**

19.      The Debtors provide the Employees with various general welfare benefits, such as medical insurance, vacation pay, and other paid leave (the "**Employee Benefits**").   These additional benefits are an integral and essential component of each Employee's total compensation package and are described in greater detail below with estimates of any prepetition amounts attributable to such benefits.   Temporary or permanent cessation of such additional benefits would drastically disrupt the overall morale of the employees and would hinder the Debtors' reorganization efforts.   Consequently, the Debtors request authority to pay any prepetition amounts attributable to such benefits—as further described below—as and when such amounts become due.

   **i.      Employee Health Insurance**

20.      The Debtors provide health insurance benefits to its Employees.   For certain

Employees who do not obtain their insurance through the Debtors, the Debtors provide them with an "insurance allowance" equal to half of what they pay for insurance.  The total amount of the "insurance allowances" paid by the Debtors to the Employees is approximately $1,292.23 per month in the aggregate, which is included in the $52,740.45 gross July 30 Payroll figure.  The Debtors seek to be authorized, but not directed, to pay the prepetition portion of any "insurance allowances" to its Employees with its June 30 Payroll.

21.      The Debtors also make health insurance available to the Employees through Blue Cross Blue Shield, but only one of its current Employees and one former employee[8] are currently on the health insurance plan. The Debtors pay fifty percent (50%) and the Employee pays fifty percent (50%) of the health insurance premium.  The total premium paid by the Debtors in connection with such health insurance is approximately $2,371.93 per month.  The Debtors seek to be authorized, but not directed, to pay the prepetition portion of any premium necessary to keep all payments current, including honoring any checks issued prepetition but not cleared as of the Petition Date.

22.      If the Debtors are not authorized to pay prepetition obligations associated with the health insurance benefits provided to the Employees, the Employees may not be able to pay for their own health insurance premiums and/or health care providers may seek payment directly from the Employees and might refuse to provide continuing treatment to them.  As a result, the morale of the Employees would be seriously undermined if health insurance benefits are temporarily interrupted.  More importantly, however, the Debtors desire to avoid the risk that Employees will not be given necessary and essential medical treatment.  Permission to pay the prepetition obligations is therefore necessary for employees who are currently receiving services

---

[8] One former employee, who continues to provide services to the Debtors on a part-time unpaid basis has remained on the health insurance plan.  The former employee has agreed to reimburse the Debtors for the portion of the health insurance premium ($1,731.07) applicable to her health insurance.

or who are recuperating from recent medical treatment.

### ii.      Individual Retirement Account Contributions

23.      Certain of the Debtors' Employees make contributions to their individual retirement accounts on a monthly basis.  For the Employees who make such contributions, the Debtors also contribute to their retirement accounts.  The total monthly individual retirement account contributions made by the Debtors for the benefit of the Employees is approximately $660.25 per month, which is included in the $52,740.45 gross July 30 Payroll figure.  Failure by the Debtors to make the expected monthly employer contribution to the Employees' individual retirement accounts may harm Employee morale.

### iii.      Paid Leave

24.      Depending on the Employee's tenure with the Debtors, an Employee may have accrued vacation and other paid time off based upon work performed prepetition.  The Debtors request authority to honor the Employee's prepetition accrued vacation days and other paid leave in the ordinary course.

### E.      Withholdings from Employee Paychecks

25.      Certain of the benefits that the Debtors offer the Employees involve payroll deductions as Employee contributions (collectively, the "**Employee Deductions**").  This includes, e.g., Employee contributions for health insurance and Employee contributions to their individual retirement accounts.  In such cases, the Debtors make deductions from the applicable Employee's paycheck and subsequently pays those funds to the appropriate third party.  The Employee Deductions comprise property of the Employees and are not property of either the Debtors or their bankruptcy estates.  In addition, in the ordinary course of business, the Debtors deduct from Employees' payroll monies relating to federal, state, and local tax withholdings and

garnishments, child support payments, etc.

26.    The Debtors request authority to pay over to the appropriate parties all such funds withheld prior to the Petition Date in accordance with existing company policies and practices and applicable law.[9]

**F.    President's Stipend**

27.    As discussed above, the Debtors also pay a $2,000 per month President's Stipend as compensation to the President of Natural Fountains Properties, Inc.  On the Petition Date, the Debtors owed the President approximately $1,545.45 for the prepetition portion of the President's Stipend.[10] The Debtors also seek authority to pay the prepetition portion of the President's Stipend.

## VI.  RELIEF REQUESTED

28.    By this Motion, the Debtors seek authority to pay outstanding Prepetition Workforce Obligations and to direct Wells Fargo Bank, the bank at which the Debtors maintain their payroll account, to receive, process, honor, and pay all related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable checks, drafts, wires or transfers were issued.

29.    Specifically, the Debtors seek permission to: (a) pay Employees for prepetition wages, salaries, and benefits earned between June 1, 2026 and June 23, 2026, in the total amount of approximately $40,753.98, including any amounts owed for recently used holiday, vacation, or sick leave pay; (b) withhold the required employee and employer portions for federal income taxes, social security, and Medicare in the aggregate amount of approximately $11,077.64 and

---

[9] In the event the Court is not prepared to grant the relief requested hereby, the Debtors reserve the right to assert and establish that such funds have been held in constructive trust.

[10] This figure represents the full amount of the President's Stipend ($2,000) divided by twenty-two (22) workdays (or $90.91 per day) times 17 prepetition workdays, which equals $1,545.45.

remit same to the appropriate taxing authorities; (c) pay the prepetition portion of the President's Stipend of approximately $1,545.45 to the President of Natural Fountains Properties, Inc.; (d) permit the Debtors to pay up to $1,500 in documented and approved prepetition Reimbursable Expenses; (e) continue providing Employee Benefits; and (f) permit Employees to use post-petition paid time off, holidays, and sick leave days that they accrued prepetition.

## VII.  BASIS FOR RELIEF

30.     Section 507(a) of the Bankruptcy Code provides that the vast majority of Prepetition Workforce Obligations, subject to certain conditions, are afforded priority distribution up to $17,150.  *See* 11 U.S.C. § 507(a)(4).  Moreover, section 507(a)(4) priority claims are entitled to payment in full under a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B). Accordingly, as the Debtors' Employees may be entitled to a priority distribution for prepetition amounts owed, the relief requested herein should primarily affect the timing of payment of Employee claims rather than their treatment for distribution purposes and should neither prejudice general unsecured creditors nor materially affect the Debtors' bankruptcy estates. Indeed, absent any objection to the relief requested herein, "it would be an abuse of discretion not to grant the payment of the priority prepetition wages within the statutory limit as described in the Motion."  *In re Tusa-Expo Holdings, Inc.*, No. 08-45057-DML-11, 2008 Bankr. LEXIS 2852, *4 (Bankr. N.D. Tex. Nov. 7, 2008).

31.     Additionally, under section 105(a) of the Bankruptcy Code, courts have permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See Id.* at *6-11; *In re CoServ, L.L.C.*, 273 B.R. 487, 497 n. 17 (Bankr. N.D. Tex. 2002).  *See also In re Gulf Air, Inc.*, 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989).

32.     Pursuant to sections 105(a), 363(b), and 507(a)(4) and (5) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtors seek authority to pay the foregoing outstanding obligations owed to the Employees.

33.     The Debtors' Employees are an essential component of a successful bankruptcy. Many of them may live from paycheck to paycheck, relying exclusively on receiving their full compensation to pay their daily living expenses.  Furthermore, many of the Debtors' Employees rely on their employee benefits, such as health insurance, without which they would be forced to pay for or go without insurance coverage for themselves and their families.  As a result, these Employees will be exposed to significant financial hardship and health-related problems if the Debtors are not permitted to honor the unpaid Prepetition Workforce Obligations, likely impairing Employee morale and welfare at this critical time.

34.     Amounts withheld from Employees' paychecks represent, in many cases, Employee earnings specifically designated by Employees, or, in the case of garnishments, by judicial authorities, to be deducted from Employee paychecks and paid accordingly.  The failure to make these payments will result in hardship to certain Employees.  Moreover, if the Debtors are unable to remit certain of these amounts, the Employees could face legal action and/or imprisonment.  Pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

35.     The Debtors submit that the request to remit payroll taxes is necessary and appropriate to carry out section 541(d) of the Bankruptcy Code. The Debtors believe the payroll taxes are held in trust for the taxing authorities.  Therefore, those funds are not property of the estate under section 541(d) because the Debtors hold mere legal title and no equitable interest in

those funds. *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 66-67 (1990) (holding that payroll taxes withheld from employee wages are not property of the estate because they are subject to a trust for the benefit of the United States under 26 U.S.C. § 7501); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3rd Cir. 1994) (holding that state law requiring employer to withhold city income tax from employee wages created a trust for the benefit of the city). Moreover, the Debtors' officers and directors may be held personally liable for the payroll taxes. *See* 26 U.S.C. § 6672. To the extent that any of the payroll taxes remain unpaid, the Debtors' officers and directors may be subject to collection efforts that would distract the Debtors and their officers and directors, to the detriment of all parties in interest in these Chapter 11 Cases.

## VIII.  DIRECTION TO DEBTORS' BANK

36.    To give effect to the requested relief, the Debtors request that the Court provide specific authorization and direction to Wells Fargo Bank, and any other applicable banks, to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers made on account of the Prepetition Workforce Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check, draft, wired or transfer was issued.

## IX.  WAIVER OF BANKRUPTCY RULE 6004 (a) AND (h)

37.    Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm..." FED. R. BANKR. P. 6003(b). For the reasons described herein, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm

to the Debtors and their estates.

38.     Absent granting the relief requested in the Wage Motion, the Debtors' Employees will experience significant economic hardship, and, absent competitive compensation, will likely seek employment elsewhere.   Without the Debtors' Employees, there will be a significant disruption to the Debtors' business and require the Debtors to incur significant time and costs in finding their replacements, diminishing the value of the estates, and thus the improved chance for a successful reorganization.   The Debtors submits that the total amount to be paid to the Employees if the requested relief is granted is *de minimis* compared with the importance and necessity of the Employees to the Debtors.   Accordingly, the relief sought herein is in the best interests of the Debtors' estates and creditors and will allow the Debtors to continue to conduct business as debtors-in-possession for the benefit of creditors.

39.     Given the emergency need for relief requested herein, and to implement the foregoing successfully, the Debtors seek a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## X.  LIMITED NOTICE

40.     Notice of this Motion has been provided to the office of the United States Trustee for the Southern District of Texas, the holders of the thirty (30) largest unsecured claims against the Debtors, and parties filing a notice of appearance, as set forth in the Certificate of Service filed herewith.   Under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of Texas, the Debtors submit that no other further notice need be provided.

## **PRAYER**

WHEREFORE, the Debtors respectfully requests entry of an order granting (a) the relief requested herein and (b) such other and further relief as is just and proper. A copy of the Debtors' proposed order granting the relief requested herein is attached hereto as **Exhibit A**.

[*Remainder of Page Intentionally Blank*]

Dated:  June 26, 2026                          Respectfully submitted,

                                               */s/ Suzanne K. Rosen*
                                               Martin Sosland (State Bar No. 18855645)
                                               Candice Carson (State Bar No. 24074006)
                                               **VARTABEDIAN HESTER & HAYNES LLP**
                                               2200 Ross Avenue, Suite 4600E
                                               Dallas, Texas 75201
                                               Telephone: (469) 654-1340
                                               Email: martin.sosland@vkhh.com
                                                       candice.carson@vkhh.com

                                               **-AND-**

                                               Jeff P. Prostok (State Bar No. 16352500)
                                               Emily S. Chou (State Bar No. 20446997)
                                               Suzanne K. Rosen (State Bar No. 00798518)
                                               Lynda L. Lankford (State Bar No. 11935020)
                                               **VARTABEDIAN KATZ HESTER & HAYNES LLP**
                                               301 Commerce Street, Suite 2200
                                               Fort Worth, Texas 76102
                                               Tel: 817-214-4990
                                               Email: jeff.prostok@vkhh.com
                                                       emily.chou@vkhh.com
                                                       suki.rosen@vkhh.com
                                                       lynda.lankford@vkhh.com

                                               PROPOSED ATTORNEYS FOR DEBTOR
                                               AND DEBTOR-IN-POSSESSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2026, a true and correct copy of the foregoing document was served via ECF electronic Notice, if available, and is being served by the Claims Agent as will be reflected in a separate Certificate of Service.

*/s/ Suzanne K. Rosen*
Suzanne K. Rosen