**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC, *et al.*,[1] | Case No. 26-90621(CML) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF KAREN NICOLAOU, DEBTORS' CHIEF RESTRUCTURING
OFFICER, IN SUPPORT OF CERTAIN FIRST-DAY PLEADINGS**

I, Karen Nicolaou, state and declare as follows:

1.      I am over 18 years of age, of sound mind, and fully competent to make this Declaration.  If called upon to testify, I could and would competently testify to the matters set forth herein.

2.      I am a Managing Director at Harney Partners.  I am a certified public accountant and a certified valuation analyst.  I have extensive experience managing and supporting companies in distressed and transition situations, including in chapter 11 proceedings.

3.      I am the proposed Chief Restructuring Officer of Camp Mystic, LLC ("*Camp Mystic*"), Natural Fountains Properties, Inc., Mystic Camps Management, LLC, and Mystic Camps Family Partnership, Ltd. (collectively, the "*Debtors*").  I have been in that position since June 26, 2026.  In my capacity as the Chief Restructuring Officer, I am the authorized representative of the Debtors in these bankruptcy cases.

4.      Since my retention, I have undertaken a limited review of the Debtors books and records pertaining solely to the Motions (defined below) and am qualified to make this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

Declaration on behalf of the Debtors.  Some of the information contained herein is based upon my review of data regularly compiled by the Debtors in the ordinary course of its business.

5.      This Declaration is being submitted to provide support for the facts in certain of the Debtors' first-day pleadings (collectively, the "***Motions***")[2], including:

a. *Debtors' Emergency Motion for Entry of an Order (I) Directing Joint Administration of the Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Dkt. No. 12] (the "***Joint Administration Motion***"); and,

b. *Debtors' Emergency Motion for Order Authorizing the Debtors to Pay Prepetition Wages, Employment Taxes, Other Employee-Benefit Obligations, and Granting Related Relief* [Dkt. No. 14] (the "***Wage Motion***").

## ABOUT THE DEBTORS

**A.      Overview**

6.      Originally built in 1926, the Debtors own and operates a private Christian summer camp for girls named Camp Mystic in the hill country of west-central Texas.

7.      On June 24, 2026 (the "***Petition Date***"), the Debtors commenced filing voluntary cases under the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in the chapter 11 cases.

## THE JOINT ADMINISTRATION MOTION

8.      The Joint Administration Motion seeks entry of an Order (i) directing joint administration of the Debtors' chapter 11 cases for procedural purposes only, and (ii) granting related relief. Specifically, the Debtors request that the Court maintain one file and one docket for all of the jointly-administered cases under the case number assigned to Camp Mystic, LLC,

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the applicable Motions.

Case No. 26-90621 (CML).

9.    Joint administration of these chapter 11 cases for procedural purposes will provide significant administrative convenience without harming the substantive rights of any party in interest. The joint administration of these chapter 11 cases will reduce fees and costs by avoiding the need for duplicative filings and objections. Further, joint administration will also allow the U.S. Trustee and all parties in interest to monitor these chapter 11 cases with great ease and efficiency and will mitigate any confusion with respect to administration of the Debtors' estates.

## THE WAGE MOTION

10.    In the Wage Motion, the Debtors seek the authorization to: (i) pay Employees for prepetition wages, salaries and benefits earned between June 1, 2026 and June 23, 2026 in the total amount of approximately $40,753.98, including any amounts owed for recently used holiday, vacation, or sick leave pay; (ii) withhold the required employee and employer portions for federal income taxes, social security, and Medicare in the aggregate amount of approximately $11,077.64[3] and remit same to the appropriate taxing authorities; (iii) pay the prepetition portion of the President's Stipend of approximately $1,545.45 to the President of Natural Fountains Properties, Inc.; (iv) pay up to $1,500 in documented and approved prepetition Reimbursable Expenses; (v) continue providing Employee Benefits to its Employees; and (vi) permit employees to use post-petition paid time off, holidays, and sick leave days that they accrued prepetition.

11.    The Debtors' have eleven (11) full time employees ("***Employees***"),[4] all of whom

---

[3] The $11,077.64, which is not broken down between prepetition and post-petition amounts, includes $3,842.00 in required withholding for federal employment taxes, $5,864.18 in required employee and employer withholding for social security, and $1,371.46 in required employee and employer withholding for Medicare.

[4] Debtor Camp Mystic, LLC directly employs all of the salaried Employees.

are on salary. The Employees include individuals needed to care and maintain Camp Mystic's grounds and facilities and a media coordinator. The Debtors[5] also pay a monthly stipend ("**President's Stipend**") to the President of Natural Fountains Properties, Inc.

12.     The relief requested in the Wage Motion is necessary to avoid immediate and irreparable harm to the Debtors. The Debtors cannot afford to lose their workforce because they are not paid their wages, compensation, and other benefits.

13.     The prepetition salaries owed to the Debtors' Employees and President do not exceed the $17,150 cap set by section 507(a)(4) of the Bankruptcy Code. The Debtors will not pay any individual Employee or the President of Natural Fountains Properties, Inc. over the capped amount.

14.     The Debtors provide health insurance benefits to its Employees. For certain Employees who do not obtain their insurance through the Debtors, the Debtors provide them with an "insurance allowance" equal to half of what they pay for insurance. The total amount of the "insurance allowances" paid by the Debtors to the Employees is approximately $1,292.23 per month in the aggregate, which is included in the $52,740.45 gross July 30 Payroll figure. The Debtors seek to be authorized, but not directed, to pay the prepetition portion of any "insurance allowances" to its Employees with its June 30 Payroll.

15.     The Debtors also make health insurance available to the Employees through Blue Cross Blue Shield, but only one of its current Employees and one former employee[6] are currently on the health insurance plan. The Debtors pay fifty percent (50%) and the Employee pays fifty percent (50%) of the health insurance premium. The total premium paid by the Debtors in

---

[5] Debtor Natural Fountains Properties, Inc. employs the President as a 1099 independent contractor and pays the President Stipend.

[6] One former employee, who continues to provide services to the Debtors on a part-time unpaid basis has remained on the health insurance plan. The former employee has agreed to reimburse the Debtors for the portion of the health insurance premium ($1,731.07) applicable to her health insurance.

DECLARATION OF KAREN NICOLAOU, DEBTORS' CHIEF RESTRUCTURING OFFICER,
IN SUPPORT OF CERTAIN FIRST DAY PLEADINGS                                                    PAGE 4

connection with such health insurance is approximately $2,371.93 per month.  The Debtors seek to be authorized, but not directed, to pay the prepetition portion of any premium necessary to keep all payments current, including honoring any checks issued prepetition but not cleared as of the Petition Date.  It is my understanding that this does not exceed the cap under section 507(a)(5) of the Bankruptcy Code.

16.     Certain of the Debtors' Employees make contributions to their individual retirement accounts on a monthly basis.  For the Employees who make such contributions, the Debtors also contribute to their retirement accounts.  The total monthly individual retirement account contributions made by the Debtors for the benefit of the Employees is approximately $660.25 per month, which is included in the $52,740.45 gross July 30 Payroll figure.  Failure by the Debtors to make the expected monthly employer contribution to the Employees' individual retirement accounts may harm employee morale.

17.     Certain of the benefits that the Debtors offer the Employees involve payroll deductions as employee contributions (collectively, the "***Employee Deductions***").  This includes, e.g., employee contributions for health insurance and employee contributions to their individual retirement accounts.  In such cases, the Debtors make deductions from the applicable Employee's paycheck and subsequently pays those funds to the appropriate third party.  The Employee Deductions comprise property of the Employees and are not property of the Debtors or their bankruptcy estates.  The Debtors thus request the authority to pay over to the appropriate parties all Employee Deductions as designated by each of the Employees.

18.     The Debtors' Employees are essential to maintain the viability of the Debtors. Many of them may live from paycheck to paycheck, relying exclusively on receiving their full compensation to pay their daily living expenses.  Furthermore, many of the Debtors' Employees

rely on their employee benefits, such as health insurance, without which they would be forced to pay for or go without insurance coverage for themselves and their families.  As a result, these Employees will be exposed to significant financial hardship and health-related problems if the Debtors are not permitted to honor the unpaid Prepetition Workforce Obligations, likely impairing employee morale and welfare at this critical time.

19.     The Debtors submit that the total amount of prepetition salaries, President's Stipend, expenses, and other fees to be paid to the Employees and President if the requested relief is granted is *de minimis* compared to the importance and necessity of the need of the labor force to maintain the Debtors' property.  The Bankruptcy Code allows for the payment of the prepetition labor force compensation and benefits.  Accordingly, the relief sought in the Wage Motion is in the best interest of the Debtors and their creditors.  The Debtors therefore request that the Court grant the Wage Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2026.

*/s/ Karen Nicolaou*
Karen Nicolaou, CPA, CVA,
Debtors' Proposed Chief Restructuring Officer