**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC,[1] | Case No. 26-90621 (CML) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN
INSURANCE COVERAGE OBTAINED PREPETITION AND PAY
PREPETITION OBLIGATIONS RELATED THERETO, (B) RENEW,
AMEND, SUPPLEMENT, MODIFY, EXTEND, PURCHASE, CANCEL,
AND ENTER INTO NEW INSURANCE POLICIES, AND (C) CONTINUE
TO PAY BROKERAGE FEES; AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Camp Mystic, LLC, and its debtor affiliates, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the (the "**Debtors**"), by and through their proposed counsel, file this motion (this "**Motion**") for entry of an order, substantially in the form attached hereto (the "**Proposed Order**"), pursuant to sections 105(a), 363(b), 364(c), 503, 1107(a), 1108, and 1112(b)(4)(C) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 1075-1, 4002-1, and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

(the "**Bankruptcy Local Rules**"), (a) authorizing the Debtors to (i) maintain insurance coverage obtained prepetition and pay prepetition obligations related thereto, (ii) renew, amend, supplement, modify, extend, purchase, cancel, and enter into new insurance policies, and (iii) continue to pay brokerage fees; and (b) granting related relief. In support of this Motion, the Debtors rely upon, and incorporate by reference, the *Declaration of Karen Nicolaou, Debtors Proposed Chief Restructuring Officer, in Support of the Debtors' Insurance Motion*, filed contemporaneously herewith.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Debtors, their estates, and these chapter 11 cases (the "**Chapter 11 Cases**") pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §1408.

3.      The Debtors confirm their consent to the entry of a final order by the Court pursuant to Bankruptcy Rule 7008.

4.      The statutory bases for the relief requested are sections 105(a), 363(b), 364(c), 503, 1107(a), 1108, and 1112(b)(4)(C) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Bankruptcy Local Rules 1075-1, 4002-1, and 9013-1(i).

## BACKGROUND

**A.      The Chapter 11 Cases**

5.      Originally built in 1926, the Debtors own and operate a private Christian summer camp for girls named Camp Mystic in the hill country of west-central Texas.

6.      On June 24, 2026 (the "**Petition Date**"), the Debtors commenced voluntary cases under the Bankruptcy Code.

7.      The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. During these Chapter 11 Cases, the Debtors are maintaining limited operations to maintain their property, including the buildings and grounds, conduct necessary administration of the business, and address incoming inquiries from the public.

8.      No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

9.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Karen Nicolau, Debtors Proposed Chief Restructuring Officer, In Support of Chapter 11 Petitions and Second Day Motions*, filed contemporaneously herewith and incorporated herein by reference.

**B.      Insurance Policies**

10.     In the ordinary course of business, the Debtors maintain approximately six (6) insurance policies (each, an "**Insurance Policy**" and, collectively, the "**Insurance Policies**") that are administered by third-party insurance carriers (each, an "**Insurance Carrier**" and collectively, the "**Insurance Carriers**"). The Insurance Policies provide the Debtors with coverage for both general and commercial business risks, including, but not limited to, general liability, workers compensation, commercial property, commercial automobile liability, commercial inland marine, and crime and fidelity liability.[2] A schedule of the Insurance Policies is attached to the Proposed

---

[2] The Debtors also maintain insurance policies with respect to employee health insurance benefits.  This program was generally described ,and relief was requested with respect to such programs, in the *Debtors' Emergency Motion for Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Compensation, Employee Benefits and Other Employee Obligations and (B) Continue Paying Compensation and Benefits Programs in the Ordinary Course of Business; (II) Authorizing All Banks to Honor Reimbursement of Employee Obligations; and (III) Granting Related Relief* [Dkt. No. 14].

---

Order as **Exhibit 1** and is incorporated herein by reference.[3] As set forth on **Exhibit 1**, the Insurance Policies vary in length and generally renew in March each year.[4]

11.     The Debtors' ability to maintain the Insurance Policies, to renew, supplement, and modify the same as needed, and to enter into new insurance policies as needed in the ordinary course of business, are essential to preserving the value of the Debtors' business, properties, and assets. Indeed, maintaining such coverage is not entirely optional; in many instances, the Insurance Policies provide coverage that is required by the laws, regulations, customer contracts, or other arrangements that govern the Debtors' operations, including the Bankruptcy Code which states that chapter 11 cases may be converted or dismissed for the "failure to maintain appropriate insurance that poses a risk to the estate or to the public," and the *Region 7 Guidelines for Debtors-In-Possession* (the "**U.S. Trustee Guidelines**") published by the Office of the United States Trustee for Region 7 (the "**U.S. Trustee**") require, among other things, that all debtors "**must** maintain insurance and pay all premiums as they come due." *See* 11 U.S.C. § 1112(b)(4)(C); U.S. Trustee Guidelines, Section III(A) (emphasis in original). It is therefore critical for the Debtors to maintain appropriate insurance coverage at all times.

---

[3] The descriptions of the Insurance Policies set forth in this Motion, including Exhibit 1 to the Orders, constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this Motion.  The relief requested in the Motion is intended to apply to all of the Debtors' Insurance Policies, regardless of whether the Debtors inadvertently failed to include a particular Insurance Policy on Exhibit 1 to the Orders, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Orders.

[4] The commencement and termination dates and term lengths for each of the Insurance Policies vary.  Therefore, the Insurance Premiums accrued during the twelve-month period prior to the Petition Date include aggregate Insurance Premiums accrued in connection with 2026–2027 policy terms, 2026–2028 policy terms, 2026-2029 policy terms, and 2026-2030 policy terms depending on the applicable Insurance Policy.

**C.      Insurance Premium Payments**

12.      In the twelve-month period prior to the Petition Date, the annual premiums for the Insurance Policies (the "**Insurance Premiums**") totaled approximately $156,391.00, inclusive of fees and taxes. The Debtors pay their premiums in equal quarterly installments in March, May, August, and November of each year for each Insurance Policy other than the workers compensation policy, which premium is paid in monthly installments.

13.      The Debtors' books and records reflect that they are substantially current with the Insurance Premiums that were due and payable prior to the Petition Date. However, to the extent that any additional prepetition amounts remain outstanding, the Debtors seek authority to pay them in the ordinary course. The Debtors also seek authority to pay all outstanding amounts on account of the Insurance Policies as they become due and payable in the ordinary course of the Debtors' business consistent with past practice.   The Debtors also request authority to (i) pay all outstanding amounts on account of the Insurance Policies as they become due and payable in the ordinary course of the Debtors' business consistent with past practice and (ii) maintain their existing Insurance Policies and to renew, amend, supplement, extend, purchase, cancel, and enter into new insurance policies, as applicable, in the ordinary course of business and consistent with past practice to ensure uninterrupted coverage.

**D.      Insurance Brokerage Fees**

14.      The Debtors obtain their Insurance Policies primarily through Hertel Insurers Group (the "**Broker**"). The Broker, among other things: (a) assists the Debtors in obtaining comprehensive insurance coverage for their operations in a cost-effective manner; (b) advises the Debtors in negotiations, enabling the Debtors to obtain more advantageous terms and competitive rates; (c) manages renewal data; and (d) provides ongoing support throughout the applicable policy periods for the Insurance Policies (such services, collectively, the "**Broker Services**").

15.      In exchange for the Broker Services, the Debtors pay broker commissions (the "**Brokerage Fees**"), which are incorporated into the Insurance Premiums. Accordingly, any Brokerage Fees that will become due and payable are covered by the Debtors' request for relief with respect to the Insurance Premiums. Nevertheless, out of an abundance of caution and to ensure uninterrupted coverage under the Insurance Policies, the Debtors seek authority to pay any Brokerage Fees that accrued prepetition and to continue to honor their obligations to the Broker as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

E.      **Insurance Policy Audits**

16.      Certain of the Insurance Policies are subject to regular audits during their respective policy periods (the "**Audits**"), which may result in an adjustment of Insurance Premiums owed on account thereof. As of the Petition Date, there are no ongoing Audits, but the Debtors anticipate that certain policies will be subject to Audits during the pendency of these Chapter 11 Cases and the aggregate amount of Insurance Premiums, if any, the Debtors may owe arising from such Audits is not known at this time. Accordingly, the Debtors seeks authority to pay any outstanding prepetition amounts owed on account of any Audits (if any) and to continue to honor any amounts owed on account of any Audits as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

F.      **Insurance Deductibles**

17.      Certain Insurance Policies require that the Debtors pay various deductibles or retention amounts (collectively, the "***Deductibles***").[5] Generally, if a claim is made against an

---

[5] When an Insurance Policy is subject to a Deductible, a compensable claim is typically assessed from dollar one, then the Deductible is subtracted from the claim.

Insurance Policy that is subject to a Deductible, the Debtors are obligated to directly pay any defense costs and/or indemnity payments up to the amount of the Deductible, and the applicable Insurance Carriers are responsible for any amounts in excess of the Deductible up to the limit of the applicable Insurance Policy. Under other Insurance Policies, the Insurance Carriers will directly pay defense costs and/or indemnity payments and then seek reimbursement from the Debtors up to the amount of the Deductible. The Deductibles typically range from approximately $500 to $10,000[6] depending on the Insurance Policy.

18.     As of the Petition Date, the Debtors do not believe that there are any unpaid obligations with respect to any of the Deductibles. Accordingly, out of an abundance of caution, the Debtors seek authority to pay any prepetition amounts owed on account of the Deductibles and to continue to honor any amounts owed on account of the Deductibles in the ordinary course of business on a postpetition basis consistent with past practice. Failure to pay a Deductible risks the Debtors' ability to maintain the related Insurance Policy, jeopardizing the Debtors' business operations and potentially leading to the violation of certain statues, rules, regulations, and U.S. Trustee Guidelines that require that the Debtors maintain these Insurance Policies

## BASIS FOR RELIEF

A.     **The Maintenance and Continuation of the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee Guidelines.**

19.     The Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' business, property, and other assets. It is essential that the Debtors' insurance coverage continues in full force and effect during this Chapter 11 Cases. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that

---

[6] In the case of windstorm or hail damage to covered property, the deductible is 5% with a minimum deductible of $10,000.

poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C); *see also In re Davis*, 730 F.2d 176, 185 (5th Cir. 1984) (holding that insurance policies constitute property of the estate and describing maintenance of adequate insurance "as a bulwark against erosion of the estate"). In addition, in many instances, the coverage provided under the Insurance Policies is required by various state and federal laws, regulations, or other arrangements that govern the Debtors' commercial activities.

20.      Further, the U.S. Trustee Guidelines require that "[a]ll debtors **must** maintain insurance and pay all premiums as they come due." *See* U.S. Trustee Guidelines at III(A) (emphasis in original). The U.S. Trustee Guidelines further require, absent an order of the court otherwise, a debtor in possession under chapter 11 of the Bankruptcy Code to maintain (if applicable) casualty insurance, workers' compensation insurance, and general liability insurance along with any other insurance customary in such debtors' business. *Id.* at III(B). The relief requested is necessary to ensure that the Debtors comply with their obligations under the Bankruptcy Code, applicable law, and the U.S. Trustee Guidelines.

**B.      Maintaining, Continuing, Renewing, Amending, Supplementing, Extending, Purchasing, Canceling, or Entering Into New Insurance Policies, and Paying Obligations Related to the Insurance Policies in the Ordinary Course of Business Are Each Warranted.**

21.      The Debtors believe that they have authority to continue the Insurance Policies and to renew, amend, supplement, extend, purchase, cancel, or enter into new Insurance Policies in the ordinary course of business during these Chapter 11 Cases. *See* 11 U.S.C. § 363(c) ("[T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."). At least one bankruptcy court has explicitly recognized a debtor's purchases of new insurance policies as falling within the ordinary course of

business. *See, e.g.*, *In re DGI Resols., Inc.*, 445 B.R. 376, 380 (Bankr. D. Del. 2011) (recognizing purchase of D&O tail insurance policy as within the debtor's ordinary course of business). Nevertheless, out of an abundance of caution, the Debtors seek such relief given the importance of the Insurance Policies to the protection of their estates pursuant to section 1112(b)(4)(C) of the Bankruptcy Code.

22.     As set forth above, the Debtors' existing Insurance Policies provide a comprehensive range of protection for the Debtors' business and assets. It is therefore essential that the Debtors' Insurance Policies continue in full force and effect during the course of these Chapter 11 Cases.

23.     In authorizing payments of prepetition insurance obligations, courts have relied on several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code. *See, e.g.*, *In re AMR Corp.*, No. 11-15463, 2011 WL 6841205, at *1 (Bankr. S.D.N.Y. Nov. 30, 2011) (granting relief requested by an insurance motion, citing sections 105(a) and 363(b)); *In re Oncure Holdings, Inc.*, No. 13-11540, 2009 WL 10817379, at *2 (Bankr. D. Del. Dec. 18, 2009) (same, citing sections 105, 363, 1107, and 1108); *In re Exide Techs.*, No. 13-11482, 2013 WL 4777665, at *1 (Bankr. D. Del. July 10, 2013) (granting surety bond motion, citing section 363). Under these sections of the Bankruptcy Code, the Court may authorize the Debtors to pay prepetition amounts due on account of the Insurance Policies, and to maintain the Insurance Policies, including renewing and entering into new Insurance Policies on a postpetition basis, because such relief aligns with the value preservation policy of chapter 11.

24.     Several courts, including those in the Fifth Circuit, have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)

(stating that a debtor's duty to maximize the value of the estate can be satisfied through payment of a prepetition claim); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (holding that business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("[t]he ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

25.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (relying on section 363 to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). In addition, pursuant to sections 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

26.     Courts may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the bankruptcy court's inherent equitable powers and empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's

business. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (recognizing that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization). Specifically, this Court may use its equitable powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity") when such payment is needed to facilitate the rehabilitation of the debtor. *See Ionosphere Clubs*, 98 B.R. at 175-76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497; *see also In re Mirant*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (allowing a debtor in possession to pay prepetition claims when failing to do so could "seriously damage" the debtor's business).

27.     The doctrine of necessity is satisfied here. Failure to maintain the Insurance Policies could have a detrimental impact on the Debtors' operations and value of their estates. The non-payment of any Insurance Premiums, Brokerage Fees, or related fees under the Insurance Policies could result in one or more of the Insurance Carriers terminating or declining to renew the Insurance Policies or refusing to enter into new insurance policies with the Debtors. Any interruption in insurance coverage would expose the Debtors to a number of risks, including (a) potential direct liability of the payment of claims that otherwise would have been covered under the Insurance Policies, (b) material costs and other losses that otherwise would have been reimbursed, (c) the inability to obtain similar insurance coverage on terms as equally favorable as the present coverage, and (d) higher costs for reestablishing lapsed Insurance Policies or obtaining

new insurance coverage. If any of these situations arises, the Debtors and their professional advisors would be forced to address these matters, thus expending their limited time and resources.

28.      Accordingly, the Debtors seek authority to maintain, continue, renew, amend, supplement, cancel, or extend their existing Insurance Policies, purchase new insurance policies and coverage, and execute other agreements as needed in the ordinary course of business. Failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies could negatively affect the Debtors' ability to enter into such amendments, supplements, extensions, or new policies and coverage. Maintaining and continuing the Insurance Policies is essential to preserving the value of the Debtors' assets and minimizing exposure to risk during the pendency of these Chapter 11 Cases. The Debtors, therefore, should be authorized to pay any prepetition obligations related to the Insurance Policies and to renew, supplement, purchase, cancel, or enter into new insurance coverage in the ordinary course of business on a postpetition basis consistent with past practice.

29.      Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (authorizing the debtors to continue their insurance policies, pay related prepetition obligations, and renew, supplement, modify, or purchase insurance); *In re Ascend Performance Materials Holdings Inc.*, No. 25-90127 (CML) (Bankr. S.D. Tex. Apr. 22, 2025) (same); *In re Global Clean Energy Holdings, Inc.*, No. 25-90113 (ARP) (Bankr. S.D. Tex. Apr. 16, 2025) (same); *In re Northvolt AB*, No. 24-90577 (ARP) (Bankr. S.D. Tex. Nov. 21, 2024) (same); *In re Vertex Energy, Inc.*, No. 24-90507 (CML) (Bankr. S.D. Tex. Sept. 25, 2024) (same).

**WAIVER OF BANKRUPTCY RULE 6004(a), (h)**

30.     The Debtors request that the Bankruptcy Court enter the Proposed Order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

**PROCESSING OF PAYMENTS SHOULD BE AUTHORIZED**

31.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of cash on hand. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests that are unrelated to authorized payments will be honored inadvertently. The Debtors request that the Court authorize all applicable financial institutions, upon request of the Debtors, to receive, process, honor, and pay any and all checks, direct debit, wire transfer, ACH, or other payment requests in respect of the relief requested herein.

**RESERVATION OF RIGHTS**

32.     Nothing contained in this Motion or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code;

(f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party-in-interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties-in-interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought in this Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## NOTICE

33.     Notice of this Motion will be provided to (a) the Office of the US Trustee for the Southern District of Texas; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Texas State Attorney General; (f) the Broker; and (g) parties requesting notice under Bankruptcy Rule 2002. The Debtors submit that no further notice need be provided.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and grant such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank]*

Dated: July 2, 2026

Respectfully submitted,

*/s/Candice M. Carson*

Martin Sosland (State Bar No. 18855645)
Candice M. Carson (State Bar No. 24074006)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 4600W
Dallas, Texas 75201
Telephone: (469) 654-1340
Email: martin.sosland@vkhh.com
candice.carson@vkhh.com

**- AND -**

Jeff P. Prostok (State Bar No. 16352500)
Emily S. Chou (State Bar No. 24006997)
Suzanne K. Rosen (State Bar No. 00798518)
Lynda L. Lankford (State Bar No. 11935020)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Telephone: (817) 214-4990
Email: jeff.prostok@vkhh.com
emily.chou@vkhh.com
suki.rosen@vkhh.com
lynda.lankford@vkhh.com

*Proposed Counsel to Debtors and
Debtors-in-Possession*