**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC, e*t al.*,[1] | Case No. 26-90621 (CML) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 77 & 132** |

**NON-DEBTOR INDIVIDUAL DEFENDANTS' OBJECTION TO CERTAIN
HEAVEN'S 27 FAMILIES' SUBSTITUTED MOTION FOR ENTRY OF
AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT
APPLY TO DIRECT CLAIMS AGAINST NON-DEBTOR INDIVIDUAL DEFENDANTS**

Non-Debtor individual defendants, Willetta "Tweety" Eastland, George Albritton Eastland, as Personal Representative of the Estate of Richard "Dick" Eastland, Edward S. Eastland, Mary E. "Mary Liz" Eastland, and William Neely Bonner III (collectively, the "Individual Defendants"), by and through their undersigned counsel, file this objection (the "Objection") to *Certain Heaven's 27 Families' Substituted Motion for Entry of Order Confirming That the Automatic Stay Does Not Apply to Direct Claims Against Non-Debtor Individual Defendants* [Docket No. 132] (the "Substituted Motion")[2] filed by Certain Heaven's 27 Families (the "Movants"). The Individual Defendants respectfully request that the Court deny the Substituted Motion and in support state as follows:

**Preliminary Statement**

1.      The Individual Defendants understand that the Movants are hurting, and that they are seeking to hold the Individual Defendants responsible for the loss of their daughters' lives.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Substituted Motion.

1

The Individual Defendants acknowledge their profound grief and what must feel an unshakeable sorrow.  This has been a terrible tragedy, and one for which the Individual Defendants continue to grieve as well.  The Individual Defendants also understand that engaging in this dispute may appear coldhearted or dismissive of the Movants' goals, but that is not the case.  The Individual Defendants oppose the Substituted Motion because the automatic stay does *and should* apply to the Individual Defendants for the reasons stated below, and because imposition of the stay will allow the parties to consolidate disputes and, hopefully, work towards one global resolution that fairly and equitably addresses the Movants' claims.

2.      That said, the Substituted Motion seeks far more than a mere clarification of the automatic stay.  In substance, the Movants ask this Court for an advisory opinion, or an order authorizing the commencement and continued prosecution of claims arising from the same alleged conduct, involving the same underlying facts, witnesses, insurance policies, and liability theories that form the basis of claims currently stayed against the Debtors.  The relief requested would permit the Movants to litigate issues central to the Debtors' estates in another forum while these chapter 11 cases remain pending, creating precisely the type of fragmented litigation and piecemeal adjudication that the Bankruptcy Code is designed to prevent.

3.      The Movants attempt to portray their claims against the Individual Defendants as independent causes of action involving solely personal conduct, but the state court pleadings tell a different story.  Movants repeatedly allege in the state court pleadings that the Individual Defendants and the Debtors operated as a single enterprise, acted through one another, and are jointly and severally liable under numerous theories of agency, alter ego, respondeat superior, joint enterprise, ratification, and related doctrines.  Indeed, the Movants seek to impose liability on the Individual Defendants exclusively on account of their alleged roles in managing and operating the

2

Debtors' business.  The claims against the Individual Defendants are therefore inseparable from the claims asserted against the Debtors.

4.  Permitting the Movants to commence or continue litigating those claims against the Individual Defendants would directly impair the Debtors' chapter 11 cases.  The Movants' litigation threatens to deplete estate-controlled insurance assets, trigger indemnification obligations, and divert the attention of the very individuals responsible for assisting the Debtors through the reorganization process.  For these reasons, the prosecution of the Movants' claims against the Individual Defendants is either already prohibited by the automatic stay or subject to extension of the stay under the well-established Fifth Circuit "unusual circumstances" exception for actions against non-debtors that effectively operate as actions against a debtor.

5.  The Debtors have already commenced an adversary proceeding specifically addressing the applicability of the stay to the Individual Defendants and requesting declaratory and injunctive relief.  The Substituted Motion therefore presents questions that are currently before the Court in the proper procedural vehicle.  Accordingly, the Substituted Motion should be denied or, alternatively, addressed in conjunction with the Adversary Proceeding.

## Background

6.  Originally built in 1926, the Debtors own and operate a private Christian summer camp for girls named Camp Mystic on the South Fork of the Guadalupe River, near Hunt in Kerr County, Texas (the "Camp").

7.  The Camp operates on an approximately 725-acre property in the Texas Hill Country comprising of two campuses: (a) the original Camp Mystic Guadalupe River campus, situated along the Guadalupe River; and (b) the newer Camp Mystic Cypress Lake campus, located on the same property adjacent to Cypress Lake / Cypress Creek and developed in approximately 2019–2020.

8.      Individual Defendants Tweety and Dick Eastland became involved in the Camp's operations in 1974 and assumed leadership in 1987, becoming co-owners and executive directors. Tweety and Dick Eastland were the third generation to manage the Camp since the Eastland family acquired it in 1939.  The Eastland family is now in its fourth generation of operation with Individual Defendants Mary Liz and Edward Eastland acting as the directors of the Camp's Guadalupe River campus.  Individual Defendant Bonner is the president of Debtor Natural Fountains Properties, Inc., which owns the real property where the Camp is operated.

9.      On July 4, 2025, a severe and sudden flood occurred in the Texas Hill Country, including the Guadalupe River valley where the Camp's Guadalupe River campus is located.  The flood claimed 136 lives and caused extensive damage throughout the area.  Among those who died were 27 campers and counselors at the Camp, as well as the Camp's longtime director and co-owner, Dick Eastland.

10.      Certain of the Movants thereafter filed lawsuits in the District Court of Travis County, Texas, asserting claims against the Debtors and the Individual Defendants based on their alleged failures and actions in connection with the July 4, 2025 flood, including, without limitation, claims for wrongful death and survival actions, negligence, premises liability, intentional infliction of emotional distress, breach of fiduciary duty, breach of express and implied warranties, and failure to warn, and asserting numerous theories of joint and several liability.  Those Movants seek compensatory and exemplary damages from the Debtors and the Individual Defendants.

11.      On June 24, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for bankruptcy relief under chapter 11 of the Bankruptcy Code.  The filing of these chapter 11 cases stayed the commencement or continuation of all claims and causes of action against the Debtors, including the claims of the Movants.

12.     On July 13, 2026, the Ad Hoc Group of Certain Heaven's 27 Families (the "AHG") filed their *Motion for Entry of Order Confirming that the Automatic Stay Does Not Apply to Direct Claims Against Non-Debtor Individual Defendants* [Docket No. 77] (the "AHG Motion").

13.     On July 22, 2026, the Office of the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors (the "Committee").  After the appointment of the Committee, the AHG decided to disband.

14.     On August 2, 2026, Movants filed the Substituted Motion which substitutes and supersedes the AHG Motion.  The Substituted Motion seeks an order from this Court to provide clarity and certainty regarding the scope of the automatic stay, so that Movants may assert, or continue to prosecute claims in existing state court proceedings, against the Individual Defendants. *See* Substituted Motion, ¶ 9.

15.     On August 5, 2026, 2026, the Debtors filed their *Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Prohibits Certain Actions Against Non-Debtors and (II) Preliminarily Enjoining Such Actions* (the "Complaint") initiating an adversary proceeding in these chapter 11 cases (the "Adversary Proceeding") and a related motion seeking (i) an order declaring the commencement or continued prosecution of the Movants' claims against the Individual Defendants is prohibited and (ii) a preliminarily injunction, to the extent necessary, enjoining the prosecution of the Movants' claims against the Individual Defendants for a reasonable period of time.  *See* Docket Nos. 1–2, Adv. Pro. No. 26-03604.

### Objection

16.     As fully briefed in the Debtors' Complaint and related motion filed in the Adversary Proceeding, and discussed herein, the automatic stay applies or should be extended to apply to the

Movants' claims against the Individual Defendants.  Accordingly, the Substituted Motion should be denied or, alternatively, consolidated with the Adversary Proceeding.

> **A.     The Automatic Stay Prohibits Prosecution of the Movants' Claims Against the Individual Defendants**

17.     The automatic stay allows "the bankruptcy court to centralize all disputes concerning property of the debtor's estate in bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990); *see also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987) ("[T]he stay prevents the dissipation or diminution of the bankrupt's assets while rehabilitative efforts are undertaken and prohibits the proliferation of numerous claims in different forums against the debtor.").  Specifically, section 362(a)(1) of the Bankruptcy Code prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced prior to the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of the bankruptcy case.  *See* 11 U.S.C. § 362(a)(1).

18.     Although the automatic stay typically applies only to debtors, Fifth Circuit precedent, as well as precedent in other circuits, recognizes that the automatic stay of section 362(a) may apply on its own force to prohibit the prosecution of claims against non-debtor defendants such as the Movants' claims against the Individual Defendants. *See Tehum Care Servs., Inc. v. Those Parties Listed in Appendix A to the Complaint (In re Tehum Care Servs., Inc.)*, No. 23-03049 (CML) (Bankr. S.D. Tex. May 18, 2023) Docket No. 43, ¶ 1 ("[T]he automatic stay prohibits the commencement or continuation of any action by the Defendants to recover prepetition claims against [non-debtor affiliates]"); *see also Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A to Complaint (In re Aldrich Pump LLC)*, 2021 Bankr. LEXIS 2294, *83 (Bankr. W.D.N.C. Aug. 23, 2021) (holding that claims against non-debtor parties that "would

necessarily result in the liquidation and recovery of claims against the Debtors outside of the bankruptcy case [are] barred by the automatic stay."); *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992) ("Section 362(a)(1) provides that actions 'against the debtor' *or* 'to recover a claim against the debtor' are subject to the automatic stay. The latter category must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage.") (emphasis in original).

19.     Movants rely on *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541(5th Cir. 1983) and its progeny to assert that "[t]he automatic stay simply does not protect the non-debtor Individual Defendants."  Substituted Motion, ¶ 13.  The Individual Defendants do not dispute the general rule articulated in *Wedgeworth* and its progeny.  However, such cases are inapplicable here because commencement or continuing prosecution of the Movants' claims against the Individual Defendants can have only one purpose: the ultimate liquidation and recovery of claims against the Debtors.   Movants assert their claims relate to the Individual Defendants' tortious conduct including "their personal failure to evacuate campers entrusted to their care." Substituted Motion, ¶ 19. But to the extent applicable, the Individual Defendants' interactions with the campers only occurred because those campers were, as Camp Mystic campers, entrusted to the Debtors' care, not specifically to any Individual Defendants' care.  Accordingly, the Movants' claims cannot realistically be confined to the liability of the Individual Defendants because adjudication of such claims necessarily requires determination of the Debtors' conduct, policies, operational decisions, alleged negligence, and alleged duties.  Therefore, any action prosecuting the Movants' claims is an action to recover a claim against the Debtors and stayed under the Bankruptcy Code.

20.     Further, section 362(a)(3) of the Bankruptcy Code prohibits the commencement or continuation of any act to obtain possession of, or exercise control over, the property of the debtor's

estate. *See* 11 U.S.C. § 362(a)(3).  In turn, section 541 of the Bankruptcy Code establishes that the filing of a bankruptcy case creates an "estate," and that estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. 11 U.S.C. § 541(a)(1).

21.     Movants assert that section 362(a)(3) does not stay the Movants' claims because "the injuries forming the bases of the AHG members' state court complaints do not 'flow from injury to the debtor' or involve 'depletion of estate assets.'" Substituted Motion, ¶ 19 (citing *Buccaneer Energy Holdings, Inc. v. Burton (In re Buccaneer Resources, L.L.C.)*, 912 F.3d 291, 293–95 (5th Cir. 2019)).  However, the state court complaints *do* involve a depletion of estate assets.

22.     The Movants' claims implicate certain of the Debtors' insurance policies.  Each of the Individual Defendants are covered by the Debtors' insurance policies either as indemnitees or employees, and therefore, have the right to claim the proceeds of such policies with respect to any covered loss.  The applicable insurance policies carry per-occurrence aggregate coverage limits, therefore coverage for any judgment against the Individual Defendants will result in a dollar-for-dollar reduction of the Debtors' insurance coverage.  Section 362(a)(3) bars plaintiffs from prosecuting actions that would deplete the Debtors' insurance because the right to insurance coverage is property of the estates.  *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993) ("[C]ourts are generally in agreement that an insurance policy will be considered property of the estate."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001–1002 (4th Cir. 1986) ("actions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3)").  Given the finite

nature of available insurance proceeds, any depletion of policy limits through litigation against the Individual Defendants necessarily diminishes a critical estate asset available for the benefit of all stakeholders. The depletion of an estate asset violates the automatic stay, and, therefore, section 362(a)(3) bars prosecution of the Movants' claims against the Individual Defendants.

23. Accordingly, the Movants are incorrect that the automatic stay does not apply to the Individual Defendants as both sections 362(a)(1) and (3) prohibit prosecution of the Movants' claims against the Individual Defendants.

**B. Unusual Circumstances Warrant Extension of the Automatic Stay to the Individual Defendants**

24. Even where the automatic stay does not apply on its own force, courts can extend the stay to non-debtor defendants in "unusual circumstances," including "when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor" or "when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995); *see also S.I. Acquisition*, 817 F.2d at 1147 ("[Several] courts have reasoned that a nonbankrupt codefendant may be protected by the automatic stay of section 362(a)(1) if extension of the stay contributes to the debtor's efforts of rehabilitation or the debtor and nonbankrupt are closely related."). This case presents such unusual circumstances.

25. Unusual circumstances exist here because there is an identity of interest between the Debtors and Individual Defendants. Movants argue the identity of interest exception does not apply here based on two incorrect premises: (1) "there is no formal tie or contractual indemnification agreement between the Individual Defendants and the Debtors that would create such an identity of interests[;]" and (2) "[t]he Movants' claims against the Individual Defendants are based on the Individual Defendants' *own* personal tortious conduct—not on any theory of

9

vicarious liability, agency, or indemnification that would make the Debtors the real party in interest." Substituted Motion, ¶ 22 (emphasis in original).

26.     Movants' first premise is incorrect because the Debtors' governing documents contain indemnification provisions benefiting the Individual Defendants.  For example, Debtors Mystic Camps Management, LLC and Camp Mystic, LLC both provide that the applicable company must indemnify its managers, members, and officers from and against all actions, suits or proceedings arising out of the management of the applicable company or such indemnified person's service as the governing authority of the applicable company, but limits the indemnity to matters that arise out of the negligence, strict liability, or other fault or responsibility by the indemnified person.  Tweety, Dick, and Edward Eastland were each a member and/or manager of these Debtor entities, making them indemnified parties.  The ground and building lease agreement between Debtor Natural Fountains Properties, Inc. and Debtor Camp Mystic, LLC also provides indemnification to Natural Fountains Properties, Inc. and its officers and directors, including William Neely Bonner, III, Tweety Eastland, and Dick Eastland, for claims arising from injury to persons or property of any nature occurring at the premises.  These indemnification obligations create an identity of interest between the Individual Defendants and the Debtors. *See Nat'l Oilwell Varco, L.P. v. Mud King Prods.*, 2013 U.S. Dist. LEXIS 66152, *18 (S.D. Tex. May 9, 2013) ("If the indemnity is enforceable and applicable, there is an 'actual' identity of interests between the indemnified [non-debtor defendant] and [debtor] itself.").

27.     Movants' second premise is incorrect because the Movants' claims against the Individual Defendants *are* based on theories of vicarious liability, agency, and other theories that make each of the Debtors a real party in interest.  The Movants' complaints contend that the Debtors and the Individual Defendants are a single entity and allege the same injuries using the

10

same evidence in support of their claims under numerous theories of joint and several liability including, without limitation, joint enterprise, alter ego, veil piercing, respondeat superior, participatory liability, concert of action, ratification, and agency.[3]

28.    Indeed, there are no claims alleged by the Movants against the Individual Defendants that do not include and involve the Debtors.  This inseparable blending exists for a reason: the Individual Defendants were sued solely for actions they took in the scope of their employment by the Debtors.[4]  While the Individual Defendants vehemently deny the allegations made in the state court complaints, they do agree that at all relevant times each Individual Defendant was employed by the Debtors and were all acting in the course and scope of their employment.  Further, Individual Defendant Bonner is solely an officer of Debtor Natural Fountains Properties, Inc., which is the Debtor entity that owns the land the Camp operates on, but he has no role in managing or operating the Camp itself.  Thus, any alleged duties owed by the

---

[3] *See, e.g.*, *Jacobe et al. v. Camp Mystic, LLC et al.*, No. D-1GN-25-009963, Intervenors' Original Petition (Tex. Dist. Ct. Jan. 16, 2026) (asserting joint and several liability based on theories of joint enterprise and alter ego and stating "[t]he Individual Eastland Defendants so dominated and controlled the day-to-day operations of Camp Mystic Corporate Defendants that they are essentially one and the same as far as responsibility is concerned with regard to [the] claims."); *Bellows et al. v. Camp Mystic, LLC et al.*, No. D-1-GN-25-009963, Original Petition (Tex. Dist. Ct. Nov. 10, 2025) (asserting joint and several liability based on theories of alter ego, single business enterprise, and veil piercing); *Peck et al. v. Camp Mystic, LLC et al.*, No. D-1-GN-25-009983, Plaintiffs' Original Petition (Tex. Dist. Ct. Nov. 10, 2025) (asserting joint and several liability based on theories of joint enterprise, assisting & encouraging, assisting & participating, concert of action, and ratification); *Naylor et al. v. Camp Mystic, LLC et al.*, No. D-1-GN-25-010016, Plaintiffs' Original Petition (Tex. Dist. Ct. Nov. 10, 2025) (asserting joint and several liability); *Steward et al. v. Camp Mystic, LLC et al.*, D-1-GN-26-000758, Plaintiffs' Original Petition (Tex. Dist. Ct. Feb. 4, 2026) (asserting joint and several liability based on theories of joint enterprise, veil piercing, and alter ego and stating "Plaintiffs assert the following causes of action against all Defendants, jointly and severally, based on their ownership, operation, management, and control of Camp Mystic and related entities."); *Getten et al. v. Natural Fountains Properties, Inc. et al.*, D-1-GN-25-009976, Plaintiffs' Second Amended Petition (Tex. Dist. Ct. May 4, 2026) (asserting joint and several liability based on theories of joint enterprise, ratification, and alter ego and stating "[t]he Individual Defendants have at all times exercised total dominion and control over the Camp Mystic Defendants and have exercised such control in a manner indistinguishable from their own personal affairs.").

[4] *See e.g., Bellows v. Camp Mystic, LLC*, No. D-1-GN-25-009963, Original Petition (Tex. Dist. Ct. Nov. 10, 2025) ("The individual Camp employees acted in the course and scope of their employment.  The Camp is liable for their acts and omissions under the doctrine of respondeat superior."); *Getten et al. v. Natural Fountains Properties, Inc. et al.*, D-1-GN-25-009976, Plaintiffs' Second Amended Petition (Tex. Dist. Ct. May 4, 2026) ("At all relevant times, all agents, servants, and/or employees of Defendants were working within the course and scope of their employment for Defendants in furtherance of Defendants' operations and business.").

Individual Defendants arose solely by virtue of their positions with and responsibilities on behalf of the Debtors.  Absent the Debtors' lease with and operation of the Camp, the Individual Defendants would have had no relation to the campers or counselors at all.

29.     Accordingly, the Movants' claims against the Individual Defendants are inextricably interwoven with their claims against the Debtors, creating an identity of interest.  *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17, 36–39 (Bankr. D. Del. 2008) (finding identity of interest where debtor's conduct and operations were "at the core" of third-party claims against non-debtors and non-debtor third parties' "liability [was] alleged to arise from its dealings with Debtors"); *see also Nesloney v. Midway Oilfield Constructors, Inc.*, 2018 U.S. Dist. LEXIS 180915, *4 (S.D. Tex. Oct. 22, 2018) (staying claims against the non-debtor defendant because "[t]he claims against the parties are 'inextricably interwoven, presenting common questions of law and fact,' and should be resolved in one proceeding.) (quoting *Fed. Life Ins. Co. (Mut.) v. First Fin. Grp. of Texas, Inc.*, 3 B.R. 375, 376 (S.D. Tex. 1980)); *Gigi's Cupcakes, LLC v. 4 Box LLC*, 2019 U.S. Dist. LEXIS 67670, *12 (N.D. Tex. Apr. 22, 2019) ("Some courts in this circuit have granted stays when 'the allegations raised against co-defendants are 'inextricably interwoven' with claims against the debtor,' such that severance of the claims would be inappropriate." (collecting cases)).

30.     In addition to an identity of interest, "unusual circumstances" exist here because pursuit of the Movants' claims against the Individual Defendants will have an adverse effect on the Debtors' ability to accomplish reorganization.  As discussed above, commencing or continuing prosecution of the Movants' claims against the Individual Defendants will trigger indemnification obligations, vicarious liability, and deplete insurance proceeds, which all adversely affect the Debtors' ability to reorganize.  *See, e.g.*, *In re Quigley Co.*, 676 F.3d 45, 58 (2d. Cir. 2012) (holding

"where litigation of the [lawsuits] against [non-debtor] would almost certainly result in the drawing down of insurance policies that are part of the bankruptcy estate of [debtor], the exercise of bankruptcy jurisdiction to enjoin these suits was appropriate."). The Movants' prosecution of their claims against the Individual Defendants will also adversely affect the Debtors' reorganization efforts by diverting estate resources. The Individual Defendants will be forced to focus on defending their respective positions instead of assisting with the Debtors' bankruptcy proceedings, and the Debtors will be forced to address incessant discovery issues as the almost certain repository of the overwhelming majority of information relevant to the cases.

31.     Courts have recognized that diverting key personnel from reorganization efforts constitutes an adverse impact on a debtor's ability to reorganize. *See In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 117 (Bankr. N.D. Tex. 2002) (finding unusual circumstances sufficient to extend automatic stay because, among other reasons, the third-party action would "be a considerable drain on [the non-debtor's] time and resources which would be better used to navigate the Debtor's day-to-day business (and reorganization) efforts" and "[t]he success or failure of the Debtor lies mainly, if not exclusively, with the efforts, reputation, and dedication of [the non-debtor]."); *see also In re Phila. Newspapers, LLC*, 407 B.R. 606, 614 (E.D. Pa. 2009) ("[D]iverting the time and energy of key personnel from the reorganization effort at a critical time in the formulation of a plan would adversely impact the Debtors' ability to promptly and effectively reorganize.").

32.     Here, the Individual Defendants are the Debtors' owners, managers, and key operating personnel, and they serve as the principal decision-makers responsible for directing the Debtors' restructuring efforts, coordinating with estate professionals, and preserving estate value. Unlike a large corporate debtor with multiple layers of management capable of absorbing the

13

burdens of litigation involving individual insiders, these Debtors are a family-owned business whose operations, decision-making authority, and institutional knowledge reside in a very limited number of individuals.  Movants seek to subject those very individuals to active litigation.  As indicated above, that litigation would require the Individual Defendants to devote substantial time, energy, and resources to defending claims that are identical to the claims being addressed in these chapter 11 cases.  The Movants' actions would therefore divert the Individual Defendants' attention from the administration of these estates, impairing the Debtors' ability to successfully reorganize.  It could cause delays, result in a diminution of estate resources, and ultimately jeopardize estate recoveries. These circumstances fall squarely within the Fifth Circuit's "unusual circumstances" exception.

33.    Accordingly, to the extent the automatic stay does not already apply, unusual circumstances exist here warranting extension of the stay to the Individual Defendants with respect to the Movants' claims, as requested by the Debtors in the Adversary Proceeding.

**Reservation of Rights**

34.    The Individual Defendants hereby reserve the right to object to the Substituted Motion on any additional grounds.  Furthermore, the Individual Defendants reserve the right to amend, modify, or supplement this Objection.

WHEREFORE, the Individual Defendants respectfully request entry of an order denying the relief sought in the Substituted Motion or, alternatively, consolidating the Substituted Motion with the Adversary Proceeding.

Dated: August 5, 2026                                    Respectfully submitted,

<div style="margin-left: 50%">

*/s/ John J. Kane*

**KANE RUSSELL COLEMAN LOGAN PC**
John J. Kane (TX Bar No. 24066794)
JaKayla J. DaBera (TX Bar No. 24129114)
901 Main Street, Suite 5200
Dallas, TX 75202
Telephone: (214) 777-4200
Email:    jkane@krcl.com
              jdabera@krcl.com

and

Emily Meraia (TX Bar No. 24129307)
5151 San Felipe Street, Suite 800
Houston, TX 77056
Telephone: (713) 425-7400
Email:    emeraia@krcl.com

*Counsel to the Individual Defendants*

</div>

15

## CERTIFICATE OF SERVICE

This is to certify that on August 5, 2026, a true and correct copy of the foregoing document was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

/s/ John J. Kane
John J. Kane