**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC,[1] | Case No. 26-90621 (CML) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF DISINTERESTEDNESS OF WHITLEY PENN LLP PURSUANT TO THE ORDER (I) AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS, AND (II) GRANTING RELATED RELIEF**

I, Robert M. Herbst make this declaration (this "**Declaration**") under penalty of perjury:

1. I am a partner of Whitley Penn, located at 11503 NW Military Hwy; San Antonio, Texas 78231 (the "**Company**").

2. Camp Mystic, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), have requested that the Company provide tax compliance services to the Debtors, namely Natural Fountains Properties, Inc., Camp Mystic, LLC, Mystic Camps Family Partnership LTD and Mystic Camps Management, LLC and the Company has consented to provide such services.

3. The Company may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to the Chapter 11 Cases, for persons that are parties in interest in the Chapter 11 Cases. The Company does not perform services for any such person in connection with the Chapter 11 Cases, or have any relationship with any

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

such person, their attorneys, or accountants that would be adverse to the Debtors or their estates with respect to the matter on which the Company is proposed to be employed.

4. As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in the Chapter 11 Cases.

5. Neither I nor any principal, partner, director, officer of, or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Company.

6. Neither I nor any principal, partner, director, officer, of or professional employed by, the Company, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

7. The Debtors owe the Company $_0.00_______for prepetition services, the payment of which is subject to limitations contained in United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

8. I understand that the amount owed by any of the Debtors to the Company for prepetition services will be treated as a general unsecured claim, and as such, the Company may file a proof of claim.

9. I further understand that this Declaration will not suffice as the Company's proof of claim.

10. As of the dates on which the Debtors commenced the Chapter 11 Cases, the Company was party to an agreement for indemnification with certain of the Debtors. A copy of such agreement is attached as Exhibit 1 to this Declaration.

11. Such agreement for indemnification (the "**OCP Agreement**") is subject to the following modifications, applicable during the pendency of the Chapter 11 Cases:

a. The Company shall not be entitled to indemnification, contribution, or reimbursement pursuant to the OCP Agreement for services other than the services provided under the OCP Agreement, unless such services and the indemnification, contribution, or reimbursement are approved by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").

b. Notwithstanding anything to the contrary in the OCP Agreement, the Debtors shall have no obligation to indemnify the Company, or provide contribution or reimbursement to the Company, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Company's gross negligence, willful misconduct, fraud, self-dealing (if found to be applicable), bad faith, or breach of fiduciary duty (if any); (ii) for a contractual dispute in which the Debtors allege the breach of the Company's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; (iii) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible; or (iv) settled prior to a judicial determination under (i) or (ii), but determined by the Court, after notice and a hearing, to be a claim or expense for which the Company should not receive indemnity, contribution, or reimbursement under the terms of the OCP Agreement as modified by the Court.

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing the Chapter 11 Cases, the Company believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the OCP Agreement (as modified pursuant to this Declaration), including the advancement of defense costs, the Company must file an application therefor in the Court, and the Debtors may not pay any such amounts to the Company before the entry of an order by the Court approving the payment. All parties in interest shall retain the right to object to any demand by the Company for indemnification, contribution, or reimbursement. In the event that the Company seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the OCP Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be

included in the Company's own applications, both interim and final, but determined by the Court after notice and a hearing.

12. The Company is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment by the Debtors, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 9/1/26

[signature]

**[DECLARANT]**

Exhibit 1

whitleypenn

01/20/2025

Mr. Dick Eastland
Mystic Camps Family Partnership, Ltd.
2404 Scenic Dr
Austin, TX 78703

Dear Mr. Dick Eastland:

We are pleased to confirm our understanding of the services Whitley Penn LLP ("Whitley Penn" or the "Firm") will provide for Mystic Camps Family Partnership, Ltd. and any and all other entities listed in Appendix A of this engagement letter (together "The Company"). This letter will define the terms and objectives of the engagement and the nature and limitations of the services Whitley Penn will provide to the Company:

**Scope of Engagement and Services to be Provided Include:**

Whitley Penn will prepare the federal and state tax returns and provide the services that are specifically listed in Appendix A of this engagement letter. The scope of this engagement is limited to those returns and services that are specifically listed in Appendix A and does not include any additional returns, projects, advice, or services that are not listed in Appendix A. During the course of this engagement, if it is determined that any additional federal or state returns are required to be filed, any additional projects are required to be completed, or any additional services are required to be performed, Whitley Penn will notify you of any potential adjustment to the scope of services under this agreement. If such additional services are required, those services will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

**Responsibilities of Engagement**

Whitley Penn will provide the services and perform the engagements in accordance with the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct and Statements on Standards for Tax Services and will adhere to all applicable rules governing practice before the Internal Revenue Service ("IRS") as defined in Treasury Department Circular No. 230 ("Circular 230").

Whitley Penn will prepare the Company's federal and state tax returns solely for the purpose of filing those returns with the IRS and the applicable state and local taxing authorities. The returns prepared by Whitley Penn are not intended to benefit or influence any third party, either to obtain credit or for any other purpose.

Whitley Penn will perform these engagements based on information and representations provided by the Company and will not audit or otherwise verify the data submitted by the Company.

Complete and accurate information is essential to the performance of Whitley Penn's work. In accordance with applicable professional standards, Whitley Penn will inquire with the Company when it is necessary to clarify or determine the reasonableness of any information that has been provided.

As previously stated, complete and accurate information is essential to the performance of Whitley Penn's work. Accordingly, in order to ensure that Whitley Penn is able to complete each of the returns listed in Appendix A before its applicable due date, the Company agrees that it will provide Whitley Penn with the complete and accurate information necessary to prepare each return no later than 30 days before its original due date. If the Company does not provide the information by that date, Whitley Penn may not be able to complete the return by its original due date and may recommend that the Company apply for an extension of time to file that return. Failure to timely file an extension request may result in penalties and interest that will begin to accrue on the return's original due date. Any such penalties and interest will be the Company's sole responsibility. Whitley Penn will not file an extension request without the express consent of the Company.

Note that all tax ultimately reported by the Company is due by the return's original due date and that an extension of time to file does not extend the time to pay the full amount of the tax. Any additional tax, penalties, and interest attributable to an underpayment of tax reported on an extension request resulting from the Company's failure to timely provide complete and accurate information will be the Company's sole responsibility.

Once a return has been extended, the Company agrees to provide Whitley Penn with the complete and accurate information necessary to prepare that return no later than 30 days before its final extended due date. If the Company does not provide the information by that date, Whitley Penn may be unable to complete the return prior to the final deadline. Any additional tax, penalties, and interest attributable to a late filing resulting from the Company's failure to timely provide complete and accurate information will be the Company's sole responsibility.

For purposes of the preceding two paragraphs and the Company's provision of complete and accurate information, the Company agrees to respond to any follow up request for additional information from Whitley Penn after its review and analysis of the Company's initial submission of information within a reasonable period of time following that request. The Company also agrees to work with Whitley Penn to resolve any questions or open issues within a reasonable period of time following its discussion of those questions or open issues with Whitley Penn. If the Company is unable to provide any additional requested information or resolve any questions or issues within a reasonable period of time, Whitley Penn may be unable to complete the respective return by its initial or extended due date.

Whitley Penn may deem it necessary to provide the Company with accounting and bookkeeping assistance solely for the purpose of preparing its tax returns. In the event that such services are necessary for Whitley Penn to prepare a complete and accurate tax return, it will contact the Company to notify it that those services are required. Such services will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement. Unless engaged to do so under the terms of a separate and specific engagement agreement, Whitley Penn will not prepare financial statements or otherwise be responsible for the accuracy of the Company's financial statements.

This engagement does not include any procedures designed to detect matters of error, fraud, theft or any other malfeasance and cannot be relied upon to disclose such matters. In addition, the

Company is responsible for developing and implementing internal controls for its operations and Whitley Penn is not responsible for identifying and communicating deficiencies in the Company's internal controls. Whitley Penn will not make any management decisions or perform any management functions on behalf of the Company.

The Company is responsible for maintaining adequate documentation to substantiate the accuracy and completeness of the tax information provided to Whitley Penn. Accordingly, the Company should retain all documents that provide evidence and support for its reported income, gains, losses, deductions, and credits as required by all applicable tax laws. The Company hereby represents that it will retain and produce such documentation that may be required to be provided to any applicable taxing authorities during the applicable statute of limitations periods.

The Company is responsible to inform Whitley Penn of the U.S. state and local jurisdictions and the foreign jurisdictions in which it conducts business. Whitley Penn will work with The Company to determine any filing requirements that may be required in the applicable U.S. state and local jurisdictions. Whitley Penn will not determine the requirements for or prepare any filings required to be submitted under the applicable laws of a foreign country. With regard to any filing requirements for a foreign country, the Company may choose to authorize Whitley Penn to engage or recommend an independent accounting firm from that foreign country to determine the requirements for and prepare such filings. If the Company does not wish to utilize a firm recommended by Whitley Penn, it agrees to engage its own third-party tax advisor to determine the requirements for and prepare the applicable filings for that foreign country.

The Company also agrees to inform Whitley Penn of any investments in foreign assets, including foreign brokerage and bank accounts. Such investments may require the filing of additional reports and disclosure statements with the IRS and other governmental agencies. Failure to file such reports can result in the imposition of both civil and criminal penalties, both of which may be significant. Whitley Penn will work with the Company to determine any U.S. filing requirements related to foreign investments. The Company agrees that Whitley Penn will not be responsible for any missed or delayed filings attributable to the Company's failure to disclose foreign assets or accounts.

Beginning January 1, 2024, certain business entities will be required to comply with the provisions of the Corporate Transparency Act ("CTA"). Due to the inherent legal nature of the procedural and reporting requirements necessary for compliance with the CTA, Whitley Penn's assistance to the Company with its required obligations under the CTA, including the filing of any beneficial ownership information ("BOI") reports, is not within the scope of this engagement. The Company has the sole responsibility to satisfy the requirements for its compliance with the CTA, including the collection of its relevant ownership information and the filing of applicable BOI reports. Whitley Penn will have no liability resulting from the Company's failure to comply with any and all CTA requirements. Whitley Penn recommends that the Company contact its legal counsel to address the applicable documentation and reporting requirements it may have under the CTA. Information regarding the CTA and BOI reporting requirements is available at https://www.fincen.gov/boi.

The IRS considers virtual currency (i.e., Bitcoin) as property for U.S. federal income tax purposes. Therefore, any transactions involving virtual currency are subject to the same reporting requirements as other property transactions. The Company agrees to provide Whitley Penn with a complete and accurate record of all transactions involving the sale or exchange of virtual currency and all transactions that were settled using virtual currency.

Whitley Penn will perform the engagement based on the relevant tax authority that is in effect at the time of the completion of the engagement. Tax authority includes the Internal Revenue Code ("IRC"), Treasury Regulations, judicial decisions, IRS positions including Revenue Rulings, Revenue Procedures, Private Letter Rulings, IRS counsel pronouncements and other IRS guidance. Tax authority also includes state statutes, judicial decisions, and other administrative pronouncements. Tax authority that is in effect at the time of the engagement may be subject to change by subsequent legislation, judicial rulings, and administrative changes. If Whitley Penn determines that a subsequent change to the relevant tax authority issued after the completion of the current engagement may be applied retroactively, Whitley Penn will inform the Company of the change. If the Company and Whitley Penn agree to change any filing or report based on a change in relevant tax authority, such change to the filing or report will constitute a separate engagement for which a new engagement agreement will be executed.

Under Circular 230 and IRC Section 6694, Whitley Penn is prohibited from signing a federal income tax return unless it has a reasonable belief that all tax return positions reported in the return are supported by substantial authority or has a reasonable basis for reporting a return position and that position is adequately disclosed in the return in accordance with prescribed disclosure requirements.

Whitley Penn will inform the Company of the reporting disclosures and documentation required for a tax return position it recommends be included in a tax return or other tax filing it prepares or that will be included in a tax return or other tax filing prepared by a third party. If the Company wishes to take a tax return position based on the advice of another third-party consultant or tax advisor, the Company agrees to obtain a written statement from that advisor that the position meets the applicable standards required by all applicable taxing authorities.

If the Company does not agree to include the required reporting disclosures and documentation in the applicable tax return or tax filing or retain the supporting documentation identified by Whitley Penn, Whitley Penn will not sign that tax return or other tax filing as paid preparer. Whitley Penn also will not sign a tax return or other tax filing as paid preparer if the Company wishes to adopt a tax return position that Whitley Penn advises will not meet the applicable authority and documentation standards required by Circular 230 or other applicable federal or state professional standards, including any tax return position recommended by another third-party consultant or advisor.

Taxpayers that participate in listed or reportable transactions may be subject to substantial penalties for failure to disclose those transactions on Form 8886, Reportable Transaction Disclosure Statement (For details regarding reportable and listed transactions, please see the information at www.irs.gov/instructions/i8886). Substantial penalties also may be imposed on taxpayers that fail to disclose their participation in a tax shelter on Form 8271, Investor Reporting of Tax Shelter Registration Number. The Company agrees to advise Whitley Penn in writing of its participation in any tax shelters or reportable or listed transactions. If the Company does not agree to properly disclose its participation in such transactions, Whitley Penn may be unable to sign the Company's return as paid preparer.

In accordance with Circular 230 and other applicable federal and state professional standard requirements, Whitley Penn will inform the Company of the potential penalties and interest that may be applicable to the Company's tax return positions or failure to comply with tax law, including its failure to submit any required filings, documentation or disclosures. Whitley Penn

will not be liable for any additional tax, penalty, and interest attributable to a tax return or other tax filing that Whitley Penn recommends that the Company file but the Company declines to file. Whitley Penn also will not be liable for any additional tax, penalty, and interest related to a tax return position if it is reported on a tax return or tax filing prepared by a third party. Whitley Penn also will not be liable for any additional tax, penalty, and interest resulting from the Company's failure to notify Whitley Penn of its participation in any tax shelters or reportable or listed transactions.

The Company acknowledges that it has the ultimate and final responsibility with the applicable taxing authorities for its tax filings and the ultimate liability for the tax and any penalty and interest related to those filings. Accordingly, the Company agrees it will thoroughly and carefully review such filings prepared by Whitley Penn before submitting them to any taxing authority. The Company agrees to hold Whitley Penn and any of its partners, principals, or employees harmless for its failure to follow Whitley Penn's recommendations regarding the submission of required tax filings, documentation requirements, reporting requirements, tax return positions, and tax return disclosures. Whitley Penn reserves the right to withdraw from this engagement before its completion if the Company disagrees or fails to follow its recommendations regarding the submission of required tax filings, documentation requirements, reporting requirements, tax return positions, or tax return disclosures or it determines for any other reason that professional standards require withdrawal.

**Client Records**

In accordance with all applicable professional standards and regulatory and legal requirements, Whitley Penn will prepare and retain the necessary working papers and documents required to support any tax advice provided or tax return positions taken on behalf of the Company. In accordance with applicable professional standards, any tax working papers are the property of Whitley Penn and Whitley Penn retains the ownership of those working papers at all times. Whitley Penn will retain these working papers in accordance with its internal record keeping policies. Any original documents or records that the Company submits to Whitley Penn are the property of the Company and will be returned upon the Company's request in accordance with applicable laws and professional standards.

The Company will own all tangible written material prepared for and delivered to Whitley Penn under this engagement letter except as follows: Whitley Penn owns its working papers, pre-existing materials, and any general skills, know-how, processes, software or other intellectual property which Whitley Penn may have discovered or created as a result of this engagement.

In providing services to the Company, Whitley Penn may securely transmit electronic data over the internet, store electronic data via computer software applications hosted remotely on the internet, or allow access to electronic data through third-party hosted and secured portals or clouds. In using these data communication and storage methods, Whitley Penn employs specific policies and procedures designed to maintain secure access to confidential data in accordance with its obligations under all applicable laws and professional standards. Whitley Penn also requires all third-party vendors that it utilizes to transmit and store confidential data to employ similar security policies and procedures. The Company recognizes and consents to Whitley Penn's use of these electronic devices and applications and submission of confidential information to third-party vendors during this engagement.

The Company authorizes that all information furnished to Whitley Penn for or in connection with the preparation of its tax returns may, for a period of up to one year from the date of this engagement letter, be disclosed to and used by Whitley Penn's affiliates, related entities, or subcontractors, some of which may be located outside the United States, for the purpose of their assistance to Whitley Penn in providing tax return preparation services. Disclosures under this paragraph may consist of all information contained in tax returns. The Company must inform Whitley Penn in writing if it wishes to request a more limited disclosure of its tax return information. If the Company does not inform Whitley Penn that it wishes to request a more limited disclosure, it acknowledges that its tax return information may be disclosed to Whitley Penn's affiliates, related entities, or subcontractors located outside the United States in order for them to provide tax return preparation services.

The Company understands that Whitley Penn may be compelled, whether by subpoena, regulatory request, or other order or by demand by a civil litigant or governmental entity, to disclose to a third-party records belonging to the Company or other confidential information Whitley Penn received pursuant to the agreement. To the extent permitted under law, Whitley Penn shall provide the Company with prompt notice of same so that the Company may seek a protective order or other appropriate protective remedy to prevent the disclosure of the confidential information. The Company shall provide Whitley Penn with prompt instructions as to whether the material should be produced or withheld. In the event that such a protective order or other protective remedy is not fully obtained, Whitley Penn shall furnish only that portion of the confidential information that, in the opinion of its own legal counsel, it is legally required to disclose. The Company agrees that in the event that Whitley Penn incurs costs of production to comply with the request, including filing and attorney's fees, the Company shall reimburse such expenses as invoiced in accordance with Whitley Penn's regular practices.

In the event that Whitley Penn is requested and authorized by the Company or required by government regulation, subpoena or other legal process to produce information or provide its personnel for interviews or depositions in relation to a matter involving the Company, the Company agrees to reimburse Whitley Penn for its professional time (at its standard hourly billing rates), out-of-pocket expenses, and the fees and expenses of its counsel that were incurred in responding to such requests. This will not apply if Whitley Penn is a party to or the focus of the proceeding or inquiry for which the information is sought.

**Terms of Engagement and Fees**

Whitley Penn will commence its services upon receipt of this executed agreement and the information necessary to complete the engagement that Whitley Penn requests from the Company. The engagement will be deemed to be complete upon the earliest of the following events:

- For electronically filed returns, the date of filing and acceptance of those tax returns by the applicable taxing authorities. For any non-electronically filed returns, the date of delivery of those tax returns to the Company for review and filing,
- One year from the date of the execution of this agreement, or
- Written notification by either party that the engagement is terminated under the applicable provisions of this agreement.

Once the Company's returns are deemed complete under the terms of this agreement (acceptance of electronically filed returns or delivery of non-electronically filed returns), Whitley Penn will

have no obligation to update those returns for subsequent legislative or administrative changes or judicial decisions. Any update made to a return deemed complete under the terms of this agreement will be treated as an "additional service" in accordance with the provisions subsequently addressed in this agreement.

Unless specifically described in the previous engagement scope listing, any additional filings, returns, reports, or services that are completed by Whitley Penn during the course of this engagement will be considered services outside the scope of this engagement letter and will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

Unless specifically listed in Appendix A as a service that Whitley Penn will provide as part of this engagement agreement, the Company will be responsible for preparing and filing all its federal and state payroll tax returns and reports and for preparing and filing all its Forms W-2, Forms 1099, and related transmittal forms. Whitley Penn will complete only the payroll returns, reports, and forms that the Company requests in writing for Whitley Penn to prepare and Whitley Penn agrees to such request. Whitley Penn's services for preparing any of these returns, reports, or forms will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

The Company may be required to make federal and state quarterly estimated tax payments. If the Company is eligible to determine its estimated income tax payments for the 2025 tax year based on its taxable income for the 2024 tax year (on a "safe harbor" basis), Whitley Penn will calculate those payments at your request. If the Company is not eligible for the "safe harbor" method and its quarterly tax payments for the 2025 tax year are required to be calculated based on its current year taxable income, any calculations performed by Whitley Penn will be considered outside the scope of this engagement. Whitley Penn's services for calculating those quarterly payments will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

In addition, tax planning services are not included in the scope of this engagement. However, during the engagement period, Whitley Penn may, at its sole discretion, present potential tax planning opportunities to the Company for its consideration. These tax planning services also will be treated as "additional services" in accordance with the provisions included in the subsequent paragraph.

The Company may also request that Whitley Penn perform additional services not contemplated in this engagement letter. This includes additional research and analysis related to reporting tax return positions (including those formulated by third-party consultants and advisors), services provided and responses on the Company's behalf to any inquiry or examination by any federal or state governmental agency or tax authority, and any other procedures, calculations, projects, or advice that require material analysis by Whitley Penn. The fees for Whitley Penn's services outside the scope of this engagement agreement will be separately identified and invoiced. In some cases, Whitley Penn may issue an addendum to this engagement letter or issue a separate engagement letter for the additional services. In the absence of any other written communication from Whitley Penn documenting such additional services, Whitley Penn's services will continue to be governed by the terms of this engagement letter.

Whitley Penn's fees for its services will be billed in accordance with the terms provided in this section of the agreement. Whitley Penn's fees are based on several factors including, but not limited

to, the complexity of the work it performs, the experience level of the personnel required to complete the engagement, the Company's responsiveness to its inquiries, and the timeliness, quality and completeness of the information provided to it.

Whitley Penn's invoices for these fees will be rendered each month as work progresses and are payable upon receipt. The Company agrees to pay reasonable attorney fees and collection costs incurred related to the collection of fees for services performed under the terms of this engagement. In accordance with Whitley Penn's firm policy, work may be suspended if the Company's account becomes 30 days or more past due and will not resume until the account is paid in full. In addition, invoices not paid in full within 30 days of the invoice date will be assessed interest at a rate of one percent per month. If Whitley Penn elects to terminate its services for nonpayment, the engagement will be deemed to have been complete even if Whitley Penn has not actually completed the engagement. The Company will be obligated to compensate Whitley Penn for all time expended and to reimburse it for all out-of-pocket expenditures through the date of termination.

**Whitley Penn's liability to the Company and any third party for any and all damages arising out of this engagement agreement, including but not limited to contractual liability, the Firm's negligence, errors and omissions, and breach of contract or breach of warranty shall not exceed the aggregate amount of fees paid to the Firm during the terms of the agreement. Under no circumstances shall Whitley Penn be liable for consequential, punitive, incidental or special damages or claims in the nature of lost profits, lost revenues or opportunity costs. The terms of this paragraph shall survive the termination and expiration of the terms of this engagement. The Company understands and accepts that this agreement prohibits the recovery of punitive damages.**

**Except to the extent determined to have resulted from the deliberate or intentional misconduct of Whitley Penn personnel, the Company agrees to indemnify and hold harmless Whitley Penn and any of its partners, principals, or employees from any claims, liabilities, costs and expenses related to the services under this agreement that are attributable to false, deceptive or incomplete representations of management or other Company personnel, or for any claims made by third parties who relied on Whitley Penn's work product without Whitley Penn's authorization. The Company further agrees that all services shall be provided by Whitley Penn and that all claims, if any, will be made against Whitley Penn and not against any partner, principal, or employee of Whitley Penn. The Company will indemnify Whitley Penn for any costs, expenses or fees incurred in a claim or suit made against any Whitley Penn partner, principal, or employee in an individual capacity.**

In the unlikely event that differences concerning Whitley Penn's services or fees should arise that are not resolved by mutual agreement, to facilitate resolution and save time and expense of both parties, the Company and Whitley Penn agree that any controversy, claim, dispute or questions arising out of or in connection with this agreement or the engagement shall be determined by arbitration conducted in Tarrant County, Texas in accordance with the rules of, but not required to be administered by, the American Arbitration Association. Any decision rendered by the arbitrator shall be binding on both parties to this agreement. The costs of any arbitration shall be borne equally by the parties. The parties agree that any claim that may arise between them regarding any tax return shall be made within two years of the due date of the tax return, including extensions. Any claim that may arise regarding any other work product shall be made within two years of the delivery date of the work product. Any claim not filed by these respective dates shall be waived and barred and both parties agree that the discovery rule and any other common law or statutory doctrine of tolling is hereby waived.

If any portion of this agreement is deemed invalid or unenforceable, such finding will not operate to invalidate the remainder of the terms set forth in the engagement letter. This letter replaces and supersedes any previous proposals, correspondence and understanding, whether written or oral. The agreements contained in this engagement letter shall survive the completion or termination of this engagement.

Whitley Penn appreciates the opportunity to be of service to the Company and believes this letter accurately summarizes the significant terms of the engagement. If you have any questions, please feel free to contact Bob Herbst at (210) 477-2703. If you agree with the terms of the engagement as described in this letter, please sign and date the letter in the space provided below and return it to me.

Sincerely,

Robert M. Herbst

**ACCEPTED:**

This letter correctly sets forth the understanding of Mystic Camps Family Partnership, Ltd.. By signing below, I represent that I have the authority to bind the Company (and all entities listed in Appendix A) to the terms of this agreement.

Dick Eastland
Mr. Dick Eastland

1/28/25
Date

# Appendix A

| Name | Service Type | Form | Period End |
|---|---|---|---|
| Mystic Camps Family Partnership, Ltd. | Tax - 1065 Partnership | Federal 1065 | 12/31/2024 |
| Mystic Camps Family Partnership, Ltd. | Tax - TX Franchise Tax | Mystic Camps Management, LLC Affiliate | 12/31/2024 |
| Mystic Camps Family Partnership, Ltd. | Tax - TX Franchise Tax | Camp Mystic, LLC Affiliate | 12/31/2024 |
| Mystic Camps Family Partnership, Ltd. | Tax - TX Franchise Tax | Natural Fountains Properties, Inc. Affiliate | 12/31/2024 |
| Mystic Camps Family Partnership, Ltd. | Tax - TX Franchise Tax | | 12/31/2024 |
| Natural Fountains Properties, Inc. | Tax - 1120 Corporation | Federal 1120 | 12/31/2024 |
| Richard G. Eastland 1990 Trust | Tax - 1041 Fiduciary | Federal 1041 | 12/31/2024 |
| Richard G. Eastland Appointment Trust | Tax - 1041 Fiduciary | Federal 1041 | 12/31/2024 |

Exhibit 1

whitleypenn

February 27, 2026

Ms. Tweety Eastland
Mystic Camps Family Partnership, Ltd.
2689 Highway 39
Hunt, TX 78024

Dear Tweety:

We are pleased to confirm our understanding of the services Whitley Penn LLP ("Whitley Penn" or the "Firm") will provide for Mystic Camps Family Partnership, Ltd. and any and all other entities listed in Appendix A of this engagement letter (together "The Company"). This letter will define the terms and objectives of the engagement and the nature and limitations of the services Whitley Penn will provide to the Company:

**Scope of Engagement and Services to be Provided Include:**

Whitley Penn will prepare the federal and state tax returns and provide the services that are specifically listed in Appendix A of this engagement letter. The scope of this engagement is limited to those returns and services that are specifically listed in Appendix A and does not include any additional returns, projects, advice, or services that are not listed in Appendix A. During the course of this engagement, if it is determined that any additional federal or state returns are required to be filed, any additional projects are required to be completed, or any additional services are required to be performed, Whitley Penn will notify you in writing of any potential adjustment to the scope of services under this agreement. If such additional services are required, those services will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

**Responsibilities of Engagement**

Whitley Penn will provide the services and perform the engagements in accordance with the Texas State Board of Public Accountancy Rules of Professional Conduct, the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct and Statements on Standards for Tax Services, and will adhere to all applicable statutory, regulatory, and administrative requirements for preparers of federal and state income tax returns.

Whitley Penn will prepare the Company's federal and state tax returns solely for the purpose of filing those returns with the IRS and the applicable state and local taxing authorities. The returns prepared by Whitley Penn are not intended to benefit or influence any third party, either to obtain credit or for any other purpose.

Whitley Penn will perform these engagements based on information and representations provided by the Company and will not audit or otherwise verify the data submitted by the Company. In



Austin | Dallas | Fort Worth | Hobbs | Houston | Midland | Odessa | Plano | San Antonio
whitleypenn.com

WE ARE AN INDEPENDENT MEMBER OF
HLB
THE GLOBAL ADVISORY AND ACCOUNTING NETWORK

accordance with applicable professional standards, Whitley Penn will inquire with the Company when it is necessary to clarify or determine the reasonableness of any information that has been provided and to request any additional information required to file a complete and accurate return.

Complete and accurate information is essential to the performance of Whitley Penn's work. If Whitley Penn determines in its sole discretion that the Company has failed to provide the information necessary to file a complete and accurate return and/or has failed to reasonably respond to repeated Whitley Penn inquiries regarding submitted information or requests for additional information, Whitley Penn reserves the right to terminate the engagement and will notify the Company in writing of its decision to terminate.

As previously stated, complete and accurate information is essential to the performance of Whitley Penn's work. Accordingly, in order to ensure that Whitley Penn is able to complete each of the returns listed in Appendix A before its applicable due date, the Company agrees that it will provide Whitley Penn with the complete and accurate information necessary to prepare each return no later than 30 days before its original due date. If the Company does not provide the information by that date, Whitley Penn may not be able to complete the return by its original due date. If Whitley Penn is unable to complete the return by its original due date, the Company will be required to apply for an extension of time to file that return. Failure to timely file an extension request may result in penalties and interest that will begin to accrue on the return's original due date. Any such penalties and interest will be the Company's sole responsibility. Whitley Penn will not file an extension request without the express consent of the Company.

Note that all tax ultimately reported by the Company is due by the return's original due date and that an extension of time to file does not extend the time to pay the full amount of the tax. Any additional tax, penalties, and interest attributable to an underpayment of tax reported on an extension request resulting from the Company's failure to timely provide complete and accurate information will be the Company's sole responsibility.

Once a return has been extended, the Company agrees to provide Whitley Penn with the complete and accurate information necessary to prepare that return no later than 30 days before its final extended due date. If the Company does not provide the information by that date, Whitley Penn may be unable to complete the return prior to the final deadline. Any additional tax, penalties, and interest attributable to a late filing resulting from the Company's failure to timely provide complete and accurate information will be the Company's sole responsibility.

For purposes of the preceding two paragraphs and the Company's provision of complete and accurate information, the Company agrees to respond to any follow-up request for additional information from Whitley Penn after its review and analysis of the Company's initial submission of information within a reasonable period of time following that request. The Company also agrees to work with Whitley Penn to resolve any questions or open issues within a reasonable period of time following its discussion of those questions or open issues with Whitley Penn. If the Company is unable to provide any additional requested information or resolve any questions or issues within a reasonable period of time, Whitley Penn may be unable to complete the respective return by its initial or extended due date.

Whitley Penn may deem it necessary to provide the Company with accounting and bookkeeping assistance solely for the purpose of preparing its tax returns. In the event that such services are necessary for Whitley Penn to prepare a complete and accurate tax return, it will contact the Company to notify it that those services are required. Such services will be treated as "additional

services" in accordance with the provisions subsequently addressed in this agreement. Unless engaged to do so under the terms of a separate and specific engagement agreement, Whitley Penn will not prepare financial statements or otherwise be responsible for the accuracy of the Company's financial statements.

This engagement does not include any procedures designed to detect matters of error, fraud, theft, or any other malfeasance and cannot be relied upon to disclose such matters. In addition, the Company is responsible for developing and implementing internal controls for its operations and Whitley Penn is not responsible for identifying and communicating deficiencies in the Company's internal controls. Whitley Penn will not make any management decisions or perform any management functions on behalf of the Company.

The Company is responsible for maintaining adequate documentation to substantiate the accuracy and completeness of the tax information provided to Whitley Penn. Accordingly, the Company should retain all documents that provide evidence and support for its reported income, gains, losses, deductions, and credits as required by all applicable tax laws. The Company hereby represents that it will retain and produce such documentation that may be required to be provided to any applicable taxing authorities during the applicable statute of limitations period.

The Company is responsible to inform Whitley Penn of the U.S. state and local jurisdictions and the foreign jurisdictions in which it conducts business. Whitley Penn will work with the Company to determine any filing requirements that may be required in the applicable U.S. state and local jurisdictions. Whitley Penn will not determine the requirements for or prepare any filings required to be submitted under the applicable laws of a foreign country. With regard to any filing requirements for a foreign country, the Company may choose to authorize Whitley Penn to engage or recommend an independent accounting firm from that foreign country to determine the requirements for and prepare such filings. If the Company does not wish to utilize a firm recommended by Whitley Penn, it agrees to engage its own third-party tax advisor to determine the requirements for and prepare the applicable filings for that foreign country.

The Company also agrees to inform Whitley Penn of any investments in foreign assets, including foreign brokerage and bank accounts. Such investments may require the filing of additional reports and disclosure statements with the IRS and other governmental agencies. Failure to file such reports can result in the imposition of both civil and criminal penalties, both of which may be significant. Whitley Penn will work with the Company to determine any U.S. filing requirements related to foreign investments. The Company agrees that Whitley Penn will not be responsible for any missed or delayed filings attributable to the Company's failure to disclose foreign assets or accounts.

The IRS considers virtual currency (i.e., Bitcoin) as property for U.S. federal income tax purposes. Therefore, any transactions involving virtual currency are subject to the same reporting requirements as other property transactions. The Company agrees to provide Whitley Penn with a complete and accurate record of all transactions involving the sale or exchange of virtual currency and all transactions that were settled using virtual currency.

Whitley Penn will perform the engagement based on the relevant tax authority that is in effect at the time of the completion of the engagement. Tax authority includes the Internal Revenue Code ("IRC"), Treasury Regulations, judicial decisions, IRS positions including Revenue Rulings, Revenue Procedures, Private Letter Rulings, IRS counsel pronouncements, and other IRS guidance. Tax authority also includes state statutes, judicial decisions, and other administrative pronouncements. Tax authority that is in effect at the time of the engagement may be subject to

change by subsequent legislation, judicial rulings, and administrative changes. If Whitley Penn determines that a subsequent change to the relevant tax authority issued after the completion of the current engagement may be applied retroactively, Whitley Penn will inform the Company of the change. If the Company and Whitley Penn agree to change any filing or report based on a change in relevant tax authority, such change to the filing or report will constitute a separate engagement for which a new engagement agreement will be executed.

Under IRC Section 6694 and applicable federal and state professional standards, Whitley Penn is prohibited from signing a federal income tax return unless it has a reasonable belief that all tax return positions reported in the return are supported by substantial authority or has a reasonable basis for reporting a return position and that position is adequately disclosed in the return in accordance with prescribed disclosure requirements.

Whitley Penn will inform the Company of the reporting disclosures and documentation required for a tax return position it recommends be included in a tax return or other tax filing it prepares or that will be included in a tax return or other tax filing prepared by a third party. If the Company wishes to take a tax return position based on the advice of another third-party consultant or tax advisor, the Company agrees to obtain a written statement from that advisor that the position meets the applicable standards required by all applicable taxing authorities.

If the Company does not agree to include the required reporting disclosures and documentation in the applicable tax return or tax filing or retain the supporting documentation identified by Whitley Penn, Whitley Penn will not sign that tax return or other tax filing as paid preparer. Whitley Penn also will not sign a tax return or other tax filing as paid preparer if the Company wishes to adopt a tax return position that Whitley Penn advises will not meet the applicable authority and documentation standards required by applicable federal and state professional standards, including any tax return position recommended by another third-party consultant or advisor.

Taxpayers that participate in listed or reportable transactions may be subject to substantial penalties for failure to disclose those transactions on Form 8886, Reportable Transaction Disclosure Statement (For details regarding reportable and listed transactions, please see the information at www.irs.gov/instructions/i8886). Substantial penalties also may be imposed on taxpayers that fail to disclose their participation in a tax shelter on Form 8271, Investor Reporting of Tax Shelter Registration Number. The Company agrees to advise Whitley Penn in writing of its participation in any tax shelters or reportable or listed transactions. If the Company does not agree to properly disclose its participation in such transactions, Whitley Penn may be unable to sign the Company's return as paid preparer.

In accordance with applicable federal and state professional standard requirements, Whitley Penn will inform the Company of the potential penalties and interest that may be applicable to the Company's tax return positions or failure to comply with tax law, including its failure to submit any required filings, documentation, or disclosures. Whitley Penn will not be liable for any additional tax, penalty, or interest attributable to a tax return or other tax filing that Whitley Penn recommends that the Company file but the Company declines to file. Whitley Penn also will not be liable for any additional tax, penalty, and interest related to a tax return position if it is reported on a tax return or tax filing prepared by a third party. Whitley Penn also will not be liable for any additional tax, penalty, and interest resulting from the Company's failure to notify Whitley Penn of its participation in any tax shelters or reportable or listed transactions.

The Company acknowledges that it has the ultimate and final responsibility with the applicable taxing authorities for its tax filings and the ultimate liability for the tax and any penalty and interest related to those filings. Accordingly, the Company agrees it will thoroughly and carefully review such filings prepared by Whitley Penn before submitting them to any taxing authority. **The Company agrees to hold Whitley Penn and any of its partners, principals, or employees harmless for its failure to follow Whitley Penn's recommendations regarding the submission of required tax filings, documentation requirements, reporting requirements, tax return positions, and tax return disclosures.** Whitley Penn reserves the right to withdraw from this engagement before its completion if the Company disagrees or fails to follow Whitley Penn's recommendations regarding the submission of required tax filings, documentation requirements, reporting requirements, tax return positions, tax return disclosures, or it determines for any other reason that professional standards require withdrawal.

**Client Records**

In accordance with all applicable professional standards and regulatory and legal requirements, Whitley Penn will prepare and retain the necessary working papers and documents required to support any tax advice provided or tax return positions taken on behalf of the Company. In accordance with applicable professional standards, any tax working papers are the property of Whitley Penn and Whitley Penn retains the ownership of those working papers at all times. Whitley Penn will retain these working papers in accordance with its internal record keeping policies. Any original documents or records that the Company submits to Whitley Penn are the property of the Company and will be returned upon the Company's request in accordance with applicable laws and professional standards.

The Company will own all tangible written material prepared for and delivered to Whitley Penn under this engagement letter except as follows: Whitley Penn owns its working papers, pre-existing materials, and any general skills, know-how, processes, software or other intellectual property which Whitley Penn may have discovered or created as a result of this engagement.

In providing services to the Company, Whitley Penn may securely transmit electronic data over the internet, store electronic data via computer software applications hosted remotely on the internet, or allow access to electronic data through third-party hosted and secured portals or clouds. In using these data communication and storage methods, Whitley Penn employs specific policies and procedures designed to maintain secure access to confidential data in accordance with its obligations under all applicable laws and professional standards. Whitley Penn also requires all third-party vendors that it utilizes to transmit and store confidential data to employ similar security policies and procedures. The Company recognizes and consents to Whitley Penn's use of these electronic devices and applications and submission of confidential information to third-party vendors during this engagement.

The Company authorizes that all information furnished to Whitley Penn for or in connection with the preparation of its tax returns may, for a period of up to one year from the date of this engagement letter, be disclosed to and used by Whitley Penn's affiliates, related entities, or subcontractors, some of which may be located outside the United States, for the purpose of their assistance to Whitley Penn in providing tax return preparation services. Disclosures under this paragraph may consist of all information contained in tax returns. The Company must inform Whitley Penn in writing if it wishes to request a more limited disclosure of its tax return information. If the Company does not inform Whitley Penn that it wishes to request a more limited disclosure, it acknowledges that its tax return information may be disclosed to Whitley Penn's affiliates, related entities, or

subcontractors located outside the United States in order for them to provide tax return preparation services.

The Company understands that Whitley Penn may be compelled, whether by subpoena, regulatory request, or other order or by demand by a civil litigant or governmental entity, to disclose to a third-party records belonging to the Company or other confidential information Whitley Penn received pursuant to the agreement. To the extent permitted under law, Whitley Penn shall provide the Company with prompt notice of same so that the Company may seek a protective order or other appropriate protective remedy to prevent the disclosure of the confidential information. The Company shall provide Whitley Penn with prompt instructions as to whether the material should be produced or withheld. In the event that such a protective order or other protective remedy is not fully obtained, Whitley Penn shall furnish only that portion of the confidential information that, in the opinion of its own legal counsel, it is legally required to disclose. The Company agrees that in the event that Whitley Penn incurs costs of production to comply with the request, including filing and attorney's fees, the Company shall reimburse such expenses as invoiced in accordance with Whitley Penn's regular practices.

In the event that Whitley Penn is requested and authorized by the Company or required by government regulation, subpoena or other legal process to produce information or provide its personnel for interviews or depositions in relation to a matter involving the Company, the Company agrees to reimburse Whitley Penn for its professional time (at its standard hourly billing rates), out-of-pocket expenses, and the fees and expenses of its counsel that were incurred in responding to such requests. This will not apply if Whitley Penn is a party to or the focus of the proceeding or inquiry for which the information is sought.

**Terms of Engagement and Fees**

Whitley Penn will commence its services upon receipt of this executed agreement and the information necessary to complete the engagement that Whitley Penn requests from the Company. The engagement will be deemed to be complete upon any of the following applicable events:

- For electronically filed returns, the date of filing and acceptance of those tax returns by the applicable taxing authorities. For any non-electronically filed returns, the date of delivery of those tax returns to the Company for review and filing,
- For "additional services," the date those services are completed by Whitley Penn as determined in its sole discretion, or
- Written notification by either party that the engagement is terminated under any applicable provision of this agreement.

Once the Company's returns are deemed complete under the terms of this agreement (acceptance of electronically filed returns or delivery of non-electronically filed returns), Whitley Penn will have no obligation to update those returns for subsequent legislative or administrative changes or judicial decisions. Any update made to a return deemed complete under the terms of this agreement will be treated as an "additional service" in accordance with the provisions subsequently addressed in this agreement.

Unless specifically described in the previous engagement scope listing, any additional filings, returns, reports, or services that are completed by Whitley Penn during the course of this engagement will be considered services outside the scope of this engagement letter and will be

treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

Unless specifically listed in Appendix A as a service that Whitley Penn will provide as part of this engagement agreement, the Company will be responsible for preparing and filing all its federal and state payroll tax returns and reports and for preparing and filing all its Forms W-2, Forms 1099, and related transmittal forms. Whitley Penn will complete only the payroll returns, reports, and forms that the Company requests in writing for Whitley Penn to prepare and Whitley Penn agrees to such request. Whitley Penn's services for preparing any of these returns, reports, or forms will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement. If such services are included within the scope of this engagement, by signing this agreement the Company gives Whitley Penn the express authority to electronically transmit any payroll returns, reports and forms listed in Appendix A to the applicable governmental authority.

The Company may be required to make federal and state quarterly estimated tax payments. If the Company is eligible to determine its estimated income tax payments for the 2026 tax year based on its taxable income for the 2025 tax year (on a "safe harbor" basis), Whitley Penn will calculate those payments at your request. If the Company is not eligible for the "safe harbor" method and its quarterly tax payments for the 2026 tax year are required to be calculated based on its current year taxable income, any calculations performed by Whitley Penn will be considered outside the scope of this engagement. Whitley Penn's services for calculating those quarterly payments will be treated as "additional services" in accordance with the provisions subsequently addressed in this agreement.

Notwithstanding any services that WP may provide calculating the Company's quarterly estimated tax payments, the Company agrees that it is solely responsible for the remittance of its federal and state income taxes, including any quarterly estimated tax payments. Whitley Penn will not remit any federal or state income tax payments on behalf of the Company, including quarterly estimated tax payments. **The Company agrees that Whitley Penn will not be liable for any tax, penalties, interest, related professional fees, or other expenses attributable to the Company's remittance of its federal or state income tax payments, including quarterly estimated tax payments.**

The "Modernizing Payments to and from America's Bank Account" presidential executive order, signed by President Trump on March 25, 2025, mandated that all payments from the U.S. government after September 30, 2025, must be made electronically. Accordingly, any overpayment of the Company's 2025 federal income tax that the Company chooses to have refunded, rather than applied to its 2026 estimated income tax payments, must be deposited into a designated account that will be reported on the Company's federal income tax return. It is the Company's responsibility to provide Whitley Penn with the correct banking information including, but not limited to, accurate account and routing numbers, and to review the reported banking information for accuracy prior to the submission of the return.

In addition, tax planning services are not included in the scope of this engagement. However, during the engagement period, Whitley Penn may, at its sole discretion, present potential tax planning opportunities to the Company for its consideration. These tax planning services also will be treated as "additional services" in accordance with the provisions included in the subsequent paragraph.

The Company may also request that Whitley Penn perform additional services not contemplated in this engagement letter. This includes, but is not limited to, additional research and analysis related

to reporting tax return positions (including those formulated by third-party consultants and advisors), services provided and responses on the Company's behalf to any inquiry or examination by any federal or state governmental agency or tax authority, and any other procedures, calculations, projects, or advice that require material analysis by Whitley Penn. The fees for Whitley Penn's services outside the scope of this engagement agreement will be separately identified and invoiced. In some cases, Whitley Penn may issue an addendum to this engagement letter or issue a separate engagement letter for the additional services. In the absence of any other written communication from Whitley Penn documenting such additional services, those additional services will be governed by the terms of this engagement letter.

Whitley Penn's fees for its services will be billed in accordance with the terms provided in this section of the agreement. Whitley Penn's fees are based on several factors including, but not limited to, the complexity of the work it performs, the experience level of the personnel required to complete the engagement, the Company's responsiveness to its inquiries, and the timeliness, quality and completeness of the information provided to it.

Whitley Penn's invoices for these fees will be rendered each month as work progresses and are payable upon receipt. The Company agrees to pay reasonable attorney fees and collection costs incurred related to the collection of fees for services performed under the terms of this engagement. In accordance with Whitley Penn's firm policy, work may be suspended if the Company's account becomes 30 days or more past due and will not resume until the account is paid in full. In addition, invoices not paid in full within 30 days of the invoice date will be assessed interest at a rate of one percent per month.

If the Company fails to pay Whitley Penn's invoices for fees after repeated requests for payment, Whitley Penn may issue a formal demand for payment and/or refer the Company's account balances for collection action. If Whitley Penn issues a demand for payment or refers the Company's account for collection action, Whitley Penn reserves the right to immediately terminate the engagement. Whitley Penn will notify the Company in writing of its intention to terminate the engagement if the Company does not make full payment by a specified date.

If Whitley Penn elects to terminate its services for nonpayment, the engagement will be deemed to have been complete even if Whitley Penn has not actually completed all services listed in Appendix A or any other services subject to the terms of this agreement, including services treated as "additional services" in accordance with the provisions of this agreement. The Company will be obligated to compensate Whitley Penn for all time expended and to reimburse it for all out-of-pocket expenditures through the date of termination.

**Whitley Penn's liability to the Company and any third party for any and all damages arising out of this engagement agreement, including but not limited to contractual liability, the Firm's negligence, errors and omissions, and breach of contract or breach of warranty shall not exceed the aggregate amount of fees paid to the Firm during the terms of the agreement. Under no circumstances shall Whitley Penn be liable for consequential, punitive, incidental, or special damages or claims in the nature of lost profits, lost revenues, or opportunity costs. The terms of this paragraph shall survive the termination and expiration of the terms of this engagement. The Company understands and accepts that this agreement prohibits the recovery of punitive damages.**

**Except to the extent determined to have resulted from the deliberate or intentional misconduct of Whitley Penn personnel, the Company agrees to indemnify and hold harmless**

**Whitley Penn and any of its partners, principals, or employees from any claims, liabilities, costs and expenses related to the services under this agreement that are attributable to false, deceptive or incomplete representations of management or other Company personnel, or for any claims made by third parties who relied on Whitley Penn's work product without Whitley Penn's authorization. The Company further agrees that all services shall be provided by Whitley Penn and that all claims, if any, will be made against Whitley Penn and not against any partner, principal, or employee of Whitley Penn. The Company will indemnify Whitley Penn for any costs, expenses or fees incurred in a claim or suit made against any Whitley Penn partner, principal, or employee in an individual capacity.**

In the unlikely event that differences concerning Whitley Penn's services or fees should arise that are not resolved by mutual agreement, to facilitate resolution and save time and expense of both parties, the Company and Whitley Penn agree that any controversy, claim, dispute or questions arising out of or in connection with this agreement or the engagement shall be determined by arbitration conducted in Tarrant County, Texas in accordance with the rules of, but not required to be administered by, the American Arbitration Association. Any decision rendered by the arbitrator shall be binding on both parties to this agreement. The costs of any arbitration shall be borne equally by the parties. The parties agree that any claim that may arise between them regarding any services provided by Whitley Penn under this agreement shall be made within two years of the earlier of the completion of the applicable services or termination of this agreement. Any claim that may arise regarding any other work product shall be made within two years of the delivery date of the work product. Any claim not filed by these respective dates shall be waived and barred and both parties agree that the discovery rule and any other common law or statutory doctrine of tolling is hereby waived.

If any portion of this agreement is deemed invalid or unenforceable, such finding will not operate to invalidate the remainder of the terms set forth in the engagement letter. This letter replaces and supersedes any previous proposals, correspondence and understanding, whether written or oral. The agreements contained in this engagement letter shall survive the completion or termination of this engagement.

Whitley Penn appreciates the opportunity to be of service to you and believes this letter accurately summarizes the significant terms of the engagement. If you agree with the terms of the engagement as described in this letter, please sign and date the letter in the space provided below and return it to your Whitley Penn representative. If you have any questions, please feel free to contact your representative at 210.614.2284.

Sincerely,

Whitley Penn LLP

**ACCEPTED:**

This letter correctly sets forth the understanding of Mystic Camps Family Partnership, Ltd.. By signing below, I represent that I have the authority to bind the Company (and all entities listed in Appendix A) to the terms of this agreement.

Willetta Eastland
Ms. Tweety Eastland

2-27-26
Date

# Appendix A

**Mystic Camps Family Partnership, Ltd.**

| Service Type | Form | Period End |
|---|---|---|
| TAX - 1065 PARTNERSHIP | FEDERAL 1065 | 12/31/2025 |
| TAX - TX FRANCHISE TAX | | 12/31/2025 |
| TAX - TX FRANCHISE TAX | CAMP MYSTIC LLC AFFILIATE | 12/31/2025 |
| TAX - TX FRANCHISE TAX | NATURAL FOUNTAINS PROPERTIES, INC. AFFILIATE | 12/31/2025 |
| TAX - TX FRANCHISE TAX | MYSTIC CAMPS MANAGEMENT, LLC AFFILIATE | 12/31/2025 |

**Natural Fountains Properties, Inc.**

| Service Type | Form | Period End |
|---|---|---|
| TAX - 1120 CORPORATION | FEDERAL 1120 | 12/31/2025 |