**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CAMP MYSTIC, LLC,[1] | ) | Case No. 26-90621 (CML) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Ref. Docket Nos. 280, 294** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) CAMP FAMILY CREDITORS' EMERGENCY MOTION TO RECONSTITUTE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OR, IN THE ALTERNATIVE, APPOINT A SEPARATE COMMITTEE AND (II) DEBTORS' JOINDER THERETO**

The Official Committee of Unsecured Creditors (the "Committee") of Camp Mystic, LLC and its debtor affiliates in the above-captioned cases (collectively, the "Debtors"), by and through its undersigned proposed counsel, submits this objection (the "Objection") in opposition to (a) *Camp Family Creditors' Emergency Motion to Reconstitute the Official Committee of Unsecured Creditors or, in the Alternative, Appoint a Separate Committee* [Docket No. 280] (the "Motion" and such moving party, the "Camp Family Creditors") and (b) *Debtors' Joinder in, and Response to, the Camp Family Creditors' Emergency Motion to Reconstitute the Official Committee of Unsecured Creditors or, in the Alternative, Appoint a Separate Committee* [Docket No. 294] (the "Joinder"). In support of the Objection, the Committee respectfully states as follows:

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

## PRELIMINARY STATEMENT

1. The Motion should be denied because there is no evidence that the Committee, as currently constituted, is failing to provide adequate representation of the interests of all unsecured creditors. Bankruptcy Code section 1102(a)(4) permits the Court, on request of a party in interest and after notice and a hearing, to order the United States Trustee to change the membership of a committee only "if the court determines that the change is necessary to ensure adequate representation of creditors. . . ." 11 U.S.C. § 1102(a)(4). Here, the Motion is predicated on an argument that the Committee cannot represent the interests of a large portion of the unsecured creditor body—deposit holders—because the creditors sitting on the Committee hold tort claims rather than contract claims. That argument is both legally incorrect, as an official committee need not comprise representatives from every distinct category of unsecured creditors, and factually incorrect, as the Debtors' Schedules show that two of the thirteen families on the Committee also hold deposit claims. Nor can the Camp Family Creditors point to any evidence to support their argument that the Committee is somehow not functioning as it should and/or acquitting its fiduciary obligations to all unsecured creditors. In fact, all the evidence cuts *against* reconstituting the Committee and demonstrates that the Committee is well functioning. The Motion's request to appoint thirteen additional members to the Committee is particularly non-sensical here, where substantially all general unsecured claims held by non-insiders are wrongful death claims and most deposit claims are for *de minimis* amounts that fall under the Bankruptcy Code section 507(a)(7) priority cap.

2. The Camp Family Creditors clearly do not like the current composition of the Committee or the positions the Committee has taken in these cases. Indeed, their proposal to add thirteen new members to the Committee lays bare their true goal: create gridlock on the Committee. But disliking the positions a committee takes is no basis for reconstitution. Moreover, the timing

and nature of the Camp Family Creditors' involvement in these cases raises a real question as to their motives in these cases. By filing the Motion contemporaneously with their objection to the Committee's Trustee Motion, the Camp Family Creditors seem more intent on advancing their own parochial interests from inside the Committee than serving as fiduciaries for all unsecured creditors. That the Debtors joined the Motion further underscores this concern, particularly in light of the Court's clear finding earlier this month that the Eastlands suffer from disabling conflicts.

3. Since its formation, the Committee has consistently demonstrated that it is a well-functioning fiduciary that takes seriously its obligation to represent the interests of all unsecured creditors. The Committee, as currently constituted, should be given the opportunity to continue discharging its duties following the anticipated appointment of the independent fiduciaries, who now will have broad authority to guide these cases towards resolution. For these reasons and those set forth below, the Motion should be denied.

**BACKGROUND**

4. On August 7, 2026, the Debtors filed their schedules of assets and liabilities (collectively, the "Schedules"). Those Schedules identified 2,790 deposit, tuition, and store-credit entries against Camp Mystic, LLC. These claims are entitled to priority status under Bankruptcy Code section 507(a)(7), which provides that deposit claims are entitled to priority status up to $3,800. *See* 11 U.S.C. § 507(a)(7). Of these 2,790 scheduled claims, only eight exceed the $3,800 statutory priority cap; collectively, those eight claims represent $13,597.56 in non-priority unsecured claims. Moreover, two families serving on the Committee hold deposit claims. *See* Proofs of Claim Nos. 10284, 10288.

5. The remaining claims listed in the Schedules fall into three buckets: (i) claims held by families of those who lost daughters in the July 4, 2025 tragedy (collectively, the "Families"), (ii) claims held by insiders,[2] and (iii) a single $3,128 claim held by a non-insider.

6. On September 8, 2026, the Committee filed its *Motion for an Order Appointing a Chapter 11 Trustee* [Docket No. 227] (the "Trustee Motion"). The Trustee Motion was set for hearing on October 9, 2026.

7. The Camp Family Creditors filed the Motion on September 29, 2026. The Camp Family Creditors asked the Court to hear the Motion on an emergency basis on October 9, 2026 (*i.e.*, the hearing date for the Trustee Motion). Moreover, the Camp Family Creditors filed the Motion nearly contemporaneously with their objection to the Trustee Motion. *See Camp Family Creditors' Objection to Motion to Appoint Chapter 11 Trustee* [Docket No. 282]. Within hours, the Debtors and Eastland Directors also filed objections to the Trustee Motion. *See Debtors' Objection to the Official Committee of Unsecured Creditors' Motion for an Order Appointing a Chapter 11 Trustee* [Docket No. 281]; *see also Eastland Directors' Omnibus Objection to (I) the Official Committee of Unsecured Creditors' Motion for an Order Appointing a Chapter 11 Trustee and (II) Families' Joinders* [Docket No. 283].

8. At the October 1, 2026 status conference, the Court declined to hear the Motion on an expedited basis. *See* Transcript of Status Conference held on Oct. 1, 2026 at 23:11–12 (The Court: "I don't see the emergency."). That same day, Debtors filed the Joinder to the Motion. The

[2] The Schedules also reflect claims held by insiders. Natural Fountains Properties, Inc. schedules $1,800,416.44 in promissory-note claims held by two Eastland-named trusts. *See* Docket No. 153, Schedule E/F. Across the four Debtors, the Schedules identify 21 entries for unliquidated indemnification claims involving Eastland family members and related parties. *See* Docket Nos. 152–155, Schedules E/F. The Committee is investigating, among other things, potential claims involving the Eastlands and related parties.

Joinder proposes shrinking the thirteen-member Committee to approximately five members and, failing that, disbanding the Committee or limiting its work. *See* Joinder ¶¶ 5, 28, 45–46.

9. On October 21, 2026, the Court issued its rulings on the Trustee Motion and the Independent Fiduciaries Motion.[3] In denying the Independent Fiduciaries Motion and holding the Trustee Motion in abeyance, the Court gave the Debtors an opportunity to implement a series of material governance reforms over and above what the Debtors had proposed in their various prior iterations, absent which the Court indicated it would appoint a chapter 11 trustee at Camp Mystic, LLC and Natural Fountains Properties, Inc. The Court required the Debtors to submit implementing governance resolutions, consents, and related materials by October 28, 2026, which they did. *See* Transcript of Hearing held on Oct. 21, 2026 at 53:6–54:12; *Notice of Filing of Proposed Further Order on Motions to Appoint a Chapter 11 Trustee* [Docket No. 396].

## ARGUMENT

### I. The Camp Family Creditors Have Not Met Their Burden Under Bankruptcy Code Section 1102(a)(4).

10. The Motion fails because it does not present any evidence that a change to the Committee's composition is necessary to ensure adequate representation. It is well established that the Camp Family Creditors bear the burden of establishing necessity under Bankruptcy Code section 1102. *See In re Roman Cath. Church of the Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *13 (Bankr. E.D. La. Feb. 8, 2021) ("*Archdiocese*") (citing *In re Residential Cap., LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012)); *accord In re Yahweh Ctr., Inc.*, No. 16-04306-5-JNC, 2016 WL 5417363, at *2 (Bankr. E.D.N.C. Sept. 28, 2016); *In re ShoreBank Corp.*,

---

[3] *Debtors' Motion for Entry of an Order (I) Authorizing the Appointment of an Independent Director and an Independent Manager, (II) Establishing Special Committees, (III) Approving Governance Amendments, and (IV) Granting Related Relief* [Docket No. 205] (the "Independent Fiduciaries Motion").

467 B.R. 156, 163 (Bankr. N.D. Ill. 2012); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005).

11. Bankruptcy Code section 1102(a)(4) does not require proportional representation of every claim type, a seat for every creditor that volunteers to serve, or a committee that agrees with the pecuniary desires of one group of creditors. *See Residential Cap.*, 480 B.R. at 559; *see also ShoreBank*, 467 B.R. at 164–65 (noting the Bankruptcy Code does not require a "perfect equilibrium of creditor interests"). The question before the Court is whether the existing Committee adequately represents the interests of unsecured creditors. Neither the Camp Family Creditors nor the Debtors identify any disfunction within the Committee. Their disagreement with the Committee's litigation and governance positions is not evidence that their claims lack adequate representation. Because the Camp Family Creditors have not carried their burden, the Motion must be denied.

**A. Deposit Creditors Do Not Need to Be Appointed to the Committee to Ensure Adequate Representation.**

12. The Debtors' Chief Restructuring Officer testified at the Bankruptcy Code section 341 meeting of creditors that the filings arose from "the claims arising from the floods on July 4th, 2025 and the tragedy that resulted in the loss of life, and then the litigation that came from them." Transcript of § 341 Meeting of Creditors held Aug. 26, 2026, at 13:16–19. The United States Trustee's composition of the Committee reflects the significance of those claims to these chapter 11 cases. But the Committee members do not serve as advocates solely for their own claims: once appointed, they owe fiduciary duties to the entire unsecured creditor body. The relevant question is whether the Committee is discharging those duties. The record demonstrates that the Committee is doing precisely that, and the Camp Family Creditors' suggestion that its members cannot faithfully discharge their fiduciary duties simply because they hold wrongful death claims is not

supported by fact. Frankly, it is an unwarranted attack on the integrity of the thirteen individuals who have agreed to act as fiduciaries in these cases and who have all suffered unthinkable losses.

13. The Camp Family Creditors' Rule 2019 Statement lists thirteen claims totaling $16,564 against Camp Mystic, LLC. *See* [Docket No. 368]. Eleven of these claims are for $700 or less, and only one claim exceeds the $3,800 statutory priority cap. Of course, these *de minimis* claim amounts do not strip the Camp Family Creditors of standing or a right to be heard. However, the size of these claims underscores the disproportionate relief the Camp Family Creditors seek, such as thirteen additional Committee seats, or a separate estate-funded committee. That is particularly true here, where there is a well-functioning Committee and no party in interest has argued for impairing priority claims.

14. The Committee's fiduciary duties run to all unsecured creditors, including the Camp Family Creditors, regardless of the size, priority, or nature of their claims. The Camp Family Creditors identify no concrete action, decision, or failure to act demonstrating that the Committee is not functioning or failing to provide adequate representation of all unsecured creditors. Since being appointed, the Committee has exercised independent judgment on estate governance, claims, and value preservation for the benefit of that creditor body as a whole. The Committee's successful efforts to install independent fiduciaries at Camp Mystic, LLC and Natural Fountains Properties, Inc. demonstrate this. Given the track record of this Committee, the fact that two deposit-holding families serve on the Committee, and the fact that most deposit holders have statutory protections under Bankruptcy Code sections 507(a)(7) and 1129(a)(9)(B), there is no need to appoint members of the Camp Family Creditors to the Committee.

**B. The Current Makeup of the Committee Obviates the Need for Reconstitution.**

15. The Motion rests on an incorrect premise. The Camp Family Creditors and Debtors assert that the Committee is composed "solely" of tort claimants and that "no member of the

Committee holds a deposit, tuition, or other claim that is not a flood claim." *See* Motion ¶¶ 3, 9; Joinder ¶ 20. That is wrong: two of the thirteen Committee families hold deposit claims. *See* Proofs of Claim Nos. 10284, 10288. The Camp Family Creditors do not explain why these members do not ensure adequate representation of deposit claims or identify any actual Committee actions prejudicing such claims. To the contrary, the Committee's efforts have yielded a complete delegation of authority at the operating entities to independent fiduciaries who are much better positioned to move these cases forward and drive a process that produces recoveries sooner for the Camp Family Creditors. Deposit holders are clearly benefiting from the actions of a well-functioning Committee.

16. In addition to deposit holders, the Joinder identifies three additional groups that the Debtors contend should be represented on the Committee: (a) holders of flood claims who have not sued; (b) donors; and (c) "other" unsecured creditors. *See* Joinder ¶¶ 2, 28. This argument fails for a number of reasons. First, the Committee *does* include holders of wrongful death claims who had not instituted prepetition lawsuits; specifically, only ten of the thirteen members are plaintiffs in prepetition lawsuits.[4] Second, with respect to "donors," the Debtors (i) provide no information in the Joinder regarding even the *existence* of such claims, (ii) do not explain why donors would have claims against these estates in the first place, and (iii) do not explain why, even if such parties had claims, why those claims were not listed in the Schedules. Similarly, with respect to "other" unsecured creditors, the Joinder provides no information regarding such claims and the Schedules identify only a single non-insider general unsecured creditor outside of the claims held by the Families.

---

[4] As of the Petition Date, three Committee members had not initiated wrongful death lawsuits against the Debtors or the Individual Defendants (as defined in the Joinder).

17. The Camp Family Creditors have not shown, and cannot show, that the Committee is providing inadequate representation. Rather, there can be little doubt that the Camp Family Creditors' actual concern is that the Committee is advocating at all against the desires of the Debtors and the Eastlands. The Camp Family Creditors—like the Eastlands— want Camp Mystic to continue. *See* Motion ¶ 21. But, as with any other individual preference for the outcome of these cases, the Camp Family Creditors can articulate this preference on an individual basis or as an ad hoc group and are free to do so informally to the Debtors, through the forthcoming independent fiduciaries, to the Committee, or formally to the Court. That preference does not justify expanding the Committee, disbanding the Committee, or creating a new official committee.

**C. The Authorities Cited by the Camp Family Creditors Support *Denying* the Motion.**

18. Courts outside the Fifth Circuit have applied multi-factor tests to assess adequate representation under section 1102. *See ShoreBank*, 467 B.R. at 160–61; *Dana*, 344 B.R. at 38; *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). While the Fifth Circuit has not adopted any such test, the Joinder analyzes the issue using the *Dana* factors. *See Archdiocese*, 2021 WL 454220, at *9–13 (applying the factors identified in *Dana*, 344 B.R. at 38). These cases identify seven relevant factors: (1) the ability of the committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) the ability of creditors to participate in the case without an official committee; (5) the possibility that different classes will be treated differently under a plan and need representation; (6) the motivation of the movant; and (7) whether there are conflicts of interest among current committee members, which requires "specific evidence that the committee member or members with the conflict have breached or are likely to breach their fiduciary duties." *ShoreBank*, 467 B.R. at 161. Other decisions also consider the timing of the request, the potential delay and additional cost of relief, and the tasks remaining

for the committee. *See Dana*, 344 B.R. at 38; *Enron*, 279 B.R. at 685. The factors are guideposts, not a substitute for the statutory requirement of necessity.

19. Below, the Committee addresses the *factors identified by the Debtors*, which combine the considerations described in *Dana*, *ShoreBank*, *Enron*, and *Cont'l Cast Stone*, 625 B.R. at 207–08. *See* Joinder ¶¶ 41–42. Critically, because the Camp Family Creditors bear the burden of proving a lack of adequate representation, the Motion's failure to address—much less satisfy—the applicable legal standard requires the Motion's denial. *See Yahweh*, 2016 WL 5417363, at *2. Moreover, the Joinder's belated attempt to supply the missing analysis, cannot cure the Camp Family Creditors' own failure of proof. *See* Joinder ¶¶ 41–42. Finally, as shown below, regardless of the formulation, each factor favors preserving the existing Committee.

20. **First, the nature of the cases**. These cases arise from the deaths of twenty-five campers and two counselors in the July 4, 2025 flood. The United States Trustee soundly discharged its statutory duties by appointing a Committee comprised of victims' families, who are both the largest unsecured creditors in these cases and each submitted applications to serve on the Committee. The Debtors attack the composition of the Committee by arguing that there are four jointly administered estates. Joinder ¶ 42(a). However, the Families' wrongful death claims are deemed filed against each Debtor. *See Order (I) Establishing Deadlines for the Filing of Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 176 ¶ 1]. The Debtors also attempt to portray these chapter 11 cases as a dispute between the Families and thousands of deposit creditors. However, outside of the Camp Family Creditors, no holders of deposit claims have complained about the Committee, let alone participated in the case. This is unsurprising given the economic reality of the case: outside of the Families and insiders, total scheduled general unsecured claims are just $16,725.56. Said

differently, the principal non-insider creditors in these cases—whose recoveries depend on the preservation and maximization of estate value—are the Families. Under these circumstances, the nature of these cases supports the current composition of the Committee.

21. **Second, the Committee's ability to function**. The Debtors concede that the Committee functions. Joinder ¶ 42(b). The Committee meets weekly, receives updates and recommendations from Committee counsel and their own individual advisors, deliberates, reaches decisions, and directs its professionals. The Camp Family Creditors and Debtors identify no deadlock, inability to act, or instance in which the Committee has failed to protect the economic rights of deposit creditors. Instead, they disagree with the positions the Committee has taken to date concerning governance, the automatic stay, and the administration of the estates. A functioning Committee does not become inadequate merely because it exercises independent judgment that the Debtors' equity owners disagree with. In fact, quite the contrary. This factor favors denying the Motion.

22. **Third, the standing and interests of the various creditor constituencies**. The Camp Family Creditors hold just $16,564 in aggregate claims, principally small deposits entitled to statutory priority. They seek thirteen additional Committee seats—a number expressly designed to manufacture gridlock on the Committee—despite holding only a minute fraction of the claims economically exposed to the outcome of these cases. Their principal stated objective is to preserve Camp Mystic's traditions through a successor operator. The Camp Family Creditors are entitled to advocate for that outcome, either individually or as an ad hoc group, but their preference does not reveal inadequate representation of their interests by the Committee. That is especially true here, where two existing Committee members also hold deposit claims, and the Camp Family

Creditors identify no Committee action threatening unfair treatment of those claims. This factor favors denying the Motion.

23. **Fourth, the ability of creditors to participate without Committee membership**. The Camp Family Creditors are represented by experienced bankruptcy counsel and have shown that they can participate by filing the Motion itself, objecting to the Trustee Motion, forming an ad hoc group, and participating in the October 21 governance hearing. They retain all rights afforded to parties in interest under Bankruptcy Code section 1109(b), including the right to be heard concerning a proposed sale, disclosure statement, or plan. The Debtors' suggestion that deposit creditors cannot participate effectively without Committee membership is contradicted by the Camp Family Creditors' own participation. This factor favors denying the Motion.

24. **Fifth, the possibility of different treatment under a plan**. In support of their Joinder, the Debtors note that deposit creditors and wrongful death claimants will receive different treatment under a plan. Joinder ¶ 42(e). As an initial matter, all plan-related decisions are anticipated to be made by the incoming independent fiduciaries going forward. Yet, even assuming deposit creditors and wrongful death claimants will receive different treatment under any plan, that fact undermines rather than supports the Motion. In order to confirm a plan, the Bankruptcy Code generally requires payment of allowed priority deposit claims in full, and the Debtors' proposed plan contemplates that treatment. The Families, by contrast, have substantial unliquidated general unsecured claims whose recoveries depend on the assets and insurance available for distribution. Different plan treatment does not establish inadequate representation. Rather, here, it confirms that the deposit creditors face far less economic risk than the victims' families and therefore have little to gain or lose in these cases. This factor favors denying the Motion.

25. **Sixth, the motivation of the parties seeking reconstitution**. The timing and scope of the requested relief are revealing. The Camp Family Creditors filed their Motion shortly before the scheduled hearing on the Trustee Motion. Their efforts to have the Motion heard on an emergency basis was a thinly-veiled attempt to undermine the Committee's request to have a trustee appointed. The Debtors promptly joined the Motion and went substantially further, seeking to reduce the thirteen-member Committee to approximately five members or, alternatively, to disband it entirely or restrict its activities. In so doing, the Debtors seek to weaken the creditor fiduciary investigating insider conduct and claims at the very time that scrutiny is most important. The requested relief would instead diminish the Committee's ability to scrutinize claims and conduct involving the Debtors' insiders. This factor weighs strongly against reconstitution.

26. **Seventh, the cost of the requested relief**. Reconstitution would disrupt a functioning Committee at a critical stage of these cases, require new members to become familiar with complex issues, and risk delaying the sale, plan, and claims resolution processes. The Debtors' assertion that reconstitution would cost nothing ignores the consequences of jeopardizing a well-functioning Committee. *See* Joinder ¶ 42(g). Moreover, the alternative request for a separate committee would impose additional administrative expense, including the costs of new counsel. Neither the Camp Family Creditors nor the Debtors identify a concrete benefit to creditors that would justify those costs. This factor favors denying the Motion.

27. Each of these factors demonstrates that there is no inadequate representation of creditor interests by the Committee, and no change should be made. Accordingly, the Camp Family Creditors have not satisfied the applicable standard under Bankruptcy Code section 1102(a)(4). The Committee currently functions well, and unsecured creditors' interests are protected. What the Camp Family Creditors seek is not adequate representation, but a different

Committee—one less willing to challenge the Debtors and scrutinize insider interests. Bankruptcy Code section 1102(a)(4) provides no basis for that relief.

28. The additional authorities cited by the Camp Family Creditors and the Debtors do not change that conclusion. *Chesapeake* does not establish that a general unsecured creditors' committee must be reshaped whenever its members have litigation claims. The proceedings there concerned a separately appointed official committee of royalty owners, and the court—after declining to disband that committee—directed that it be recomposed with royalty owners who were not class members or MDL plaintiffs because of concerns particular to that committee's membership and overlapping class and MDL litigation. *See* Hr'g Tr. 127:5–128:15, *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex. Aug. 12, 2020), ECF No. 790; Order, *id.* (Bankr. S.D. Tex. Aug. 17, 2020), ECF No. 819. The court's stated concern was for unrepresented royalty owners who "do not understand the process." Hr'g Tr. 128:3–4. Here, the only constituency the Camp Family Creditors claim is unrepresented, is represented on the Committee, and represented by its own counsel. The *Chesapeake* orders should not be read as a categorical disqualification of litigants from committee service.

29. *Archdiocese* likewise does not support reconstitution here. To the contrary, it reinforces why the existing Committee should remain intact. In *Archdiocese*, the court recognized that, in bankruptcies involving significant tort liabilities, committees composed solely of tort claimants are not uncommon, and that such committees are understandable where commercial debt is limited. *Archdiocese*, 2021 WL 454220, at *13 & n.6. And the remedy the court chose there was not to add members to the abuse-survivor committee—which it found would not give commercial creditors a meaningful voice—but to direct the appointment of a separate committee for commercial creditors under section 1102(a)(2), because the debtor had substantial commercial

debt: approximately $91 million of scheduled nonpriority commercial debt, involving roughly 900 creditors. *Id.* at *11–14; *see* Order, *Archdiocese*, No. 20-10846 (Bankr. E.D. La. Feb. 8, 2021), ECF No. 746; Mem. Op., *Archdiocese*, No. 20-10846 (Bankr. E.D. La. Mar. 10, 2026), ECF No. 4930, at 9 n.13 (the "Confirmation Opinion"). The official committee in that case remained composed solely of abuse claimants through confirmation. Confirmation Opinion at 2 & n.5. Those are not the facts here. Indeed, the *Archdiocese* court expressly acknowledged other diocesan bankruptcies in which committees composed exclusively of abuse claimants were appropriate in light of the limited commercial debt. *See id.* at 2–3 & n.6. That comparison only underscores why the $16,725.56 in identified non-insider, nonpriority claims here provides no basis to disturb the existing Committee.[5]

30. The remaining authorities in the Motion are also inapposite.

- *In re Genesis Healthcare, Inc.*, No. 25-80185 (SGJ) (Bankr. N.D. Tex. Aug. 22, 2025), involved a nationwide nursing-home operator with a large body of trade creditors; directing that two trade creditors be added there says nothing about a case in which one $3,128 trade claim exists.

- *In re Nat'l Gypsum Co.*, 219 F.3d 478 (5th Cir. 2000), *In re Dow Corning Corp.*, 244 B.R. 678 (Bankr. E.D. Mich. 1999), *In re Tehum Care Servs., Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex.), and *In re Inspired Healthcare Cap. Holdings, LLC*, No. 26-90004 (Bankr. N.D. Tex.), are, by the Camp Family Creditors' own description, cases in which substantial distinct creditor bodies coexisted. *See* Motion ¶¶ 18, 28; Joinder ¶ 35.

- The *Dow Corning* standard—that a group have "a meaningful voice on the committee in relation to their posture in the case," *In re Dow Corning Corp.*, 194 B.R. 121, 141

[5] The practice of appointing committees composed entirely of tort plaintiffs in tort driven cases is well established, including in this Circuit and in this District. *See Archdiocese*, 2021 WL 454220, at *13 & n.6. Indeed, this Court presided over such a case in *In re Jones*, No. 22-33553 (CML) (Bankr. S.D. Tex.), where the official committee of unsecured creditors was composed solely of tort claimants holding claims arising from the defamation litigation against the debtor. *See* Notice of Appointment, *id.*, ECF No. 42. Moreover, in *In re Barretts Minerals Inc.*, No. 23-90794 (Bankr. S.D. Tex.), the United States Trustee appointed an official committee of unsecured creditors consisting of seven talc claimants represented by seven plaintiffs' law firms. *See also* Notice of Appointment, *id.*, ECF No. 138. *See also In re Roman Cath. Archbishop of S.F.*, No. 23-30564 (Bankr. N.D. Cal.) (the official committee of unsecured creditors consists of nine abuse survivors); *see also In re Kidde-Fenwal, Inc.*, No. 23-10638 (Bankr. D. Del.); Notice of Appointment, *id.*, ECF No. 83 (the official committee of unsecured creditors is composed entirely of parties with litigation claims).

(Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997)—is satisfied here, where the deposit holders' posture is that of priority claimants entitled to payment in full and Committee members hold deposit claims.

- *Residential Cap.* holds only that a committee may not act as de facto counsel for individual borrowers' claims, 480 B.R. at 558–59; the Committee has not done so.

- Finally, the Debtors' remaining authorities—*In re First RepublicBank Corp.*, 95 B.R. 58, 59 (Bankr. N.D. Tex. 1988), *In re Wash. Prime Grp. Inc.*, No. 21-31948 (MI) (Bankr. S.D. Tex. Oct. 18, 2022), ECF No. 1459, and *In re Advisory Comm. of Major Funding Corp.*, 109 F.3d 219, 224 (5th Cir. 1997)—establish only that the Court decides adequate representation and that a committee is a watchdog for the creditor body, propositions the Committee does not dispute.

## II. The Evidence in the Case Demonstrates that the Committee Is Adequately Representing the Interests of all Unsecured Creditors.

### A. The Committee Is Functioning Well.

31. There is no doubt that the Committee is functioning well. The Committee meets regularly, deliberates, reaches consensus on material decisions, and actively directs its professionals. Unable to identify any actual dysfunction or failure to protect the interests of all unsecured creditors, the Camp Family Creditors and the Debtors instead attack the positions the Committee has taken in exercising its independent judgment. But disagreement with the Committee's advocacy is not evidence of inadequate representation. Indeed, the Committee's efforts to address the Debtors' governance conflicts—concerns that this Court expressly validated in its October 21 ruling—demonstrate that the Committee is fulfilling, not shirking, its fiduciary responsibilities.

### B. The Committee's Advocacy Is Not a Disqualifying Conflict.

32. The only evidence the Camp Family Creditors and the Debtors cite of the Committee's supposed "failure" to advocate for all creditors is: (a) the Committee's intervention in the stay litigation; (b) the Committee's Trustee Motion; (c) the Committee's alleged opposition to a sale of the Debtors' assets as a going concern; and (d) its proposed investigation of *claims*

*against the estates*. None of these reasons are persuasive.

33. First, the Committee's position on the stay litigation is moot because the Debtors have agreed to lift the stay.

34. Second, the Committee carefully considered the Debtors' Independent Fiduciaries Motion—which, at the time it was filed, granted conflicted insiders control rights over plan, sale, and claims matters—before filing the Trustee Motion. The Court's ruling on the Trustee Motion confirmed that the Committee's concerns about conflicts were well founded. Such actions sit squarely within the Committee's statutory powers and were a sound exercise of fiduciary duties under the circumstances. *See* 11 U.S.C. § 1103(c)(4) (providing that a committee "may . . . request the appointment of a trustee or examiner under section 1104 of this title").

35. Third, the Committee has not taken a position on a going-concern sale of the camp, notwithstanding the Camp Family Creditors' insinuations. However, the Court made clear it would not authorize any sale process where a preference for an operating camp could hinder value maximization, a position the Court itself agreed with. *See* Transcript of Status Conference held on Oct. 5, 2026 at 15:24–25 (The Court: "[C]ash is king and the highest bidder wins.").

36. Fourth, using Bankruptcy Rule 2004 to seek information regarding the wrongful death claims sits squarely within the Committee's statutory authority. The Bankruptcy Code authorizes a committee to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). Understanding the scope of the claims against each Debtor, and the claims the Debtors may have against insiders, including the strength or weakness of unresolved litigation claims, is a crucial component of fulfilling the Committee's duties and assessing any chapter 11 plan proposal.

37. The Camp Family Creditors may disagree with the Committee's positions. That disagreement does not establish that the Committee has failed to discharge its fiduciary duties or that changing its membership is necessary under Bankruptcy Code section 1102(a)(4). Quite the opposite. The Committee here is doing its job. The Debtors and the Camp Family Creditors would prefer a committee that did not.

**C. The Camp Family Creditors' Participation in These Cases Casts Doubt on Their Capacity To Serve as Fiduciaries.**

38. The timing of the Motion makes clear that the Camp Family Creditors entered these cases to oppose the Trustee Motion and support the Eastlands' continued control over the Debtors. The Camp Family Creditors are entitled to advocate for their preferred outcome as parties in interest. But their alignment with the Eastlands in opposing independent oversight, coupled with the absence of any evidence of inadequate representation, casts substantial doubt on their purported interest in serving as fiduciaries. Put simply, the Camp Family Creditors only appear interested in promoting a particular vision for Camp Mystic's future.

## III. The Debtors' Requests to Disband or Restrict the Committee Should Be Denied.

39. The Debtors go beyond the relief sought by the Camp Family Creditors. They propose reducing the Committee to approximately five members, disbanding it under sections 105(a) and 105(d)(2), or restricting its activities and professional compensation. Those requests would impair the very oversight function Congress gave to an official committee. The general powers in Bankruptcy Code section 105 cannot substitute for the statutory showing required to change membership or justify a categorical prohibition on the activities of a committee that are expressly authorized by Bankruptcy Code section 1103(c). There is no basis for this relief.[6]

---

[6] The Debtors also raise in the Joinder their disagreements with the *pro bono* structure of the Committee professionals' retention. Such disputes should be heard in connection with the retention applications, but the Committee believes the structure is proper and benefits the creditor body as a whole.

40. The Court's prescribed path forward expressly contemplates continued Committee participation. *See* Transcript of Hearing held on Oct. 21, 2026 at 47:1–23. The Committee is prepared to work constructively with independent fiduciaries exercising the complete authority required by the Court, while continuing to evaluate estate claims, plan treatment, and proposed transactions for the benefit of all unsecured creditors. Reconstituting, disbanding, or restricting the Committee just as this independent governance process is being implemented would impair—not advance—the oversight the Court's ruling makes particularly important.

## CONCLUSION

41. Ultimately, the Camp Family Creditors have a specific vision for Camp Mystic's future and would like additional leverage to push for that vision. That is not a basis for reconstituting the Committee. They have not met (and cannot meet) their burden to show that they are inadequately represented. The Court should preserve the Committee appointed by the United States Trustee and deny the requested relief.

42. WHEREFORE, the Committee respectfully requests that the Court (a) deny the Motion in its entirety, (b) deny the Joinder in its entirety, (c) enter the proposed order substantially in the form attached hereto, and (d) grant such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 30, 2026

Respectfully submitted,

*/s/ Jennifer J. Hardy*

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Facsimile: 713-510-1799
Email: jhardy2@willkie.com

**AND**

Brett H. Miller (admitted *pro hac vice*)
Hon. Shelley C. Chapman (Ret.) (admitted *pro hac vice*)
James H. Burbage (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
Email: bmiller@willkie.com
schapman@willkie.com
jburbage@willkie.com

**AND**

Christopher DiPompeo (admitted *pro hac vice*)
1875 K St., N.W.
Washington, D.C. 20006
Telephone: (202) 303-1016
Facsimile: (202) 303-2000
Email: cdipompeo@willkie.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**LAWSON & MOSHENBERG PLLC**
Nicholas R. Lawson (Texas Bar No. 24083367)
Avishay Moshenberg (Texas Bar No. 24083532)
2301 Commerce St., Suite 200
Houston, TX 77002
Telephone: 903-316-9155
Email: nick.lawson@lmbusinesslaw.com
avi.moshenberg@lmbusinesslaw.com

*Proposed Conflicts and Texas Counsel to the Official Committee of Unsecured Creditors*

## Certificate of Service

I certify that on October 30, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jennifer J. Hardy*
Jennifer J. Hardy