United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 02, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC, *et al.*, | Case No. 26-90621 (CML) |
| Debtors. | (Jointly Administered) |

**FURTHER ORDER
ON MOTIONS TO
APPOINT A CHAPTER 11 TRUSTEE**
*(Relates to ECF Nos. 227, 230, 232, 304, 390)*

The Court has considered the submissions filed by Camp Mystic, LLC ("**Camp Mystic**"), Natural Fountains Properties, Inc. ("**NFP**"), Mystic Camps Family Partnership, Ltd. ("**MC Family Partnership**"), and Mystic Camps Management, LLC ("**MC Management**," and collectively with Camp Mystic, NFP, and MC Family Partnership, the "**Debtors**") pursuant to the Court's *Order on Motions to Appoint a Chapter 11 Trustee* [ECF No. 390] (the "**Trustee Order**") in connection with the motions for appointment of a chapter 11 trustee filed by the Official Committee of Unsecured Creditors (the "**Committee**") [ECF No. 227] and the United States Trustee [ECF No. 304] (collectively, the "**Trustee Motions**"). The Debtors' submissions include:

(a) the resolutions, written consents, and related governance documents voluntarily adopted or executed by the Debtors and each holder of governance rights in the Debtors (collectively, the "**Governance Documents**"), including the four Governance Consents (defined below) and the amended and restated governing documents adopted pursuant to the Governance Consents, as identified in **Exhibit A** to this Order;

(b) the written consents of Mark Andrews and the Honorable Craig A. Gargotta (Ret.) to serve, pursuant to the Governance Documents, as independent fiduciaries of Camp Mystic

and NFP, respectively (collectively, the "**Independent Fiduciaries**"), in each case on the terms set forth in the Governance Documents, which consents are attached as **Exhibit B** to this Order;

(c) the proposed compensation and expense reimbursement arrangements for the Independent Fiduciaries attached as **Exhibit C** to this Order; and

(d) the proposed terms and cost of directors' and officers' liability insurance for the Independent Fiduciaries attached as **Exhibit D** to this Order.

Upon consideration of these submissions, and for the reasons stated in the Court's oral ruling on October 21, 2026 (the "**Oral Ruling**"), the Court finds and concludes as follows:

## FINDINGS AND CONCLUSIONS

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B. The Court previously determined that material conflicts of interest exist between the estates of Camp Mystic and NFP, on the one hand, and certain members of the Eastland family and related persons and entities, on the other hand (collectively, the "**Eastland Parties**," as defined in the Oral Ruling). Those conflicts concern, among other matters, the defense and settlement of litigation arising from the July 4, 2025, flood, the formulation and implementation of a chapter 11 plan, the disposition of estate assets, potential estate claims against insiders, and decisions concerning investigations involving the Debtors. The Court has made no finding that any person has engaged in wrongdoing and draws no inference about any person's conduct.

C. In the Oral Ruling, the Court determined that those conflicts may be remedied without the need to appoint a chapter 11 trustee if the Debtors voluntarily establish an independent governance structure under which independent fiduciaries possess sole and exclusive authority over the matters giving rise to the conflicts, together with complete access to information necessary to exercise that authority and binding protection against removal or interference by persons holding

governance rights.

D. In the Oral Ruling, the Court found no cause to appoint a chapter 11 trustee for MC Family Partnership or MC Management and determined that their existing governance arrangements could otherwise remain unchanged, subject to binding commitments by all holders of governance rights necessary to preserve the independence and authority of the Independent Fiduciaries. Consistent with the Oral Ruling, MC Family Partnership and MC Management have preserved their existing management structures while voluntarily adopting binding commitments restricting the exercise of their governance rights in a manner that would interfere with the independence or authority of the Independent Fiduciaries.

E. The Debtors and each holder of governance rights in Camp Mystic, NFP, MC Family Partnership, and MC Management have voluntarily adopted or executed the Governance Documents, copies of which are attached as **Exhibit A** to this Order, consisting of:

(i) the Unanimous Written Consent of the Managers and the Sole Member of Camp Mystic, LLC, and the Second Amended & Restated Company Agreement of Camp Mystic, LLC (the "**Camp Mystic Company Agreement**");

(ii) the Unanimous Written Consent of the Board of Directors and the Sole Shareholder of Natural Fountains Properties, Inc., and the Second Amended & Restated Bylaws of Natural Fountains Properties, Inc. (the "**NFP Bylaws**");

(iii) the Written Consent of the General Partner of Mystic Camps Family Partnership, Ltd., and the Fourth Amendment of the Limited Partnership Agreement of Mystic Camps Family Partnership, Ltd.; and

(iv) the Unanimous Written Consent of the Managers and the Members of Mystic Camps Management, LLC.

The four written consents identified above are collectively referred to as the "**Governance Consents**."

F. As the Court found in the Oral Ruling, Mark Andrews and the Honorable Craig A. Gargotta (Ret.) are well qualified to serve as the Independent Fiduciaries and possess the experience, judgment, and independence necessary to discharge their responsibilities under the Governance Documents. The Court further finds that each is qualified and sufficiently independent to serve in the capacities contemplated by the Governance Documents and that each has consented in writing to serve on the terms required by the Oral Ruling and the Trustee Order.

G. The Governance Documents vest the Independent Fiduciaries with sole and exclusive authority over all matters necessary to remedy the conflicts identified in the Oral Ruling, including authority over any chapter 11 plan, sale of estate assets, defense and settlement of litigation arising from the July 4, 2025, flood, estate claims against insiders, and decisions of Camp Mystic and NFP concerning investigations and privileges.

H. The Governance Documents also vest the Independent Fiduciaries with authority over the information necessary to make those decisions and the timing and implementation of those decisions, without any right of the Eastland Parties or other holders of governance rights to direct, approve, veto, delay, or override them.

I. Each holder of governance rights in the Debtors has voluntarily undertaken binding commitments, in the capacity in which it signed the applicable Governance Consent and as reflected in the Governance Documents, not to remove the Independent Fiduciaries, revoke or limit their authority, or amend the Debtors' governing documents for the duration of these chapter 11 cases, which the Governance Documents define as the period ending when a confirmed chapter 11 plan of the applicable Debtor becomes effective (the "**Commitment Period**"). The Governance

Documents further provide that an Independent Fiduciary may be removed only by order of this Court for Cause (as defined below) on motion of a party in interest.

J. The Governance Documents were voluntarily adopted or executed by the Debtors pursuant to the Debtors' preexisting governing documents and applicable nonbankruptcy law. The appointment of the Independent Fiduciaries and the vesting of authority in them arise from those Governance Documents and applicable nonbankruptcy law, rather than from an exercise of this Court's authority.

K. The Court is not appointing the Independent Fiduciaries, creating the governance structure, or independently delegating management authority to them. Rather, the Court recognizes the voluntarily adopted arrangements and enforces the binding commitments of the persons and entities that adopted or executed them. The Court is not relying on sections 105(a) or 363 of title 11 of the United States Code (the "**Bankruptcy Code**") to hold the governance structure in place.

L. The Court finds that the Governance Documents satisfy the requirements identified in the Oral Ruling and the Trustee Order and establish an independent governance structure sufficient to remedy the material conflicts identified by the Court at Camp Mystic and NFP, including through the binding commitments adopted by MC Family Partnership and MC Management.

M. The Court further finds that the proposed compensation and expense reimbursement arrangements for the Independent Fiduciaries, set forth in **Exhibit C**, and the proposed directors' and officers' liability insurance arrangements, set forth in **Exhibit D**, are reasonable, reflect a sound exercise of business judgment, and constitute appropriate uses of estate property. The Court further finds that the indemnification of the Independent Fiduciaries provided in the Governance Documents is reasonable and appropriate.

N. Each holder of governance rights in Camp Mystic, NFP, MC Family Partnership, and MC Management has consented to the form and substance of this Order, including its recognition and enforcement of the governance arrangements and binding commitments reflected in the Governance Documents.

**IT IS HEREBY ORDERED THAT:**

**RECOGNITION OF VOLUNTARILY ADOPTED GOVERNANCE ARRANGEMENTS**

1. The Court acknowledges that the Debtors and each holder of governance rights in the Debtors have voluntarily adopted or executed the Governance Documents identified in **Exhibit A**, pursuant to the Debtors' preexisting governing documents and applicable nonbankruptcy law.

2. The Governance Documents establish an independent fiduciary governance structure for Camp Mystic and NFP, together with related binding commitments of MC Family Partnership and MC Management, that satisfies the requirements set forth in the Oral Ruling and the Trustee Order.

3. The appointments of Mark Andrews as independent manager of Camp Mystic (the "**Camp Mystic Independent Manager**") and the Honorable Craig A. Gargotta (Ret.) as independent director of NFP (the "**NFP Independent Director**"), and their respective authority to act on behalf of those Debtors, arise from the Governance Documents and applicable nonbankruptcy law. Nothing in this Order shall be construed as appointing the Independent Fiduciaries or as creating, delegating, or conferring authority independent of the Governance Documents.

4. The Court finds that the binding commitments reflected in the Governance Documents provide the independence required by the Oral Ruling and are enforceable in

accordance with their terms and this Order.

## RECOGNITION OF THE INDEPENDENT FIDUCIARIES' EXCLUSIVE AUTHORITY

5. The Court recognizes that the Governance Documents, including section 18 of the Camp Mystic Company Agreement and Article Eleven of the NFP Bylaws, vest each Independent Fiduciary with sole and exclusive authority to manage, direct, and control the affairs of the applicable Debtor and its bankruptcy estate, including, without limitation:

(a) Plan Matters[1];

(b) the Sale Process[2] and any other sale, lease, or disposition of property of the applicable Debtor outside the ordinary course of business, including the engagement and direction of professionals, marketing of assets, evaluation of bids, selection of proposed purchasers, negotiation of sale agreements, and determination of whether and on what terms to seek Court approval of a transaction;

(c) the defense, prosecution, management, direction, negotiation, compromise, and settlement, within or outside a chapter 11 plan, of the Tort Actions[3] and every

---

[1] "**Plan Matters**" means all issues relating to any chapter 11 plan, disclosure statement, plan supplement or other related documents, including (i) the formulation, negotiation, proposal, filing, amendment, modification, withdrawal, and solicitation of such documents; (ii) the consummation of any transactions contemplated by such documents; (iii) the filing of amended documents; (iv) all decisions concerning the treatment of claims and interests, distributions, claim settlements, and the allocation of assets, liabilities, or value among the Debtors and their respective estates, and the terms governing how and by whom decisions for the applicable Debtor and its estate will be made after confirmation and after the effective date of any such chapter 11 plan.

[2] "**Sale Process**" means the marketing and sale or other disposition of all or substantially all of the assets of any Debtor, including the assets of Camp Mystic and the real property owned by NFP, whether under section 363 of the Bankruptcy Code or under a chapter 11 plan, and every decision concerning it, including the retention and direction of any broker or marketing agent, the selection of any stalking horse bidder and the terms of any stalking horse agreement, the bid procedures and any bid protections, the qualification of bidders, the conduct of any auction, the selection of the successful bid and any back-up bid, and the terms and closing of any sale.

[3] "**Tort Actions**" means the five separate prepetition lawsuits filed against the Debtors and certain individuals, including certain members of the Eastland family, by a total of 22 families who lost daughters in the flood and every other personal injury, wrongful death, or survival claim asserted against any Debtor arising out of the July 4, 2025, flood, including any such claim asserted by proof of claim in these chapter 11 cases.

other claim arising from the July 4, 2025, flood (collectively, the "**Flood Claims**"), insofar as such matters concern the applicable Debtor or its estate, as further described in paragraph 8 of this Order;

(d) every claim and cause of action of the applicable Debtor or its estate against any person, including the Eastland Parties, and every objection, counterclaim, setoff, recoupment, and defense to any claim asserted by an insider or affiliate, including indemnification claims and promissory notes held by Eastland family trusts;

(e) every decision of the applicable Debtor in connection with any criminal, governmental, legislative, licensing, or regulatory investigation, inquiry, subpoena, or proceeding, including but not limited to the pending investigation by the Texas Rangers, the selection and direction of counsel, responses to requests for information or legal process, and the assertion, preservation, or waiver of privileges belonging to the Debtor;

(f) the day-to-day administration of the applicable Debtor's chapter 11 case, including its schedules, statements of financial affairs, monthly operating reports, claims, executory contracts and unexpired leases, professionals, insiders' use or occupancy of estate property, and the direction of Karen G. Nicolaou in her capacity as Chief Restructuring Officer of the Debtors (the "**CRO**") and the Debtor's officers;

(g) the employment, supervision, direction, and, where appropriate, replacement of professionals, employees, agents, and advisors acting on behalf of the applicable Debtor or its estate, and the appointment and removal of officers;

(h) the use, management, preservation, maintenance, financing, operation, and disposition of estate property, including any proposed transaction involving the Eastland Parties; and

(i) all other decisions necessary or appropriate to administer the applicable Debtor's chapter 11 case and discharge its duties as debtor in possession.

6. The foregoing authority includes exclusive control over the substance, timing, and implementation of such decisions and access to the information necessary to exercise that authority.

7. The Governance Documents provide that no Eastland Party or other holder of governance rights may direct, control, approve, veto, delay, override, or otherwise interfere with any decision within the Independent Fiduciaries' exclusive authority. Under section 18 of the Camp Mystic Company Agreement and Article Eleven of the NFP Bylaws, no other manager or director has any voting, veto, or consent right on any such matter. As to NFP, the NFP Independent Director holds all voting power of the Board of Directors on matters requiring action by the Board of Directors as a whole.

**DEFENSE AND SETTLEMENT OF FLOOD CLAIMS**

8. Without limiting the generality of paragraph 5 of this Order, the Governance Documents vest each Independent Fiduciary with sole and exclusive authority to determine the positions taken by the applicable Debtor in connection with the Flood Claims, including whether, when, and on what terms to defend, prosecute, manage, direct, negotiate, compromise, or settle such claims, within or outside a chapter 11 plan. This authority includes the selection, retention, and direction of counsel for the applicable Debtor; the assertion or waiver of its defenses; its positions on jurisdiction, venue, removal, remand, transfer, and the automatic stay; the exercise of its rights under any insurance policy, including tender of claims, consent to settlement, and the allocation of shared policy limits and defense costs; and mediation and settlement, subject to the terms of applicable insurance policies, paragraphs 10, 11, and 40 of this Order, and Court approval where required.5

9. The Independent Fiduciaries may, but are not obligated to, consult with and obtain information from the Eastland Parties, employees, witnesses, counsel, insurers, or other persons as they determine appropriate. No such consultation shall confer upon any such person authority to direct or control the decisions of an Independent Fiduciary. Each signer of a Governance Consent, in the capacity in which it signed, shall comply with its obligations under the Governance Consents to provide the books, records, credentials, and other information of the applicable Debtor to the applicable Independent Fiduciary, subject to paragraph 10 of this Order.

10. Nothing in this Order limits the right of any individual, including any Eastland Party, to retain separate counsel, assert individual privileges or defenses, or defend claims asserted against that individual in his or her individual capacity, subject to applicable law and existing Court orders.

11. Nothing in this Order alters any contractual right of any insurer, determines or alters any person's rights or obligations under an insurance policy, adjudicates any claim or defense in the Flood Claims, or approves any settlement, release, allocation of insurance proceeds, or disposition of estate property.

**INFORMATION AND PRIVILEGES**

12. Consistent with the Governance Documents, each Independent Fiduciary shall have complete and prompt access to all books, records, data, devices, privileged materials, personnel, insurers, brokers, professionals, and other information belonging to or controlled by his respective Debtor, subject to applicable law.

13. The Governance Documents vest each Independent Fiduciary with exclusive authority to make decisions for his respective Debtor concerning the assertion, preservation, or waiver of the Debtor's attorney-client privilege, work-product protection, and other privileges and protections belonging to the Debtor, including decisions to produce or withhold documents, seek

or agree to nonwaiver and clawback orders under Federal Rule of Evidence 502, and enter into, continue, modify, or terminate any common-interest or joint-defense agreement, including any agreement with an Eastland Party or an Eastland Party's counsel.

14. No Eastland Party or other holder of governance rights may exercise control over a privilege belonging to Camp Mystic or NFP in a manner inconsistent with the authority vested in the applicable Independent Fiduciary.

15. Nothing in this Order adjudicates, transfers, waives, or limits any privilege belonging personally to an individual or to any person other than the applicable Debtor, including any individual's privilege against self-incrimination.

16. During the Commitment Period, no manager of Camp Mystic or director of NFP other than the applicable Independent Fiduciary, and no officer of either acting other than at the direction of the applicable Independent Fiduciary, shall by virtue of that office have access to privileged or work-product materials of Camp Mystic or NFP concerning the Flood Claims, claims against insiders or affiliates, or any investigation, except as the applicable Independent Fiduciary determines. Nothing in this paragraph limits paragraph 15 of this Order.

## ENFORCEMENT OF BINDING GOVERNANCE COMMITMENTS

17. The commitments reflected in the Governance Documents are binding upon the Debtors and the applicable holders of governance rights in accordance with the terms of those documents and applicable nonbankruptcy law, and shall be enforced in accordance with their terms.

18. Consistent with those commitments, no holder of governance rights in any Debtor may, during the Commitment Period, directly or indirectly:

(a) remove, replace, or attempt to remove or replace an Independent Fiduciary except pursuant to further order of this Court;

(b) revoke, rescind, amend, restrict, condition, or otherwise impair the authority vested in an Independent Fiduciary under the Governance Documents;

(c) amend, restate, supplement, waive, rescind, or otherwise alter the governing documents of any Debtor;

(d) exercise any governance right in a manner inconsistent with the Governance Documents or the exclusive authority of the Independent Fiduciaries;

(e) sell, assign, pledge, or otherwise transfer any interest carrying a governance right in any Debtor unless the transferee first agrees in writing to be bound by the applicable Governance Consent and governing-document provisions, as required by the Governance Documents;

(f) dissolve, wind up, merge, convert, or consent to the dissolution, winding up, merger, or conversion of Camp Mystic or NFP, other than as approved by the applicable Independent Fiduciary and, where required, this Court; or

(g) take any action intended to circumvent or undermine the independence or authority of an Independent Fiduciary.

19. The foregoing restrictions reflect the voluntary, binding commitments of the applicable holders of governance rights. They shall remain effective throughout the Commitment Period, as defined in the Governance Documents, except as otherwise ordered by this Court.

20. No holder of governance rights may unilaterally revoke, rescind, amend, or modify the Governance Documents or otherwise take action inconsistent with the commitments reflected therein. The Governance Consents provide that any act taken in violation of them is void. The commitments reflected in the Governance Documents may be enforced by this Court on motion of an Independent Fiduciary or any party in interest, as provided in the Governance Documents and

subject to applicable law.

### Removal of Independent Fiduciaries

21. Consistent with the Governance Documents, an Independent Fiduciary may be removed only by order of this Court for Cause, upon motion of a party in interest and after notice and an opportunity for a hearing. "**Cause**" means gross negligence or fraud by the applicable Independent Fiduciary in the performance of his or her duties, as found by this Court after notice and a hearing, consistent with section 18 of the Camp Mystic Company Agreement or Article Eleven of the NFP Bylaws, as applicable.

22. Neither the Eastland Parties nor any other holder of governance rights shall have authority to remove an Independent Fiduciary unilaterally or to revoke, limit, or modify his or her authority pending resolution of any motion seeking removal.

### Vacancies and Replacement Fiduciaries

23. If an Independent Fiduciary resigns, dies, becomes incapacitated, is removed pursuant to an order of this Court, or otherwise ceases to serve, the CRO shall continue the ordinary-course administration of the applicable Debtor pending the appointment of a successor and shall cause the applicable Debtor to propose a replacement after consulting with the Committee, in accordance with the Governance Documents. During any such vacancy, no authority of the Independent Fiduciary shall revert to or be exercised by any other manager, director, member, shareholder, partner, or officer of any Debtor, and no decision within that authority, other than ordinary-course administration by the CRO, shall be made until a successor is seated or this Court otherwise orders.

24. Any proposed replacement shall be subject to approval by this Court after notice and an opportunity for a hearing.

25. In connection with any proposed replacement, the Debtors shall file:

(a) the name and qualifications of the proposed replacement;

(b) a declaration disclosing all connections between the proposed replacement and the Debtors, the Eastland Parties, creditors, other parties in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the Office of the United States Trustee;

(c) the proposed replacement's written consent to serve on the terms required by the Oral Ruling, the Trustee Order, the Governance Documents, and this Order;

(d) any additional resolutions or consents necessary to implement the replacement in accordance with applicable nonbankruptcy law and the Governance Documents; and

(e) the proposed replacement's compensation and expense reimbursement arrangements and any proposed modifications to the applicable directors' and officers' liability insurance.

26. No proposed replacement shall assume the authority of an Independent Fiduciary until approved by further order of this Court.

**COMPENSATION AND REIMBURSEMENT OF EXPENSES**

27. Pursuant to section 363(b) of the Bankruptcy Code, Camp Mystic is authorized to pay to Mark Andrews, or to Trinity River Advisors at his direction, compensation of $15,000 per month for his services as Camp Mystic Independent Manager; and to reimburse his reasonable out-of-pocket expenses in accordance with **Exhibit C**.

28. Pursuant to section 363(b) of the Bankruptcy Code, NFP is authorized to reimburse the Honorable Craig A. Gargotta (Ret.) for reasonable out-of-pocket expenses actually incurred in performing his duties as NFP Independent Director, including mileage, lodging, and meals, in accordance with **Exhibit C**. The Honorable Craig A. Gargotta (Ret.) shall serve as NFP

Independent Director without compensation.

29. The compensation and expense reimbursement arrangements authorized by this Order are reasonable and appropriate in light of the scope of the Independent Fiduciaries' responsibilities.

30. No compensation or expense reimbursement arrangement approved by this Order may be reduced, conditioned, or otherwise modified without further order of this Court.

31. Nothing in this Order authorizes compensation or reimbursement beyond the terms approved herein or eliminates any applicable reporting, disclosure, or other requirements imposed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), or prior orders of this Court. The Independent Fiduciaries shall not be required to file fee applications for the compensation and expenses authorized by this Order, and the applicable Debtors shall disclose all amounts paid or reimbursed to them in their monthly operating reports.

**DIRECTORS' AND OFFICERS' LIABILITY INSURANCE**

32. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to obtain and maintain Side A independent director liability insurance, a form of directors' and officers' liability insurance, for the Independent Fiduciaries, in their respective capacities, on the terms and at the cost set forth in **Exhibit D**. The Debtors shall cause such coverage to be bound promptly, and in any event within five business days, after entry of this Order.

33. The Debtors are authorized to pay the premiums and other charges necessary to obtain and maintain such coverage in accordance with the terms approved by this Order.

34. The Debtors shall not materially reduce, terminate, or modify the approved coverage in a manner adverse to an Independent Fiduciary without further order of this Court.

35. Nothing in this Order expands coverage beyond the terms of the applicable policy or adjudicates any coverage issue.

## GOVERNANCE OF MC FAMILY PARTNERSHIP AND MC MANAGEMENT

36. The governance arrangements of MC Family Partnership and MC Management shall remain unchanged except as expressly provided in the Governance Documents and this Order. MC Management shall continue as the sole general partner of MC Family Partnership, and MC Family Partnership shall continue as the sole member of Camp Mystic and the sole shareholder of NFP.

37. The Court recognizes that MC Family Partnership, MC Management, and the applicable holders of governance rights in those entities have voluntarily adopted binding commitments prohibiting the exercise of governance rights in a manner inconsistent with the authority and independence of the Independent Fiduciaries. Those commitments include restrictions against removing or replacing the Independent Fiduciaries, revoking or limiting their authority, or amending the governing documents of the Debtors during the applicable Commitment Period, except as provided in the Governance Documents.

38. The Governance Documents provide that MC Family Partnership shall not exercise its rights as sole member of Camp Mystic or sole shareholder of NFP, and MC Management shall not exercise its rights as general partner of MC Family Partnership, in a manner inconsistent with the authority or independence of the Independent Fiduciaries. The Governance Documents further provide that MC Family Partnership, as owner of Camp Mystic and NFP, irrevocably gives its advance consent to actions approved by the applicable Independent Fiduciary, subject to Court authorization where required.

39. The Governance Documents provide that the Independent Fiduciaries shall direct the CRO and the applicable officers on matters within their respective authority. The existing engagement of the CRO otherwise remains subject to the terms of the Court's order approving the retention of Harney Partners [ECF No. 173].

## CONTINUED APPLICATION OF BANKRUPTCY CODE REQUIREMENTS

40. Nothing in this Order relieves the Debtors or the Independent Fiduciaries from compliance with the Bankruptcy Code, Bankruptcy Rules, applicable nonbankruptcy law, or existing orders of this Court. Transactions requiring Court approval, including any settlement of the Flood Claims, any proposed use of estate real property or disposition of cash outside the ordinary course of business, sales of estate property outside the ordinary course of business, compromises or settlements requiring approval, and the employment of estate professionals, shall remain subject to the applicable notice, hearing, and approval requirements. Parties in interest may be heard on each such matter, and the decision for the applicable Debtor remains with its Independent Fiduciary, subject to approval by this Court where required.

41. Nothing in this Order requires this Court to act as a decision-maker or tiebreaker concerning internal governance or business judgments of the Debtors. The Independent Fiduciaries shall exercise their own independent business judgment, subject to the procedures contained in the Governance Documents, the applicable fiduciary duties, and the Court's review of matters properly presented for approval.

42. Nothing in this Order approves or confirms any chapter 11 plan, determines the treatment of any claim or interest, or prejudges whether any proposed plan satisfies any provision of section 1129 of the Bankruptcy Code, including section 1129(a)(5).

43. The Court expects that any chapter 11 plan of Camp Mystic or NFP proposed for confirmation will explain how and by whom the matters described in paragraph 5 of this Order, including the defense and settlement of the Flood Claims, will be decided for the applicable Debtor and its estate after the effective date of the plan.

44. Nothing in this Order limits the rights of creditors, equity holders, the Committee, the United States Trustee, or any other party in interest to receive notice, object, and be heard on

matters affecting their interests as provided by applicable law.

**FINDINGS CONCERNING TRUSTEE MOTIONS**

45. The Court finds that the Governance Documents and the Independent Fiduciaries' written consents satisfy the requirements stated in the Oral Ruling and the Trustee Order for an independent governance structure capable of remedying the material conflicts identified at Camp Mystic and NFP.

46. The Court further finds that, through the voluntary adoption and execution of the Governance Documents and the binding commitments reflected therein, the Debtors and the holders of governance rights have established a governance structure that remedies those conflicts without the necessity of appointing a chapter 11 trustee on the present record.

47. The Trustee Motions as to Camp Mystic and NFP are no longer held in abeyance under paragraph 2 of the Trustee Order and are denied without prejudice.

48. Nothing in this Order modifies the Court's denial without prejudice of the Trustee Motions as to MC Family Partnership and MC Management or the reservation of the United States Trustee's alternative request to convert these cases to cases under chapter 7 of the Bankruptcy Code.

**ENFORCEMENT AND RETENTION OF JURISDICTION**

49. Any Independent Fiduciary or any party in interest may seek relief from this Court to enforce the Governance Documents or this Order, subject to applicable law.

50. The Court retains jurisdiction to interpret, implement, and enforce this Order and the binding commitments reflected in the Governance Documents.

51. The headings in this Order are for convenience only and have no substantive effect.

Signed: November 02, 2026

Christopher Lopez
United States Bankruptcy Judge

# EXHIBIT A

**Governance Resolutions, Written Consents, and Related Governance Documents**

1. Unanimous Written Consent of the Managers and the Sole Member of Camp Mystic, LLC, together with the Second Amended & Restated Company Agreement of Camp Mystic, LLC

2. Unanimous Written Consent of the Board of Directors and the Sole Shareholder of Natural Fountains Properties, Inc., together with the Second Amended & Restated Bylaws of Natural Fountains Properties, Inc.

3. Written Consent of the General Partner of Mystic Camps Family Partnership, Ltd., together with the Fourth Amendment of the Limited Partnership Agreement of Mystic Camps Family Partnership, Ltd.

4. Unanimous Written Consent of the Managers and the Members of Mystic Camps Management, LLC

# EXHIBIT A-1

Unanimous Written Consent of the Managers and the Sole Member of Camp Mystic, LLC
and
Second Amended & Restated Company Agreement of Camp Mystic, LLC

**UNANIMOUS WRITTEN CONSENT
OF THE MANAGERS AND THE SOLE MEMBER
OF CAMP MYSTIC, LLC**

Pursuant to Sections 6.201 and 101.358 of the Texas Business Organizations Code (the "TBOC") and Sections 8, 10, and 15 of the Amended & Restated Company Agreement dated as of February 1, 2023 (the "Company Agreement") of Camp Mystic, LLC, a Texas limited liability company (the "Company"), the undersigned, being (a) all of the managers of the Company (collectively, the "Managers") and (b) Mystic Camps Family Partnership, Ltd., the sole member of the Company (the "Member"), waive notice of and the holding of a meeting and consent to the adoption of the following recitals and resolutions. This *Unanimous Written Consent of the Managers and the Sole Member of Camp Mystic, LLC* ("Consent") has the same effect as a unanimous vote at a meeting duly called and held. Each individual who signs this Consent signs it solely in the capacity stated below that individual's signature and not individually. This Consent takes effect when it has been signed by all of the undersigned (the "Effective Date").

**RECITALS**

WHEREAS, on June 24, 2026, Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("NFP"), Mystic Camps Family Partnership, Ltd. (the "Family Partnership"), and Mystic Camps Management, LLC ("MC Management") (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), which are jointly administered under Case No. 26-90621 (CML) (the "Chapter 11 Cases");

WHEREAS, the Family Partnership is the sole member of Camp Mystic and the sole shareholder of NFP, and MC Management is the sole general partner of the Family Partnership;

WHEREAS, the Debtors moved for authority to appoint independent fiduciaries for Camp Mystic and NFP [Docket No. 205] and modified that request in their omnibus reply [Docket No. 267] (the "Reply" and, as so modified, the "Modified Relief"), and the Official Committee of Unsecured Creditors (the "Committee") and the United States Trustee moved to appoint a chapter 11 trustee [Docket Nos. 227 and 304] (the "Trustee Motions");

WHEREAS, on October 21, 2026, the Bankruptcy Court stated its rulings on the record (the "October 21 Ruling"), denied the Modified Relief without prejudice, and entered its Order on Motions to Appoint a Chapter 11 Trustee [Docket No. 390] (the "Trustee Order"). The Trustee Order denies the Trustee Motions without prejudice as to the Family Partnership and MC Management, holds them in abeyance as to Camp Mystic and NFP, and permits the Debtors to file, by October 28, 2026, resolutions of each holder of a governance right in each Debtor implementing the requirements stated on the record and a proposed form of order to which each such holder consents;

WHEREAS, the Bankruptcy Court found that the conflicts of interest at Camp Mystic and NFP are material and can be remedied short of a trustee only if the persons who make the conflicted

decisions are independent of the Eastland Parties (as defined in the October 21 Ruling) in every respect that matters, including what is decided, what information is used, and when the decisions are made;

WHEREAS, the Bankruptcy Court stated that the remedy requires the appointment of independent fiduciaries by the governing bodies of Camp Mystic and NFP under their governing documents, with sole and exclusive authority over the plan, including the right to propose and amend the plan, the sale, the defense and settlement of the flood litigation on behalf of those estates, any estate claims against insiders, and the entities' decisions in connection with investigations, including privilege;

WHEREAS, the Bankruptcy Court did not order any person to adopt this Consent and stated that it was not imposing a governance structure. The Bankruptcy Court stated that independence resting on the owners' own binding agreement, which the Bankruptcy Court enforces, is the remedy for the conflicts. This Consent is that agreement. Each signer adopts it voluntarily under the TBOC and the Company Agreement, in the capacity in which it signs, as its own binding agreement, with the understanding that the Bankruptcy Court did not order it and in the exercise of its own business judgment;

WHEREAS, this Consent is one of four consents of even date, one for each Debtor (together, the "Governance Consents"); this Consent governs only the Company, and the Governance Consent of each other Debtor governs that Debtor; the Governance Consent of NFP elects the Honorable Craig A. Gargotta (Ret.) as independent director of NFP (the "Independent Director");

WHEREAS, Willetta A. Eastland, Richard G. Eastland, Jr., George A. Eastland, and Edward S. Eastland (the "Eastland Managers") are the Managers, and the Managers and the Member have consulted with the Debtors' counsel, each individual signer has had the opportunity to consult with their individual counsel, and the Managers and the Member have determined that the actions in this Consent are in the best interests of the Company, its estate, its creditors, and other parties in interest; and

WHEREAS, the persons signing below as Managers include each person who has been designated or elected a Manager of the Company and who has not since died, resigned, or been removed;

NOW, THEREFORE, the Managers and the Member adopt the following resolutions:

**RESOLUTIONS**

1. <u>Confirmation of the Managers.</u> RESOLVED, that the Member confirms and ratifies, effective as of January 1, 2026, the addition of Richard G. Eastland, Jr., George A. Eastland, and Edward S. Eastland as Managers to serve with Willetta A. Eastland, and confirms the validity of their acts as Managers since that date, without approving or releasing any act or omission or waiving any claim of the Company or its estate;

2. <u>Appointment of the Independent Manager.</u> RESOLVED, that the Member appoints Mark Andrews as a Manager of the Company, designated the "Independent Manager," effective on

the Effective Date, which he accepts, together with this Consent and the Restated Company Agreement, by his separate written consent to serve; that the number of Managers is increased by one to accommodate the appointment; and that each Manager approves the appointment;

3. Amendment of the Company Agreement. RESOLVED, that the Member, as the sole member of the Company and acting under Section 15 of the Company Agreement, amends the Company Agreement, effective on the Effective Date and as part of the Restated Company Agreement adopted in this Consent, by adding the following provision as Section 18, which controls over any contrary provision of the Company Agreement (the "Governance Amendment"):

> Independent Manager. In this Section 18, "Governance Consent" means the Unanimous Written Consent of the Managers and the Sole Member of the Company that approved this Section 18, "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, "Independent Manager" means the Manager appointed under the Governance Consent and designated the Independent Manager and any successor seated as the Governance Consent provides, and "Cause" means the Independent Manager's gross negligence or fraud in the performance of his duties as a Manager, as found by the Bankruptcy Court after notice and a hearing. (a) Section 8(c) does not apply to the Independent Manager, who is eligible to serve as a Manager. (b) From the effective date of this Section 18 for the duration of these cases, meaning the chapter 11 case of the Company and the cases jointly administered with it under Case No. 26-90621 (CML) in the Bankruptcy Court, and ending when a chapter 11 plan of the Company confirmed by the Bankruptcy Court becomes effective (the "Commitment Period"), all authority of the Managers to manage and control the business and affairs of the Company is vested solely and exclusively in the Independent Manager. No other Manager has any vote, veto, or consent right on any matter, and Section 8(e) does not apply. The Independent Manager may act on any matter by a written determination that he signs, without a meeting, without notice to any other Manager or to the Members, and without the vote, consent, or signature of any other Manager, and Section 10 does not apply to his action. Section 8(b) and Section 12 do not limit any action of the Independent Manager, and the consent or decision of the Members that Section 3, Section 8(b), Section 12, or the TBOC would otherwise require for such an action is given by the Governance Consent. (c) The second sentence of Section 8(i) does not apply to the Independent Manager, who owes the Company, its estate, and its creditors the fiduciary duties of care and loyalty. (d) Section 8(f)(i) and the last sentence of Section 8(f) do not apply to the Independent Manager, who may be removed only by order of the Bankruptcy Court for Cause, on motion of a party in interest, and any vacancy in that office will be filled only as the Governance Consent provides. Until a successor is seated, the Chief Restructuring Officer continues the ordinary-course administration of the Company and proposes a successor as the Governance Consent provides. (e) The Independent Manager's compensation under Section 8(h) is the compensation that the Member fixes by written consent and, during the Commitment Period, that

the Bankruptcy Court approves. The Independent Manager is entitled to indemnification under Section 14 on the same terms as the other Managers and to the extent the TBOC provides. The restatement of this Agreement does not create, reaffirm, or enlarge any right of indemnification of any other person, and every such right remains subject to every objection, defense, and claim of the Company and its estate. (f) The Independent Manager may appoint and remove officers under Section 9. (g) This provision and this Agreement may not be amended, restated, or rescinded in any way during the Commitment Period.

4. Second Amended & Restated Company Agreement. RESOLVED, that the Second Amended & Restated Company Agreement of the Company, in the form attached to this Consent as Exhibit A (the "Restated Company Agreement"), which amends and restates the Company Agreement in its entirety and incorporates the Governance Amendment as Section 18, is approved, adopted, and agreed to by the Member under Section 15 of the Company Agreement; that each Manager, in his or her capacity as a Manager, approves and consents to the Restated Company Agreement, including Section 18; that the Restated Company Agreement takes effect on the Effective Date; and that, from and after the Effective Date, each reference in the Governance Consents to the Company Agreement or to the Governance Amendment includes the Restated Company Agreement and its Section 18;

5. Sole and Exclusive Authority. RESOLVED, that the Independent Manager has sole and exclusive authority to manage the Company and to act for it in the Chapter 11 Cases and in every other matter, subject only to the Bankruptcy Code and the orders of the Bankruptcy Court (the "Independent Manager Authority"), and that the Independent Manager Authority includes, without limitation:

(a) every Plan Matter (as defined in the Reply), including the right to propose, file, amend, modify, withdraw, solicit, and consummate a chapter 11 plan and disclosure statement for the Company and to decide whether to file an amended plan, including the terms that govern who will make decisions for the Company and its estate after confirmation;

(b) the Sale Process (as defined in the Reply) and any other sale, lease, or disposition of property of the Company outside the ordinary course of business;

(c) the defense and settlement, within or outside a chapter 11 plan, of the Tort Actions (as defined in the Reply) and every other claim arising from the July 4, 2025 flood, on behalf of the Company and its estate;

(d) every claim and cause of action of the Company or its estate against any insider or affiliate, including the Eastland Parties, and every objection, counterclaim, setoff, recoupment, and defense to any claim asserted by an insider or affiliate;

(e) every decision of the Company in connection with any criminal, governmental, legislative, licensing, or regulatory investigation, inquiry, subpoena, or proceeding, including every decision concerning privilege;

(f) the day-to-day administration of the chapter 11 case of the Company, including its schedules, statements of financial affairs, monthly operating reports, claims, executory contracts and unexpired leases, professionals, insiders' use or occupancy of its property, and the direction of the Chief Restructuring Officer; and

(g) the information on which each of these decisions is made and the timing of each decision;

6. Litigation, Including the Tort Actions. RESOLVED, that the Independent Manager Authority over the Tort Actions includes the selection, retention, and direction of counsel for the Company, the assertion or waiver of its defenses, its positions on jurisdiction, venue, removal, remand, transfer, and the automatic stay, the exercise of its rights under any insurance policy, including the tender of claims, consent to settlement, and the allocation of shared policy limits and defense costs between the Company and any individual insured, mediation, and settlement, in each case subject to the terms of any applicable insurance policy and to approval by the Bankruptcy Court where approval is required; that no Eastland Manager has any vote on, or authority over, any matter concerning the Tort Actions on behalf of the Company; and that nothing in this Consent alters any contractual right of any insurer;

7. Claims Against Insiders and the Timing of Their Evaluation. RESOLVED, that the Independent Manager alone decides whether, when, and how to investigate, assert, prosecute, preserve, settle, release, or assign any claim of the Company or its estate against an insider or affiliate (the "Insider Claims"), may begin that evaluation at once, and may weigh the pendency of the Tort Actions, the availability of insurance, cost, and the requirements of any chapter 11 plan; that the Independent Manager shall in all events complete an evaluation of the Insider Claims sufficient (a) to determine their treatment under any chapter 11 plan of the Company before votes on that plan are solicited and (b) to protect them before any limitations period or other deadline that applies to them expires, including the deadlines under section 546(a) of the Bankruptcy Code; that the Independent Manager alone may negotiate and enter into any tolling agreement concerning the Insider Claims; and that no Insider Claim may be released, in a chapter 11 plan or otherwise, without the written approval of the Independent Manager;

8. Privilege. RESOLVED, that the Independent Manager exclusively controls the attorney-client privilege, the work-product protection, and every other privilege and protection held by the Company (the "Company Privileges"), including every decision to assert, preserve, or waive any of them in whole or in part, to produce or withhold documents, to seek or agree to nonwaiver and clawback orders under Federal Rule of Evidence 502, and to enter into, continue, modify, or terminate any common-interest or joint-defense agreement, including any existing agreement with an Eastland Party or an Eastland Party's counsel; and that no Eastland Manager may assert or waive any of the Company Privileges;

9. Investigations. RESOLVED, that the Independent Manager exclusively decides who represents the Company in any criminal, governmental, legislative, licensing, or regulatory investigation, inquiry, subpoena, or proceeding, including the pending investigation by the Texas Rangers (each, an "Investigation"), how the Company responds to any legal process, the scope of its cooperation, the collection and production of its documents and data, the designation of any witness to testify for it, and any voluntary disclosure; and that no Eastland Manager may speak for or bind the Company in any Investigation;

10. Information and Cooperation. RESOLVED, that the Independent Manager is entitled to complete and prompt access to all books, records, data, devices, privileged materials, personnel, insurers, brokers, and professionals of the Company; that each signer, in the capacity in which it signs, will cause the books, records, and other information of the Company to be provided to the Independent Manager when he requests them and will not direct or permit their destruction; and that the Independent Manager alone decides what to do with that information;

11. Separate Estate. RESOLVED, that the Independent Manager acts solely for the Company and its estate; that on any matter in which the interests of the Company and NFP or another Debtor diverge, including the allocation of liability, insurance, and value among the Debtors' estates and any intercompany claim or lease, the Independent Manager advocates solely for the Company; and that the Independent Manager and the Independent Director may coordinate and share information, but neither needs the approval of the other to act;

12. Chief Restructuring Officer and Officers. RESOLVED, that Karen G. Nicolaou, as Chief Restructuring Officer (the "CRO"), and every officer of the Company shall report to and take direction from the Independent Manager on every matter within the Independent Manager Authority; that the CRO's engagement remains as approved by order entered August 18, 2026 [Docket No. 173], and any expansion of that engagement requires a further application; that the Independent Manager may appoint and remove officers of the Company; and that the designation of Edward S. Eastland as authorized signatory in the June 23, 2026 resolutions of the Company is limited to acts that the Independent Manager directs;

13. Member Approval. RESOLVED, that, to the extent the TBOC, the Company's certificate of formation, or Section 8(b) or Section 12 of the Company Agreement requires the consent or decision of the Member for an action within the Independent Manager Authority, including a sale of all or substantially all of the Company's assets or the dissolution or winding up of the Company under a chapter 11 plan, the Member gives that consent now, in advance and irrevocably for the Commitment Period, for any action that the Independent Manager approves and, where its authorization is required, the Bankruptcy Court authorizes, and no further act of the Member is required;

14. Compensation of the Independent Manager. RESOLVED, that the Member fixes the compensation of Mark Andrews, as Independent Manager, at $15,000 per month, payable by the Company, which may be paid to Trinity River Advisors at his direction, conditioned on approval by the Bankruptcy Court after notice and an opportunity for parties in interest to be heard; that this compensation is the compensation fixed by the Member for purposes of Section 8(h) and Section 18(e) of the Restated Company Agreement; and that no compensation will be paid until the Bankruptcy Court approves it;

15. Expenses, Indemnification, and Insurance. RESOLVED, that, subject to approval by the Bankruptcy Court after notice and an opportunity for parties in interest to be heard, the Company is authorized to reimburse the Independent Manager's reasonable out-of-pocket expenses, to indemnify him under Section 14 of the Company Agreement on the same terms as the other Managers and to the extent the TBOC provides, and to purchase and maintain Side A independent director liability insurance, a form of directors and officers liability insurance, covering him on terms and at a cost disclosed to, and approved by, the Bankruptcy Court;

16. Agreements of Each Signer. RESOLVED, that each signer, in the capacity in which it signs, agrees that during the Commitment Period (as defined in Section 18 of the Restated Company Agreement) that signer (a) will not vote on, direct, or attempt to direct any matter within the Independent Manager Authority, and, if the TBOC or the Company Agreement is held to require the vote or consent of any person other than the Independent Manager on such a matter, consents in advance to the determination of the Independent Manager and will sign any instrument needed to carry it out; and (b) will not direct, and will cause the Company's personnel not to act on, any instruction contrary to a determination of the Independent Manager;

17. Specific Agreement and Consent to No Removal, No Limitation, and No Amendment. RESOLVED, that each signer, in the capacity in which it signs, specifically agrees to and consents to the following term stated by the Bankruptcy Court on the record on October 21, 2026, as it applies to the Company: no one will remove the Independent Manager, revoke or limit his authority, or amend the governing documents of the Company in any way for the duration of these cases, being the Commitment Period as defined in Section 18 of the Restated Company Agreement; that each signer waives, for the Commitment Period, every right it may have under any governing document or applicable law to remove the Independent Manager, to revoke or limit his authority, or to amend any governing document of the Company; and that this agreement and consent is irrevocable during the Commitment Period;

18. Binding Agreement of Each Holder of a Governance Right. RESOLVED, that, in furtherance of the foregoing agreement and consent, each signer, in the capacity in which it signs, agrees with each other signer and with the Company, for the benefit of the Company's estate, that during the Commitment Period:

(a) no person will remove or replace the Independent Manager, or revoke, limit, or condition his authority, and no signer will take, support, or consent to any such action;

(b) no person will amend, restate, supplement, waive, or rescind the certificate of formation, the Restated Company Agreement, or any other governing document of the Company in any way, including Section 18 of the Restated Company Agreement, other than the adoption of the Restated Company Agreement under this Consent, and no signer will take, support, or consent to any such action;

(c) the Independent Manager may be removed only by order of the Bankruptcy Court for Cause (as defined in Section 18 of the Restated Company Agreement), on motion of a party in interest;

(d) any vacancy in the office of the Independent Manager will be filled only by a person whom the Company proposes after consulting with the Committee, who files a declaration disclosing all connections with the Debtors, the Eastland Parties, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee, who consents in writing to serve on the terms of this Consent, and whom the Bankruptcy Court approves after notice; and each signer will take every action needed under the governing documents to seat that person;

(e) compensation of the Independent Manager approved by the Bankruptcy Court will not be reduced or conditioned without further order of the Bankruptcy Court;

(f) no signer will sell, assign, pledge, or otherwise transfer any interest that carries a governance right in the Company unless the transferee first agrees in writing to be bound by this Consent, and any transferee takes subject to it; and

(g) each signer will sign any further instrument needed to carry out this Consent;

19. Enforcement. RESOLVED, that this Consent is the signers' own binding agreement, adopted under Texas law; that each signer, in the capacity in which it signs, consents to its enforcement by the Bankruptcy Court, on motion of the Independent Manager or any party in interest; that any act taken in violation of this Consent is void; and that the Company does not rely on sections 105(a) or 363 of the Bankruptcy Code to hold the governance structure in place;

20. Proposed Order. RESOLVED, that each signer approves, and consents to the entry of, the proposed form of order to be filed with the Governance Consents (the "Proposed Order"), and authorizes the Debtors' counsel to file the Governance Consents, the Proposed Order, the Independent Manager's written acceptance of appointment and consent to serve, the proposed compensation of the Independent Manager, and a binder or firm quote for Side A independent director liability insurance on or before October 28, 2026, and to present them at the hearing set for November 3, 2026;

21. No Admission; Reservation of Individual Rights. RESOLVED, that this Consent is not an admission by any signer of any fact or liability, or that any claim against any signer has merit; that each individual signer reserves all of his or her personal claims, defenses, and rights, including his or her own counsel and privileges, consistent with paragraph 8 of the Trustee Order and subject to the authority of the Independent Manager to determine the positions of the Company on them; that each signer may be heard in the Bankruptcy Court on any matter; and that nothing in this Consent is a vote to accept or reject any chapter 11 plan or the allowance, waiver, or release of any claim against or interest in any Debtor;

22. Prior Consents. RESOLVED, that this Consent supersedes every prior consent or resolution of the Company, including the written consent effective October 7, 2026, to the extent inconsistent with this Consent;

23. Implementation. RESOLVED, that, without further action of the Managers or the Member, the Independent Manager may (a) designate a new registered agent and registered office for the Company and file the statement of change with the Texas Secretary of State; (b) certify the identity and authority of the Independent Manager and of each officer of the Company to any bank, title company, insurer, governmental authority, or other third party, which may rely on that certification; (c) add or remove signatories on, and control access to, every bank account, deposit account, credit card, and online account of the Company, including its email, domain, website, and social media accounts; and (d) file any franchise tax report, public information report, or other report of the Company; and that each signer will deliver to the Independent Manager every credential, device, and record of the Company that it holds;

24. General Authority. RESOLVED, that the Independent Manager, and the CRO and each officer of the Company acting at his direction, are each authorized, in the name and on behalf of the Company, to execute and deliver all documents and take all other actions necessary or appropriate to carry out the purposes of these resolutions, subject to the orders of the Bankruptcy Court; and

25. Counterparts; Electronic Signatures. RESOLVED, that this Consent may be signed in counterparts, each of which is an original and all of which together are one instrument; that a signature delivered by electronic transmission or affixed through an electronic signature service is as effective as an original signature; and that this Consent shall be filed with the records of the proceedings of the Managers and the Member.

IN WITNESS WHEREOF, the undersigned have signed this Consent, each solely in the capacity stated, on the dates set forth below, and this Consent takes effect on the date of the last signature. By signing, each signer specifically agrees to and consents to the term that no one will remove the Independent Manager, revoke or limit his authority, or amend the governing documents of the Company in any way during the Commitment Period.

**MANAGERS:**

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager
Date: 10/27/2026, 2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69690A67F405...
Edward S. Eastland
Manager
Date: 10/27/2026, 2026

**SOLE MEMBER:**

MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.

By: Mystic Camps Management, LLC, its General Partner

Signed by:
Willetta Eastland
ACE9AA42CC0B475...
Willetta A. Eastland
Manager of Mystic Camps Management, LLC
Date: 10/27/2026, 2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager of Mystic Camps Management, LLC
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager of Mystic Camps Management, LLC
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69690A67F405...
Edward S. Eastland
Manager of Mystic Camps Management, LLC
Date: 10/27/2026, 2026

**SECOND AMENDED & RESTATED**
**COMPANY AGREEMENT**
**of**
**CAMP MYSTIC, LLC**

This Second Amended & Restated Company Agreement (this "Agreement") of CAMP MYSTIC, LLC, a Texas limited liability company (the "Company"), is adopted, executed, and agreed to by the sole Member and Managers (both defined below) as of the date on which the Governance Consent (as defined in Section 18) takes effect (the "Effective Date"). This Agreement amends and restates in its entirety the Amended & Restated Company Agreement of the Company adopted as of February 1, 2023.

1. Name. The business of the Company shall be conducted under its registered name, or any other name adopted by the Managers.

2. Purpose. The purpose of the Company is to engage in any lawful business activity.

3. Registered Agent. The name and address of the initial registered agent of the Company for service of process in the State of Texas is set forth on the Certificate of Formation of the Company and may be changed with the consent of the Members.

4. Sole Member. The sole member of the Company is MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.

5. Membership.

(a) The Company is authorized to issue a single class of membership interest (the "Membership Interest") representing all of the rights and duties of a member of the Company under this Agreement and the Texas Business Organizations Code (as it may be amended from time to time, the "TBOC").

(b) No person may be a Member other than (i) Richard G. Eastland, (ii) Willetta A. Eastland, (iii) the descendants of Richard G. Eastland and Willetta A. Eastland, (iv) the trustee of a trust that is only for the benefit of one or more descendants of Richard G. Eastland and Willetta A. Eastland, (v) the trustee of a trust that is only for the benefit of the surviving spouse of a descendant of Richard G. Eastland and Willetta A. Eastland for the balance of his/her lifetime or a terms of years and of which one or more descendants of Richard G. Eastland and Willetta A. Eastland are the only remainder beneficiaries, and (vi) an entity of which any one or more of the foregoing [i.e., (i) – (v)] is/are the only owner(s).

6. Capital Contributions. Members may be required to make capital contributions to the Company, from time to time. The Managers shall cause the Company to maintain records of all capital contributions by the Members to the Company.

7. Tax Characterization and Returns.

(a) At any time that two or more unmarried persons or entities own a Membership Interest, the Company will be treated as a partnership for all relevant federal and state tax purposes and will make all elections necessary to be treated as such. Until such time, however, the Company will be treated as a disregarded entity for all relevant federal and state tax purposes.

(b) In the event that the Company is treated as a partnership for tax purposes in any fiscal year, then the Company will cause a Form K-1 to be delivered to the Members, together with such other information with respect to the Company, if any, as may be necessary for the preparation of the Members' federal, state, or local income tax (or information) returns, within ninety (90) days after the end of such fiscal year.

8. Management.

(a) Subject to the next-following subsection and to Section 18, the management of the Company is fully reserved to, and shall be exercised by or under the authority of the Managers of the Company ("Managers"), and the Members, in that capacity, have no right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

(b) Notwithstanding any power or authority granted to the Managers under the TBOC or this Agreement, the Managers may not make any of the following decisions or take any of the following actions without first obtaining the consent of the Members:

(i) To cause the Company to merge or otherwise combine with any other entity,

(ii) To cause the Company to sell or otherwise dispose of any property or assets of the Company other than in the ordinary course of business of the Company,

(iii) To cause the Company to admit a new Member,

(iv) To take any action that would make it impossible to carry on the ordinary business of the Company, or

(v) To make any decision or take any action for which the consent of the Members is expressly required under this Agreement.

(c) The Company will have as many Managers as determined by the Members, from time to time. A Manager need not be a Member nor a resident of the State of Texas; however, no person may be a Manager other than (i) Richard G. Eastland, (ii) Willetta A. Eastland, and (iii) the descendants of Richard G. Eastland and Willetta A. Eastland.

(d) The current Managers are Willetta A. Eastland, Richard G. Eastland, Jr., George A. Eastland, Edward S. Eastland, and Mark Andrews, as the Independent Manager under Section 18.

(e) Each manager other than Richard G. Eastland and Willetta A. Eastland will have a single vote, and Richard G. Eastland and Willetta A. Eastland will each have a number of

votes that is one more than the aggregate number of votes of all other Managers (by way of example, if there are five Managers, inclusive of Richard G. Eastland and Willetta A. Eastland, then Richard G. Eastland and Willetta A. Eastland will each have four votes).

(f) Each Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earliest to occur of any of the following events:

(i) Gross negligence or willful misconduct in the performance of his/her/its duties as a Manager, in which case removal shall be effective immediately (no notice to the Manager required),

(ii) His/her/its resignation as a Manager, upon notice thereof delivered to the Members,

(iii) Immediately upon his/her death, or its dissolution, as applicable, or

(iv) Immediately upon his/her/its bankruptcy.

Each Manager vacancy may be filled by the Members.

(g) Annual and special meetings of the Managers may, but need not, be held.

(h) The Managers shall receive such compensation, if any, for his/her services as may be designated by the Members from time to time. In addition, the Managers are entitled to be reimbursed for out-of-pocket costs and expenses incurred in the course of his/her/its service hereunder.

(i) The Managers shall be liable to the Company and the Members for acts or omissions in the management of the Company only in the case of gross negligence, willful misconduct, or breach of this Agreement but the Managers shall not be liable to the Company or the Members for any other acts or omissions, including the negligence, strict liability, or other fault or responsibility. Except for those duties that are expressly set forth in this Agreement, the Managers shall not be subject to any duties (including fiduciary duties) in the management of the Company.

9. <u>Officers.</u> One or more individuals may be appointed as officers of the Company by the Managers. All officers of the Company shall have authority to perform such duties in the management of the Company as may be determined by the Managers. Any officer may be removed, with or without cause, by the Managers at any time.

10. <u>Actions Without Meeting.</u> Any action that may be taken by the members or Managers pursuant to this Agreement or controlling law may be taken without a meeting by unanimous written consent.

11. <u>Distributions.</u> The Managers may cause the Company to distribute any cash held by the Company to the Members at any time and from time to time, in their discretion; provided, however, that the Company may not make any distributions in violation of the TBOC or applicable law.

12. <u>Dissolution.</u> The Company will dissolve, and its affairs will be wound up, upon the earlier to occur of (i) the decision of the Members, or (ii) an event of dissolution under the TBOC.

13. Distributions upon Dissolution. Upon dissolution, the Members will be entitled to receive the remaining funds of the Company after paying or making reasonable provision for all the Company's creditors to the extent required by the TBOC.

14. Indemnification. The Company must indemnify, defend, protect, and hold harmless the Managers, Members, and officer (each, an "Indemnified Person") from and against all actions, suits or proceedings (collectively, "Proceedings"), and all other claims, demands, losses, damages, liabilities, judgments, awards, penalties, fines, settlements, costs and expenses (including court costs and reasonable attorneys' fees), arising out of the management of the Company or such Indemnified Person's service as the governing authority of the Company. THIS INDEMNITY WILL APPLY TO MATTERS THAT ARISE OUT OF THE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR RESPONSIBILITY BY THE INDEMNIFIED PERSON; PROVIDED, HOWEVER, THAT THIS INDEMNITY WILL NOT APPLY TO MATTERS ARISING OUT OF THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR BREACH OF THIS AGREEMENT BY ANY INDEMNIFIED PERSON.

15. Amendment. Subject to Section 18, this Agreement may be amended only by a subsequent written agreement signed by the Members.

16. Governing Law. This Agreement will be governed by and construed under the laws of the State of Texas, excluding any rules or principles of conflicts of laws that might refer the governance or construction of this Agreement to the law of another jurisdiction.

17. Severability. Every term and provision of this Agreement is intended to be severable, and if any term or provision of this Agreement is illegal or invalid for any reason whatsoever, then such illegality or invalidity will not affect the legality or validity of the remainder of this Agreement.

18. Independent Manager. In this Section 18, "Governance Consent" means the Unanimous Written Consent of the Managers and the Sole Member of the Company that approved this Section 18, "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, "Independent Manager" means the Manager appointed under the Governance Consent and designated the Independent Manager and any successor seated as the Governance Consent provides, and "Cause" means the Independent Manager's gross negligence or fraud in the performance of his duties as a Manager, as found by the Bankruptcy Court after notice and a hearing.

(a) Section 8(c) does not apply to the Independent Manager, who is eligible to serve as a Manager.

(b) From the effective date of this Section 18 for the duration of these cases, meaning the chapter 11 case of the Company and the cases jointly administered with it under Case No. 26-90621 (CML) in the Bankruptcy Court, and ending when a chapter 11 plan of the Company confirmed by the Bankruptcy Court becomes effective (the "Commitment Period"), all authority of the Managers to manage and control the business and affairs of the Company is vested solely and exclusively in the Independent Manager. No other Manager has any vote, veto, or consent right on any matter, and Section 8(e) does not apply. The

Independent Manager may act on any matter by a written determination that he signs, without a meeting, without notice to any other Manager or to the Members, and without the vote, consent, or signature of any other Manager, and Section 10 does not apply to his action. Section 8(b) and Section 12 do not limit any action of the Independent Manager, and the consent or decision of the Members that Section 3, Section 8(b), Section 12, or the TBOC would otherwise require for such an action is given by the Governance Consent.

(c) The second sentence of Section 8(i) does not apply to the Independent Manager, who owes the Company, its estate, and its creditors the fiduciary duties of care and loyalty.

(d) Section 8(f)(i) and the last sentence of Section 8(f) do not apply to the Independent Manager, who may be removed only by order of the Bankruptcy Court for Cause, on motion of a party in interest, and any vacancy in that office will be filled only as the Governance Consent provides. Until a successor is seated, the Chief Restructuring Officer continues the ordinary-course administration of the Company and proposes a successor as the Governance Consent provides.

(e) The Independent Manager's compensation under Section 8(h) is the compensation that the Member fixes by written consent and, during the Commitment Period, that the Bankruptcy Court approves. The Independent Manager is entitled to indemnification under Section 14 on the same terms as the other Managers and to the extent the TBOC provides. The restatement of this Agreement does not create, reaffirm, or enlarge any right of indemnification of any other person, and every such right remains subject to every objection, defense, and claim of the Company and its estate.

(f) The Independent Manager may appoint and remove officers under Section 9.

(g) This provision and this Agreement may not be amended, restated, or rescinded in any way during the Commitment Period.

As of the Effective Date.

**SOLE MEMBER:**

**MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.**

**By: Mystic Camps Management, LLC, its General Partner**

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager
Date: 10/27/2026

Signed by:
DD90200457FD492...
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager
Date: 10/26/2026

Signed by:
Edward Eastland
3ED69690A67F405...
Edward S. Eastland
Manager
Date: 10/27/2026

**APPROVED AND CONSENTED TO BY THE MANAGERS:**

Each of the undersigned Managers, in his or her capacity as a Manager, approves and consents to this Agreement, including Section 18.

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager
Date: 10/27/2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager
Date: 10/26/2026

Signed by:
Edward Eastland
3ED09090A07F405...
Edward S. Eastland
Manager
Date: 10/27/2026

# EXHIBIT A-2

Unanimous Written Consent of the Board of Directors and the Sole Shareholder
of Natural Fountains Properties, Inc.
and
Second Amended & Restated Bylaws of Natural Fountains Properties, Inc.

**UNANIMOUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS AND THE SOLE SHAREHOLDER**
**OF NATURAL FOUNTAINS PROPERTIES, INC.**

Pursuant to Sections 6.201 and 21.101 of the Texas Business Organizations Code (the "TBOC") and Articles Three, Nine(B), and Ten of the Amended & Restated Bylaws adopted as of February 1, 2023 (the "Bylaws") of Natural Fountains Properties, Inc., a Texas corporation (the "Corporation"), the undersigned, being (a) all of the directors of the Corporation (collectively, the "Board"), (b) Mystic Camps Family Partnership, Ltd., the sole shareholder of the Corporation (the "Shareholder"), and (c) William Neely Bonner III, the President of the Corporation, who joins in this Consent solely as President and to resign any office as a director, waive notice of and the holding of a meeting and consent to the adoption of the following recitals and resolutions. This Unanimous Written Consent of the Board of Directors and the Sole Shareholder of Natural Fountains Properties, Inc. ("Consent") has the same effect as a unanimous vote at a meeting duly called and held. Each individual who signs this Consent signs it solely in the capacity stated below that individual's signature and not individually. This Consent takes effect when it has been signed by all of the undersigned (the "Effective Date").

**RECITALS**

WHEREAS, on June 24, 2026, Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("NFP"), Mystic Camps Family Partnership, Ltd. (the "Family Partnership"), and Mystic Camps Management, LLC ("MC Management") (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), which are jointly administered under Case No. 26-90621 (CML) (the "Chapter 11 Cases");

WHEREAS, the Family Partnership is the sole member of Camp Mystic and the sole shareholder of NFP, and MC Management is the sole general partner of the Family Partnership;

WHEREAS, the Debtors moved for authority to appoint independent fiduciaries for Camp Mystic and NFP [Docket No. 205] and modified that request in their omnibus reply [Docket No. 267] (the "Reply" and, as so modified, the "Modified Relief"), and the Official Committee of Unsecured Creditors (the "Committee") and the United States Trustee moved to appoint a chapter 11 trustee [Docket Nos. 227 and 304] (the "Trustee Motions");

WHEREAS, on October 21, 2026, the Bankruptcy Court stated its rulings on the record (the "October 21 Ruling"), denied the Modified Relief without prejudice, and entered its Order on Motions to Appoint a Chapter 11 Trustee [Docket No. 390] (the "Trustee Order"). The Trustee Order denies the Trustee Motions without prejudice as to the Family Partnership and MC Management, holds them in abeyance as to Camp Mystic and NFP, and permits the Debtors to file, by October 28, 2026, resolutions of each holder of a governance right in each Debtor implementing the requirements stated on the record and a proposed form of order to which each such holder consents;

WHEREAS, the Bankruptcy Court found that the conflicts of interest at Camp Mystic and NFP are material and can be remedied short of a trustee only if the persons who make the conflicted decisions are independent of the Eastland Parties (as defined in the October 21 Ruling) in every respect that matters, including what is decided, what information is used, and when the decisions are made;

WHEREAS, the Bankruptcy Court stated that the remedy requires the appointment of independent fiduciaries by the governing bodies of Camp Mystic and NFP under their governing documents, with sole and exclusive authority over the plan, including the right to propose and amend the plan, the sale, the defense and settlement of the flood litigation on behalf of those estates, any estate claims against insiders, and the entities' decisions in connection with investigations, including privilege;

WHEREAS, the Bankruptcy Court did not order any person to adopt this Consent and stated that it was not imposing a governance structure. The Bankruptcy Court stated that independence resting on the owners' own binding agreement, which the Bankruptcy Court enforces, is the remedy for the conflicts. This Consent is that agreement. Each signer adopts it voluntarily under the TBOC and the Bylaws, in the capacity in which it signs, as its own binding agreement, with the understanding that the Bankruptcy Court did not order it and in the exercise of its own business judgment;

WHEREAS, this Consent is one of four consents of even date, one for each Debtor (together, the "Governance Consents"); this Consent governs only the Corporation, and the Governance Consent of each other Debtor governs that Debtor; the Governance Consent of Camp Mystic appoints Mark Andrews as independent manager of Camp Mystic (the "Independent Manager");

WHEREAS, Willetta A. Eastland, Richard G. Eastland, Jr., George A. Eastland, and Edward S. Eastland (the "Eastland Directors") serve as the directors, and the Board and the Shareholder have consulted with the Debtors' counsel, each individual signer has had the opportunity to consult with their individual counsel, and the Board and the Shareholder have determined that the actions in this Consent are in the best interests of the Corporation, its estate, its creditors, and other parties in interest; and

WHEREAS, the persons signing below as directors include each person who has been elected a director of the Corporation and who has not since died, resigned, or been removed;

NOW, THEREFORE, the Board and the Shareholder adopt the following resolutions:

## RESOLUTIONS

1. Confirmation of the Board. RESOLVED, that the Shareholder confirms and ratifies, effective as of January 1, 2026, the election of Richard G. Eastland, Jr., George A. Eastland, and Edward S. Eastland as directors to serve with Willetta A. Eastland, and confirms the validity of their acts as directors since that date, without approving or releasing any act or omission or waiving any claim of the Corporation or its estate; and that the Shareholder accepts the resignation of William Neely Bonner III, which he gives by signing this Consent, from any position as a director of the Corporation, without affecting his office as President;

2. Election of the Independent Director. RESOLVED, that the Shareholder elects the Honorable Craig A. Gargotta (Ret.) as a director of the Corporation, designated the "Independent Director," effective on the Effective Date, which he accepts, together with this Consent and the Restated Bylaws, by his separate written consent to serve; that the number of directors is increased by one to accommodate the election; and that each director approves the election;

3. Amendment of the Bylaws and Shareholders' Agreement. RESOLVED, that the Shareholder, as the sole shareholder of the Corporation and acting under Article Ten of the Bylaws

and Section 21.101 of the TBOC, amends the Bylaws, effective on the Effective Date and as part of the Restated Bylaws adopted in this Consent, by adding the following provision as Article Eleven, which controls over any contrary provision of the Bylaws and, being approved by all of the shareholders of the Corporation, is also a shareholders' agreement under Section 21.101(a)(1), (a)(7), and (b)(1)(A) of the TBOC (the "Governance Amendment"):

> Independent Director. In this Article Eleven, "Governance Consent" means the Unanimous Written Consent of the Board of Directors and the Sole Shareholder of the corporation that approved this Article Eleven, "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, "Independent Director" means the Director elected under the Governance Consent and designated the Independent Director and any successor seated as the Governance Consent provides, and "Cause" means the Independent Director's gross negligence or fraud in the performance of his duties as a Director, as found by the Bankruptcy Court after notice and a hearing. This Article Eleven is also a shareholders' agreement under Section 21.101 of the Texas Business Organizations Code, approved by all of the shareholders of the corporation. (a) The Independent Director is eligible to serve as a Director, and Article Three(B) applies to his term only as this Article Eleven provides. (b) From the effective date of this Article Eleven for the duration of these cases, meaning the chapter 11 case of the corporation and the cases jointly administered with it under Case No. 26-90621 (CML) in the Bankruptcy Court, and ending when a chapter 11 plan of the corporation confirmed by the Bankruptcy Court becomes effective (the "Commitment Period"), the discretion and powers of the Board of Directors are restricted so that all authority of the Board of Directors to manage the business and affairs of the corporation is exercised solely and exclusively by the Independent Director. On any matter that requires action of the Board of Directors as a whole, the Independent Director holds all of the voting power of the Board of Directors. No other Director has any vote, veto, or consent right on any matter, and Article Three(E) and (F) do not apply. The Independent Director may act on any matter by a written determination that he signs, without a meeting of the Board of Directors, without notice to any other Director, and without the vote, consent, or signature of any other Director, and Article Three(C), (D), and (I) and Article Nine(B) do not apply to his action. To the fullest extent the law permits, the approval of the shareholders that the Texas Business Organizations Code or these Bylaws would otherwise require for an action of the Independent Director is given by the Governance Consent. (c) The Independent Director owes the corporation, its estate, and its creditors the fiduciary duties of care and loyalty. (d) The Independent Director may be removed only by order of the Bankruptcy Court for Cause, on motion of a party in interest. The shareholders' right to remove a Director and Article Three(G) do not apply to the office of the Independent Director, and any vacancy in that office will be filled only as the Governance Consent provides. Until a successor is seated, the Chief Restructuring Officer continues the ordinary-course administration of the corporation and

proposes a successor as the Governance Consent provides. (e) The Independent Director's compensation under Article Three(H) is the compensation, if any, that the shareholders fix by written consent and, during the Commitment Period, that the Bankruptcy Court approves. The Independent Director is entitled to indemnification on the same terms as the other Directors and to the extent Chapter 8 of the Texas Business Organizations Code provides. (f) The Independent Director may elect and remove officers under Article Four, and during the Commitment Period each officer, including the President under Article Five(A), acts only as the Independent Director directs. (g) Notwithstanding Article Ten, this Article Eleven and these Bylaws may not be amended, restated, or rescinded in any way during the Commitment Period.

4. Second Amended & Restated Bylaws. RESOLVED, that the Second Amended & Restated Bylaws of the Corporation, in the form attached to this Consent as Exhibit A (the "Restated Bylaws"), which amend and restate the Bylaws in their entirety and incorporate the Governance Amendment as Article Eleven, are approved, adopted, and agreed to by the Shareholder under Article Ten of the Bylaws and Section 21.101 of the TBOC; that each director, in his or her capacity as a director, approves and consents to the Restated Bylaws, including Article Eleven; that the Restated Bylaws take effect on the Effective Date; and that, from and after the Effective Date, each reference in the Governance Consents to the Bylaws or to the Governance Amendment includes the Restated Bylaws and their Article Eleven;

5. Sole and Exclusive Authority. RESOLVED, that the Independent Director has sole and exclusive authority to manage the Corporation and to act for it in the Chapter 11 Cases and in every other matter, subject only to the Bankruptcy Code and the orders of the Bankruptcy Court (the "Independent Director Authority"), and that the Independent Director Authority includes, without limitation:

(a) every Plan Matter (as defined in the Reply), including the right to propose, file, amend, modify, withdraw, solicit, and consummate a chapter 11 plan and disclosure statement for the Corporation and to decide whether to file an amended plan, including the terms that govern who will make decisions for the Corporation and its estate after confirmation;

(b) the Sale Process (as defined in the Reply), including the marketing and sale of the Corporation's real property, and any other sale, lease, or disposition of property of the Corporation outside the ordinary course of business;

(c) the defense and settlement, within or outside a chapter 11 plan, of the Tort Actions (as defined in the Reply) and every other claim arising from the July 4, 2025 flood, on behalf of the Corporation and its estate;

(d) every claim and cause of action of the Corporation or its estate against any insider or affiliate, including the Eastland Parties, and every objection, counterclaim, setoff, recoupment, and defense to any claim asserted by an insider or affiliate, including the promissory notes held by Eastland family trusts;

(e) every decision of the Corporation in connection with any criminal, governmental, legislative, licensing, or regulatory investigation, inquiry, subpoena, or proceeding, including every decision concerning privilege;

(f) the day-to-day administration of the chapter 11 case of the Corporation, including its schedules, statements of financial affairs, monthly operating reports, claims, executory contracts and unexpired leases, professionals, insiders' use or occupancy of its property, and the direction of the Chief Restructuring Officer; and

(g) the information on which each of these decisions is made and the timing of each decision;

6. Litigation, Including the Tort Actions. RESOLVED, that the Independent Director Authority over the Tort Actions includes the selection, retention, and direction of counsel for the Corporation, the assertion or waiver of its defenses, its positions on jurisdiction, venue, removal, remand, transfer, and the automatic stay, the exercise of its rights under any insurance policy, including the tender of claims, consent to settlement, and the allocation of shared policy limits and defense costs between the Corporation and any individual insured, mediation, and settlement, in each case subject to the terms of any applicable insurance policy and to approval by the Bankruptcy Court where approval is required; that no Eastland Director has any vote on, or authority over, any matter concerning the Tort Actions on behalf of the Corporation; and that nothing in this Consent alters any contractual right of any insurer;

7. Claims Against Insiders and the Timing of Their Evaluation. RESOLVED, that the Independent Director alone decides whether, when, and how to investigate, assert, prosecute, preserve, settle, release, or assign any claim of the Corporation or its estate against an insider or affiliate (the "Insider Claims"), may begin that evaluation at once, and may weigh the pendency of the Tort Actions, the availability of insurance, cost, and the requirements of any chapter 11 plan; that the Independent Director shall in all events complete an evaluation of the Insider Claims sufficient (a) to determine their treatment under any chapter 11 plan of the Corporation before votes on that plan are solicited and (b) to protect them before any limitations period or other deadline that applies to them expires, including the deadlines under section 546(a) of the Bankruptcy Code; that the Independent Director alone may negotiate and enter into any tolling agreement concerning the Insider Claims; and that no Insider Claim may be released, in a chapter 11 plan or otherwise, without the written approval of the Independent Director;

8. Privilege. RESOLVED, that the Independent Director exclusively controls the attorney-client privilege, the work-product protection, and every other privilege and protection held by the Corporation (the "Corporate Privileges"), including every decision to assert, preserve, or waive any of them in whole or in part, to produce or withhold documents, to seek or agree to nonwaiver and clawback orders under Federal Rule of Evidence 502, and to enter into, continue, modify, or terminate any common-interest or joint-defense agreement, including any existing agreement with an Eastland Party or an Eastland Party's counsel; and that no Eastland Director may assert or waive any of the Corporate Privileges;

9. Investigations. RESOLVED, that the Independent Director exclusively decides who represents the Corporation in any criminal, governmental, legislative, licensing, or regulatory investigation, inquiry, subpoena, or proceeding, including the pending investigation by the Texas

Rangers (each, an "Investigation"), how the Corporation responds to any legal process, the scope of its cooperation, the collection and production of its documents and data, the designation of any witness to testify for it, and any voluntary disclosure; and that no Eastland Director may speak for or bind the Corporation in any Investigation;

10. Information and Cooperation. RESOLVED, that the Independent Director is entitled to complete and prompt access to all books, records, data, devices, privileged materials, personnel, insurers, brokers, and professionals of the Corporation; that each signer, in the capacity in which it signs, will cause the books, records, and other information of the Corporation to be provided to the Independent Director when he requests them and will not direct or permit their destruction; and that the Independent Director alone decides what to do with that information;

11. Separate Estate. RESOLVED, that the Independent Director acts solely for the Corporation and its estate; that on any matter in which the interests of the Corporation and Camp Mystic or another Debtor diverge, including the allocation of liability, insurance, and value among the Debtors' estates and any intercompany claim or lease, the Independent Director advocates solely for the Corporation; and that the Independent Director and the Independent Manager may coordinate and share information, but neither needs the approval of the other to act;

12. Chief Restructuring Officer and Officers. RESOLVED, that Karen G. Nicolaou, as Chief Restructuring Officer (the "CRO"), and every officer of the Corporation, including the President, shall report to and take direction from the Independent Director on every matter within the Independent Director Authority; that the CRO's engagement remains as approved by order entered August 18, 2026 [Docket No. 173], and any expansion of that engagement requires a further application; that the Independent Director may elect and remove officers of the Corporation; that the President's authority under Article Five(A) of the Bylaws is exercised only as the Independent Director directs; and that the designation of Edward S. Eastland as authorized signatory in the June 23, 2026 resolutions of the Corporation is limited to acts that the Independent Director directs;

13. Shareholder Approval. RESOLVED, that, to the extent the TBOC, the Corporation's certificate of formation, or the Bylaws require the approval of the Shareholder for an action within the Independent Director Authority, including a sale of all or substantially all of the Corporation's assets or the winding up or termination of the Corporation under a chapter 11 plan, the Shareholder gives that approval now, in advance and irrevocably for the Commitment Period, for any action that the Independent Director approves and, where its authorization is required, the Bankruptcy Court authorizes, and no further act of the Shareholder is required;

14. Compensation of the Independent Director. RESOLVED, that the Shareholder determines that the Honorable Craig A. Gargotta (Ret.), as Independent Director, serves without compensation; and that this determination is the compensation fixed by the shareholders for purposes of Article Three(H) and Article Eleven(e) of the Restated Bylaws;

15. Expenses, Indemnification, and Insurance. RESOLVED, that, subject to approval by the Bankruptcy Court after notice and an opportunity for parties in interest to be heard, the Corporation is authorized to reimburse the Independent Director's reasonable out-of-pocket expenses actually incurred in the performance of his duties, including mileage, lodging, and meals,

to indemnify him on the same terms as the other directors and to the extent Chapter 8 of the TBOC provides, and to purchase and maintain Side A independent director liability insurance, a form of directors and officers liability insurance, covering him on terms and at a cost disclosed to, and approved by, the Bankruptcy Court;

16. Agreements of Each Signer. RESOLVED, that each signer, in the capacity in which it signs, agrees that during the Commitment Period (as defined in Article Eleven of the Restated Bylaws) that signer (a) will not vote on, direct, or attempt to direct any matter within the Independent Director Authority, and, if the TBOC, the Corporation's certificate of formation, or the Bylaws is held to require the vote or consent of any person other than the Independent Director on such a matter, consents in advance to the determination of the Independent Director and will sign any instrument needed to carry it out; and (b) will not direct, and will cause the Corporation's personnel and officers not to act on, any instruction contrary to a determination of the Independent Director;

17. Specific Agreement and Consent to No Removal, No Limitation, and No Amendment. RESOLVED, that each signer, in the capacity in which it signs, specifically agrees to and consents to the following term stated by the Bankruptcy Court on the record on October 21, 2026, as it applies to the Corporation: no one will remove the Independent Director, revoke or limit his authority, or amend the governing documents of the Corporation in any way for the duration of these cases, being the Commitment Period as defined in Article Eleven of the Restated Bylaws; that each signer waives, for the Commitment Period, every right it may have under any governing document or applicable law to remove the Independent Director, to revoke or limit his authority, or to amend any governing document of the Corporation; and that this agreement and consent is irrevocable during the Commitment Period;

18. Binding Agreement of Each Holder of a Governance Right. RESOLVED, that, in furtherance of the foregoing agreement and consent, each signer, in the capacity in which it signs, agrees with each other signer and with the Corporation, for the benefit of the Corporation's estate, that during the Commitment Period:

(a) no person will remove or replace the Independent Director, or revoke, limit, or condition his authority, and no signer will take, support, or consent to any such action;

(b) no person will amend, restate, supplement, waive, or rescind the certificate of formation, the Restated Bylaws, or any other governing document of the Corporation in any way, including Article Eleven of the Restated Bylaws, other than the adoption of the Restated Bylaws under this Consent, and no signer will take, support, or consent to any such action;

(c) the Independent Director may be removed only by order of the Bankruptcy Court for Cause (as defined in Article Eleven of the Restated Bylaws), on motion of a party in interest;

(d) any vacancy in the office of the Independent Director will be filled only by a person whom the Corporation proposes after consulting with the Committee, who files a declaration disclosing all connections with the Debtors, the Eastland Parties,

creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the office of the United States Trustee, who consents in writing to serve on the terms of this Consent, and whom the Bankruptcy Court approves after notice; and each signer will take every action needed under the governing documents to seat that person;

(e) compensation of the Independent Director approved by the Bankruptcy Court, if any, will not be reduced or conditioned without further order of the Bankruptcy Court;

(f) no signer will sell, assign, pledge, or otherwise transfer any share of the Corporation or any other interest that carries a governance right in the Corporation unless the transferee first agrees in writing to be bound by this Consent, and any transferee takes subject to it; and

(g) each signer will sign any further instrument needed to carry out this Consent;

19. Enforcement. RESOLVED, that this Consent is the signers' own binding agreement, adopted under Texas law; that each signer, in the capacity in which it signs, consents to its enforcement by the Bankruptcy Court, on motion of the Independent Director or any party in interest; that any act taken in violation of this Consent is void; and that the Corporation does not rely on sections 105(a) or 363 of the Bankruptcy Code to hold the governance structure in place;

20. Proposed Order. RESOLVED, that each signer approves, and consents to the entry of, the proposed form of order to be filed with the Governance Consents (the "Proposed Order"), and authorizes the Debtors' counsel to file the Governance Consents, the Proposed Order, the Independent Director's written acceptance of election and consent to serve, a statement that the Independent Director will serve without compensation, and a binder or firm quote for Side A independent director liability insurance on or before October 28, 2026, and to present them at the hearing set for November 3, 2026;

21. No Admission; Reservation of Individual Rights. RESOLVED, that this Consent is not an admission by any signer of any fact or liability, or that any claim against any signer has merit; that each individual signer reserves all of his or her personal claims, defenses, and rights, including his or her own counsel and privileges, consistent with paragraph 8 of the Trustee Order and subject to the authority of the Independent Director to determine the positions of the Corporation on them; that each signer may be heard in the Bankruptcy Court on any matter; and that nothing in this Consent is a vote to accept or reject any chapter 11 plan or the allowance, waiver, or release of any claim against or interest in any Debtor;

22. Prior Consents. RESOLVED, that this Consent supersedes every prior consent or resolution of the Corporation, including the written consent effective October 7, 2026, to the extent inconsistent with this Consent;

23. Implementation. RESOLVED, that, without further action of the Board or the Shareholder, the Independent Director may (a) designate a new registered agent and registered office for the Corporation and file the statement of change with the Texas Secretary of State; (b) certify the identity and authority of the Independent Director and of each officer of the Corporation to any bank, title company, insurer, governmental authority, or other third party, which may rely on

that certification; (c) add or remove signatories on, and control access to, every bank account, deposit account, credit card, and online account of the Corporation, including its email, domain, website, and social media accounts; and (d) file any franchise tax report, public information report, or other report of the Corporation; and that each signer will deliver to the Independent Director every credential, device, and record of the Corporation that it holds;

24. General Authority. RESOLVED, that the Independent Director, and the CRO and each officer of the Corporation acting at his direction, are each authorized, in the name and on behalf of the Corporation, to execute and deliver all documents and take all other actions necessary or appropriate to carry out the purposes of these resolutions, subject to the orders of the Bankruptcy Court; and

25. Counterparts; Electronic Signatures. RESOLVED, that this Consent may be signed in counterparts, each of which is an original and all of which together are one instrument; that a signature delivered by electronic transmission or affixed through an electronic signature service is as effective as an original signature; and that this Consent shall be filed with the minutes of the proceedings of the Board and the Shareholder.

IN WITNESS WHEREOF, the undersigned have signed this Consent, each solely in the capacity stated, on the dates set forth below, and this Consent takes effect on the date of the last signature. By signing, each signer specifically agrees to and consents to the term that no one will remove the Independent Director, revoke or limit his authority, or amend the governing documents of the Corporation in any way during the Commitment Period.

**DIRECTORS:**

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
_______________________________
Willetta A. Eastland
Director
Date: 10/27/2026, 2026

Signed by:
DD90206457FD492...
_______________________________
Richard G. Eastland, Jr.
Director
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3FCC24AD96824CF...
_______________________________
George A. Eastland
Director
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69690A67F405...
_______________________________
Edward S. Eastland
Director
Date: 10/27/2026, 2026

**SOLE SHAREHOLDER:**

MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.

By: Mystic Camps Management, LLC, its General Partner

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager of Mystic Camps Management, LLC
Date: 10/27/2026, 2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager of Mystic Camps Management, LLC
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3ECC24AD98824CE...
George A. Eastland
Manager of Mystic Camps Management, LLC
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69690A67F405...
Edward S. Eastland
Manager of Mystic Camps Management, LLC
Date: 10/27/2026, 2026

**PRESIDENT:**

Signed by:
William Neely Bonner, III
8E81A0B7E061491...
_______________________________________
William Neely Bonner III
President
Date: 10/27/2026, 2026

# SECOND AMENDED & RESTATED BYLAWS OF NATURAL FOUNTAINS PROPERTIES, INC.

## Article One
## Offices

The principal office of the corporation is located at 2689 Highway 39, Hunt, Texas 78024; provided however, the Board of Directors has the power and authority to change the principal office and/or establish and maintain branch or subordinate offices at other locations.

## Article Two
## Shareholders

(A) Annual Meeting. An annual meeting of the shareholders may be held on a date selected by the President for the purpose of electing Directors and for the transaction of such other business as may come before the shareholders. If the election of Directors is not held during any annual meeting of the shareholders, or following any adjournment of such annual meeting, then any shareholder may call a special meeting of the shareholders for the purpose of the election of Directors.

(B) Special Meetings. Unless otherwise prescribed by statute, special meetings of the shareholders may be called by the President or the Board of Directors for any purpose(s) and shall be called by the President at the request of the holders of at least 60% of all outstanding shares of the corporation entitled to vote at the meeting.

(C) Place of Meeting. Any place within the State of Texas may be designated as the place of any meeting of the shareholders; provided however, all shareholders entitled to vote at a meeting may designate, in writing and signed by them, any other place, within the State of Texas or not, as the place of such meeting. If no place for any meeting of the shareholders is designated by the Board of Directors or shareholders as provided in this section, then the place of such meeting is the principal office of the corporation.

(D) Notice of Meeting. Written notice stating the place, day, and hour of a meeting of the shareholders and, in case of a special meeting, the purpose or purposes for which the meeting is called, must be delivered to each shareholder entitled to vote at the meeting not less than ten (10) nor more than ninety (90) days before the date of the meeting by or at the direction of the President, Secretary, or other officer or persons calling the meeting.

(E) Closing Transfer Books or Fixing Record Date. To determine the shareholders who are entitled to notice of and/or to vote at any meeting of the shareholders, or receive payment of any dividend, or to determine the shareholders for any other proper purpose, the Board of Directors may provide that the stock transfer book be closed for a stated period not to exceed thirty (30) days. If the stock transfer book is closed for the purpose of determining shareholders entitled to notice of and/or to vote at a meeting of the shareholders, then it must be closed for at least ten (10) days immediately preceding such meeting. In lieu of closing the stock transfer book, the Board of Directors may fix, in advance, the record date for a determination of shareholders which may not

less than ten (10) days nor more than thirty (30) days prior to the date on which the particular action requiring the determination is to be taken.

If the stock transfer book is not closed and no record date is fixed for the determination of shareholders entitled to notice of and/or to vote at a meeting of shareholders, or entitled to receive payment of a dividend, then the date that the notice of the meeting is delivered, or the date on which the resolution of the Board of Directors declaring the dividend is adopted, as the case may be, will be the record date for such determination of shareholders. When a determination of shareholders entitled to vote at any meeting of the shareholders has been made as provided in this paragraph, the determination will apply to any adjournment of such meeting except where the determination has been made through the closing of the stock transfer book and the stated period of closing has expired.

(F) Quorum. A majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, will constitute a quorum at a meeting of the shareholders. If less than a quorum is represented at a meeting, then a majority of the shares represented may adjourn the meeting from time to time without further notice. The shareholders who are present at a meeting at which a quorum was represented may continue to transact business unless and until the meeting is adjourned even if enough shareholders left the meeting that leaves less than a quorum represented.

(G) Proxies. At all meetings of the shareholders, a shareholder may vote by proxy executed in writing by the shareholder or his duly authorized agent. Each proxy must be delivered to the Secretary before or at the time of the meeting. No proxy will be valid after six (6) months from the date of its execution unless otherwise provided in the proxy.

(H) Voting of Shares. Subject to the provisions of any applicable law, each outstanding share entitled to vote will be entitled to one vote on each matter submitted to a vote.

## Article Three
## Board of Directors

(A) General Powers. Subject to Article Eleven, the business and affairs of the corporation will be managed by its Board of Directors.

(B) Number, Tenure, and Qualifications. The number of Directors of the corporation will not be less than one (1). Directors will be elected by a majority of the shareholders at each annual meeting of shareholders unless the shareholders waive any such election. Unless a successor is duly elected and qualified, the term of office of each Director will be until his or her death, disability, resignation, or removal. Directors need not be residents of the State of Texas nor shareholders of the corporation.

(C) Regular Meetings. A regular meeting of the Board of Directors will be held without notice other than these Bylaws immediately after and at the same place as each annual meeting of shareholders. The Board of Directors may provide, by resolution, the time and place for holding additional regular meetings of the Board of Directors without other notice than such resolution.

Each additional regular meeting will be held at the principal office of the corporation in the absence of any other location stated in the resolution.

(D) Special Meetings. Special meetings of the Board of Directors may be called by or at the request of the President or any Director and will be held at the principal office of the corporation. Notice of any special meeting must be given at least ten (10) days before the time fixed for the meeting, in writing delivered to each Director; provided however, any Director may waive the notice of any meeting, in writing, and the attendance of a Director at a special meeting will constitute a waiver of the notice of such meeting except if a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened. Neither the business to be transacted at nor the purpose of any special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.

(E) Quorum. A majority of the Directors then serving constitutes a quorum for the transaction of business at any meeting of the Board of Directors, but if less than a majority is present at a meeting, then a majority of the Directors present may adjourn the meeting from time to time without further notice.

(F) Board Decisions. The act of a majority of the Directors who are present at a meeting at which a quorum is present will be the act of the Board of Directors.

(G) Vacancies. Any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the shareholders if deemed necessary or advisable. If the shareholders increase the number of Directors, then the additional Directors will be elected at the next annual meeting of shareholders or at a special meeting of shareholders called for that purpose.

(H) Compensation. The shareholders may agree to pay expenses, if any, incurred by the Directors to attend any meeting of the Board of Directors and/or a fixed sum for attendance at each meeting of the Board of Directors. No such payment will preclude any Director from serving the corporation in any other capacity and receiving compensation for such service.

(I) Presumption of Assent. A Director who is present at a meeting of the Board of Directors at which action on any corporate matter is taken is presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or he or she delivers a written dissent to the action to the Secretary before or immediately after the adjournment of the meeting; provided however, no Director who voted in favor of any action may thereafter dissent to the action.

## Article Four
## Officers

(A) Number. The officers of the corporation will not be less than two — a President and a Secretary - each of whom will be elected by the Board of Directors. Other officers and assistant officers as deemed necessary or advisable may be elected or appointed by the Board of Directors. Any two or more offices other than President and Secretary may be held by the same person.

(B) Election and Term of Office; Vacancy. The officers of the corporation will be elected annually at the first meeting of the Board of Directors held after each annual meeting of the shareholders. If the election of officers is not held at such meeting, then the election will be held as soon afterward as is convenient. Unless a successor is duly elected and qualified, the term of office of each officer will be until his or her death, disability, resignation, or removal. Officers need not be residents of the State of Texas nor shareholders of the corporation. A vacancy in any office may be filled by the Board of Directors.

(C) Removal. Any officer elected or appointed by the Board of Directors may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation would be served by such removal, but such removal will be without prejudice to the contract rights, if any, of the person so removed.

(D) Powers and Duties. The powers and duties of the officers will be as provided from time to time by resolution or other directive of the Board of Directors. In the absence thereof, the respective officers will have the powers and discharge the duties customarily and usually held and performed by like officers of corporations similar in organization and business purposes to this corporation.

(E) Salaries. The salaries of the officers, if any, may be fixed from time to time by the Board of Directors and, if so, then no officer will be prevented from receiving a salary by reason of the fact that he or she is also a Director or employee of the corporation.

## Article Five
## Contracts, Loans, Checks, and Deposits

(A) Contracts. The President is authorized to make any contract or execute and deliver any instrument in the name of and on behalf of the corporation, provided that the Board of Directors may authorize any other officer or agent to make any contract or execute and deliver any instrument in the name of and on behalf of the corporation; if another officer is so authorized, such authority may be general or confined to a specific instance(s).

(B) Loans. No loans may be contracted on behalf of the corporation and no evidences of indebtedness may be issued in its name unless authorized by a resolution of the Board of Directors. Such authority may be general or confined to a specific instance(s).

(C) Checks, Drafts, or Orders. All checks, drafts, or other orders for the payment of money, notes, or other evidences of indebtedness that are issued in the name of the corporation must be signed (i) by an officer or agent of the corporation and (ii) in such manner as determined by resolution of the Board of Directors from time to time.

(D) Deposits. All funds of the corporation not otherwise employed must be deposited from time to time to the credit of the corporation in such bank(s) or other depositaries as the Board of Directors may select.

## Article Six
## Certificates for Shares; Transfers

(A) Certificates for Shares. Certificates representing shares of the corporation must be in such form as determined by the Board of Directors and signed by the President and by the Secretary. All certificates for shares shall be consecutively numbered or otherwise identified. The corporation may maintain a stock transfer book and, if so, register the issuances and transfers of shares therein (i.e., the name and address of the shareholder with the number of shares and date of issue). All certificates surrendered to the corporation for transfer must be canceled and no new certificate may be issued until the former certificate for a like number of shares has been surrendered and cancelled, except that a new certificate may be issued on such terms and indemnity to the corporation as the Board of Directors may prescribe if a certificate is lost, destroyed, or mutilated.

(B) Transfer of Shares. Transfers of shares of the corporation must be made in the manner specified by these Bylaws, any agreement among the shareholders, and all applicable laws. The Board of Directors is authorized to determine and recognize the person(s) who is the owner(s) of all shares for all proper corporate purposes, including voting at a regular or special meeting of shareholders and the issuance and payment of dividends.

## Article Seven
## Fiscal Year

The fiscal year of the corporation will end at midnight on December 31st of each year.

## Article Eight
## Dividends

The Board of Directors may, at any time and from time to time, declare a dividend on its outstanding shares, to be paid by the corporation in the manner and on the terms and conditions provided by law.

## Article Nine
## Delivery and Waiver of Notice; Action Without Meeting

(A) Whenever any notice is required to be given to any shareholder or Director of the corporation under the provisions of these Bylaws or by law, it must be sent by receipted courier or electronic mail and will be deemed delivered when delivered, if by receipted courier, or when sent if by electronic mail to an accurate address. A waiver of any notice in writing, signed by the shareholder or Director, whether before or after the time stated in the same, will be the equivalent of delivery of such notice.

(B) Any action that may be taken at a meeting of the shareholders or the Board of Directors pursuant to these Bylaws or by law may be taken without a meeting by unanimous written consent.

**Article Ten**
**Amendments**

Subject to Article Eleven, these Bylaws may be altered, amended, or repealed and/or new Bylaws may be adopted by the shareholders at any time.

**Article Eleven**
**Independent Director**

In this Article Eleven, "Governance Consent" means the Unanimous Written Consent of the Board of Directors and the Sole Shareholder of the corporation that approved this Article Eleven, "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, "Independent Director" means the Director elected under the Governance Consent and designated the Independent Director and any successor seated as the Governance Consent provides, and "Cause" means the Independent Director's gross negligence or fraud in the performance of his duties as a Director, as found by the Bankruptcy Court after notice and a hearing. This Article Eleven is also a shareholders' agreement under Section 21.101 of the Texas Business Organizations Code, approved by all of the shareholders of the corporation.

(a) The Independent Director is eligible to serve as a Director, and Article Three(B) applies to his term only as this Article Eleven provides.

(b) From the effective date of this Article Eleven for the duration of these cases, meaning the chapter 11 case of the corporation and the cases jointly administered with it under Case No. 26-90621 (CML) in the Bankruptcy Court, and ending when a chapter 11 plan of the corporation confirmed by the Bankruptcy Court becomes effective (the "Commitment Period"), the discretion and powers of the Board of Directors are restricted so that all authority of the Board of Directors to manage the business and affairs of the corporation is exercised solely and exclusively by the Independent Director. On any matter that requires action of the Board of Directors as a whole, the Independent Director holds all of the voting power of the Board of Directors. No other Director has any vote, veto, or consent right on any matter, and Article Three(E) and (F) do not apply. The Independent Director may act on any matter by a written determination that he signs, without a meeting of the Board of Directors, without notice to any other Director, and without the vote, consent, or signature of any other Director, and Article Three(C), (D), and (I) and Article Nine(B) do not apply to his action. To the fullest extent the law permits, the approval of the shareholders that the Texas Business Organizations Code or these Bylaws would otherwise require for an action of the Independent Director is given by the Governance Consent.

(c) The Independent Director owes the corporation, its estate, and its creditors the fiduciary duties of care and loyalty.

(d) The Independent Director may be removed only by order of the Bankruptcy Court for Cause, on motion of a party in interest. The shareholders' right to remove a Director and Article Three(G) do not apply to the office of the Independent Director, and any vacancy in that office will be filled only as the Governance Consent provides. Until a successor is

seated, the Chief Restructuring Officer continues the ordinary-course administration of the corporation and proposes a successor as the Governance Consent provides.

(e) The Independent Director's compensation under Article Three(H) is the compensation, if any, that the shareholders fix by written consent and, during the Commitment Period, that the Bankruptcy Court approves. The Independent Director is entitled to indemnification on the same terms as the other Directors and to the extent Chapter 8 of the Texas Business Organizations Code provides.

(f) The Independent Director may elect and remove officers under Article Four, and during the Commitment Period each officer, including the President under Article Five(A), acts only as the Independent Director directs.

(g) Notwithstanding Article Ten, this Article Eleven and these Bylaws may not be amended, restated, or rescinded in any way during the Commitment Period.

Adopted as of the date on which the Governance Consent (as defined in Article Eleven) takes effect, amending and restating in their entirety the Amended & Restated Bylaws adopted as of February 1, 2023.

**SOLE SHAREHOLDER:**

**MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.**

**By: Mystic Camps Management, LLC, its General Partner**

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager
Date: 10/27/2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager
Date: 10/26/2026

Signed by:
Edward Eastland
3ED69690A67F405...
Edward S. Eastland
Manager
Date: 10/27/2026

**APPROVED AND CONSENTED TO BY THE DIRECTORS:**

Each of the undersigned Directors, in his or her capacity as a Director, approves and consents to these Bylaws, including Article Eleven.

Signed by:
Willetta Eastland
ACE9AA42CC9B475...

Willetta A. Eastland
Director
Date: 10/27/2026

Signed by:
DD90206457FD492...

Richard G. Eastland, Jr.
Director
Date: 10/27/2026

Signed by:
George A. Eastland
3FCC24AD98824CF...

George A. Eastland
Director
Date: 10/26/2026

Signed by:
Edward Eastland
3ED69690A67F405...

Edward S. Eastland
Director
Date: 10/27/2026

# EXHIBIT A-3

Written Consent of the General Partner of Mystic Camps Family Partnership, Ltd.
and
Fourth Amendment of the Limited Partnership Agreement
of Mystic Camps Family Partnership, Ltd.

**WRITTEN CONSENT OF THE GENERAL PARTNER
OF MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.**

Mystic Camps Management, LLC, a Texas limited liability company and the sole general partner (the "General Partner") of Mystic Camps Family Partnership, Ltd., a Texas limited partnership (the "Partnership"), acting under Sections 8.1(a) and 13.1 of the Second Amended & Restated Limited Partnership Agreement of the Partnership dated as of October 31, 2023, as amended by the Third Amendment dated as of November 1, 2023 and by the General Partner's resolution of June 23, 2026 (as amended, the "Partnership Agreement"), and through all of its managers under Sections 6.201 and 101.358 of the Texas Business Organizations Code (the "TBOC"), adopts the following recitals and resolutions. This Written Consent of the General Partner of Mystic Camps Family Partnership, Ltd. ("Consent") is the act of the Partnership through its General Partner. Each individual who signs this Consent signs it solely in the capacity stated below that individual's signature and not individually. This Consent takes effect when it has been signed by all of the undersigned (the "Effective Date"). Capitalized terms used and not defined in this Consent have the meanings given in the Partnership Agreement.

**RECITALS**

WHEREAS, on June 24, 2026, Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("NFP"), the Partnership, and the General Partner (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), which are jointly administered under Case No. 26-90621 (CML) (the "Chapter 11 Cases");

WHEREAS, the Partnership is the sole member of Camp Mystic and the sole shareholder of NFP, and the General Partner has full control over the Partnership and its activities and assets under Section 8.1(a) of the Partnership Agreement, which also provides that the limited partners have no right of control or management power over the business and affairs of the Partnership;

WHEREAS, the Debtors moved for authority to appoint independent fiduciaries for Camp Mystic and NFP [Docket No. 205] and modified that request in their omnibus reply [Docket No. 267] (the "Reply" and, as so modified, the "Modified Relief"), and the Official Committee of Unsecured Creditors (the "Committee") and the United States Trustee moved to appoint a chapter 11 trustee [Docket Nos. 227 and 304] (the "Trustee Motions");

WHEREAS, on October 21, 2026, the Bankruptcy Court stated its rulings on the record (the "October 21 Ruling"), denied the Modified Relief without prejudice, and entered its Order on Motions to Appoint a Chapter 11 Trustee [Docket No. 390] (the "Trustee Order"). The Trustee Order denies the Trustee Motions without prejudice as to the Partnership and the General Partner, holds them in abeyance as to Camp Mystic and NFP, and permits the Debtors to file, by October 28, 2026, resolutions of each holder of a governance right in each Debtor implementing the requirements stated on the record and a proposed form of order to which each such holder consents;

WHEREAS, the Bankruptcy Court found no cause to appoint a trustee for the Partnership or the General Partner and stated that their governance would otherwise remain as is, subject to resolutions of each holder of a governance right providing that no one will remove the independent fiduciaries, revoke or limit their authority, or amend the governing documents in any way for the duration of these cases, and stated that the Partnership's control, through the General Partner, over who governs Camp Mystic and NFP must be accounted for in any remedy short of a trustee;

WHEREAS, the Bankruptcy Court did not order any person to adopt this Consent and stated that it was not imposing a governance structure. The Bankruptcy Court stated that independence resting on the owners' own binding agreement, which the Bankruptcy Court enforces, is the remedy for the conflicts. This Consent is that agreement. Each signer adopts it voluntarily under the TBOC and the Partnership Agreement, in the capacity in which it signs, as its own binding agreement, with the understanding that the Bankruptcy Court did not order it and in the exercise of its own business judgment;

WHEREAS, this Consent is one of four consents of even date, one for each Debtor (together, the "Governance Consents"); this Consent governs only the Partnership, and the Governance Consent of each other Debtor governs that Debtor; the Governance Consent of Camp Mystic appoints Mark Andrews as its independent manager (the "Independent Manager"); and the Governance Consent of NFP elects the Honorable Craig A. Gargotta (Ret.) as its independent director (the "Independent Director" and, with the Independent Manager, the "Independent Fiduciaries");

WHEREAS, the General Partner has consulted with the Debtors' counsel, each individual signer has had the opportunity to consult with their individual counsel, and the General Partner has determined that the actions in this Consent are in the best interests of the Partnership, its estate, its creditors, and other parties in interest;

NOW, THEREFORE, the General Partner adopts the following resolutions:

**RESOLUTIONS**

1. Owner Consents. RESOLVED, that the General Partner is authorized and directed, in the name and on behalf of the Partnership, as the sole member of Camp Mystic and the sole shareholder of NFP, to execute and deliver the Governance Consents of Camp Mystic and NFP, and that those Governance Consents, including the appointment of the Independent Manager, the election of the Independent Director, the Second Amended & Restated Company Agreement of Camp Mystic, and the Second Amended & Restated Bylaws of NFP approved in them, are approved in all respects;

2. Fourth Amendment of the Partnership Agreement. RESOLVED, that the Fourth Amendment of the Limited Partnership Agreement of the Partnership, in the form attached to this Consent as Exhibit A (the "Fourth Amendment"), which ratifies the June 23, 2026 amendment of Section 10.1, conforms Section 12.2, and adds Article XVI (Chapter 11 Governance), is adopted by the General Partner under Section 13.1(d)(ii) of the Partnership Agreement, as a change necessary to satisfy the requirements stated in the October 21 Ruling and the Trustee Order, without the consent of any Limited Partner; that the Fourth Amendment takes effect on the Effective Date; and that, from and after the Effective Date, each reference in this Consent to the Partnership Agreement includes the Fourth Amendment;

3. Continuation of the Partnership. RESOLVED, that the General Partner ratifies the June 23, 2026 amendment of Section 10.1 of the Partnership Agreement and confirms that the chapter 11 cases of the General Partner and the Partnership do not dissolve the Partnership or require it to wind up, and that the General Partner continues as the general partner of the Partnership;

4. Exercise of Ownership Rights. RESOLVED, that the Partnership will not exercise any right as the owner of Camp Mystic or NFP in any manner inconsistent with the authority of the Independent Fiduciaries; that the Partnership gives now, in advance and irrevocably for the Commitment Period (as defined in Article XVI of the Partnership Agreement), any consent or approval of an owner that an action approved by an Independent Fiduciary, and authorized by the Bankruptcy Court where its authorization is required, requires; and that giving any such consent or approval is an exercise of the Partnership's rights as owner and not a use of Partnership assets for purposes of Article II of the Partnership Agreement;

5. Governance of the Partnership. RESOLVED, that, except as this Consent otherwise provides, the General Partner continues to manage the Partnership under the Partnership Agreement, and nothing in this Consent changes the authority of Karen G. Nicolaou as Chief Restructuring Officer under the order entered August 18, 2026 [Docket No. 173];

6. Agreements of Each Signer. RESOLVED, that each signer, in the capacity in which it signs, agrees that during the Commitment Period that signer (a) will not vote on, direct, or attempt to direct any matter within the authority of an Independent Fiduciary, and, if the TBOC or the Partnership Agreement is held to require the vote or consent of any Partner on such a matter, consents in advance to the determination of the applicable Independent Fiduciary and will sign any instrument needed to carry it out; (b) will cause the books, records, and other information of the Partnership to be provided to the Independent Fiduciaries when they request them and will not direct or permit their destruction; and (c) will not direct, and will cause the Partnership's personnel and agents not to act on, any instruction contrary to a determination of an Independent Fiduciary;

7. Specific Agreement and Consent to No Removal, No Limitation, and No Amendment. RESOLVED, that each signer, in the capacity in which it signs, specifically agrees to and consents to the following term stated by the Bankruptcy Court on the record on October 21, 2026, as it applies to the Partnership: no one will remove the Independent Fiduciaries, revoke or limit their authority, or amend the governing documents of the Partnership, or exercise the Partnership's rights as owner to amend the governing documents of Camp Mystic or NFP, in any way for the duration of these cases, being the Commitment Period; that each signer waives, for the Commitment Period, every right it may have under any governing document or applicable law to do any of those things; and that this agreement and consent is irrevocable during the Commitment Period;

8. Binding Agreement of Each Holder of a Governance Right. RESOLVED, that, in furtherance of the foregoing agreement and consent, each signer, in the capacity in which it signs, agrees with each other signer and with the Partnership, for the benefit of the Partnership's estate, that during the Commitment Period:

(a) no person will remove or replace either Independent Fiduciary, or revoke, limit, or condition their authority, and no signer will take, support, or consent to any such action;

(b) no person will amend, restate, supplement, waive, or rescind the certificate of formation, the Partnership Agreement, or any other governing document of the Partnership in any way, including Article XVI, other than the adoption of the Fourth

Amendment under this Consent, and no signer will take, support, or consent to any such action;

(c) the General Partner will not withdraw as general partner or elect to dissolve the Partnership, and any successor general partner takes subject to Article XVI of the Partnership Agreement and this Consent, except as provided in a chapter 11 plan confirmed by the Bankruptcy Court or by order of the Bankruptcy Court;

(d) an Independent Fiduciary may be removed only by order of the Bankruptcy Court for Cause (as defined in the governing documents of Camp Mystic or NFP, as applicable), on motion of a party in interest, and any vacancy will be filled only as the applicable Governance Consent provides, and each signer will take every action needed under the governing documents to seat the successor;

(e) no signer will sell, assign, pledge, or otherwise transfer any part of its Percentage Interest unless the transferee first agrees in writing to be bound by this Consent, and any transferee takes subject to it, and the General Partner will not consent under Section 11.1(b) of the Partnership Agreement to any transfer of a Percentage Interest unless the transferee first agrees in writing to be bound by Article XVI; and

(f) each signer will sign any further instrument needed to carry out this Consent;

9. Enforcement. RESOLVED, that this Consent is the signers' own binding agreement, adopted under Texas law; that each signer, in the capacity in which it signs, consents to its enforcement by the Bankruptcy Court, on motion of either Independent Fiduciary or any party in interest; that any act taken in violation of this Consent is void; and that the Partnership does not rely on sections 105(a) or 363 of the Bankruptcy Code to hold the governance structure in place;

10. Proposed Order. RESOLVED, that each signer approves, and consents to the entry of, the proposed form of order to be filed with the Governance Consents (the "Proposed Order"), and authorizes the Debtors' counsel to file this Consent and the Fourth Amendment with the other Governance Consents and the Proposed Order on or before October 28, 2026, and to present them at the hearing set for November 3, 2026;

11. No Admission; Reservation of Individual Rights. RESOLVED, that this Consent is not an admission by any signer of any fact or liability, or that any claim against any signer has merit; that each individual signer reserves all of his or her personal claims, defenses, and rights, including his or her own counsel and privileges, consistent with paragraph 8 of the Trustee Order and subject to the authority of the Independent Fiduciaries to determine the positions of Camp Mystic and NFP on them; that each signer may be heard in the Bankruptcy Court on any matter; and that nothing in this Consent is a vote to accept or reject any chapter 11 plan or the allowance, waiver, or release of any claim against or interest in any Debtor;

12. Prior Consents. RESOLVED, that this Consent supersedes every prior consent or resolution of the Partnership, including the written consent of the General Partner effective October 7, 2026, to the extent inconsistent with this Consent;

13. General Authority. RESOLVED, that the General Partner is authorized, in the name and on behalf of the Partnership, to execute and deliver all documents and take all other actions

necessary or appropriate to carry out the purposes of these resolutions, subject to the orders of the Bankruptcy Court; and

14. Counterparts; Electronic Signatures. RESOLVED, that this Consent may be signed in counterparts, each of which is an original and all of which together are one instrument; that a signature delivered by electronic transmission or affixed through an electronic signature service is as effective as an original signature; and that this Consent shall be filed with the records of the Partnership.

IN WITNESS WHEREOF, the undersigned have signed this Consent, each solely in the capacity stated, on the dates set forth below, and this Consent takes effect on the date of the last signature. By signing, each signer specifically agrees to and consents to the term that no one will remove the Independent Fiduciaries, revoke or limit their authority, or amend the governing documents of the Partnership in any way during the Commitment Period.

**GENERAL PARTNER:**

MYSTIC CAMPS MANAGEMENT, LLC

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager
Date: 10/27/2026, 2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69090A67F405...
Edward S. Eastland
Manager
Date: 10/27/2026, 2026

# FOURTH AMENDMENT OF THE LIMITED PARTNERSHIP AGREEMENT OF MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.

This FOURTH AMENDMENT (this "Amendment") is made effective as of the date on which the Governance Consent (defined below) takes effect (the "Effective Date"), by MYSTIC CAMPS MANAGEMENT, LLC, a Texas limited liability company and the general partner (the "General Partner") of MYSTIC CAMPS FAMILY PARTNERSHIP, LTD. (the "Partnership"), to amend the Second Amended & Restated Limited Partnership Agreement of the Partnership dated as of October 31, 2023, as amended by the Third Amendment dated as of November 1, 2023 and by the General Partner's resolution of June 23, 2026 (as amended, the "Agreement"). The General Partner adopts this Amendment under Section 13.1(d)(ii) of the Agreement, without the consent of any Limited Partner, to satisfy the requirements and conditions stated by the United States Bankruptcy Court for the Southern District of Texas in its ruling of October 21, 2026. Capitalized terms used and not defined in this Amendment have the meanings given in the Agreement.

## AMENDMENTS

1. Ratification of the Amendment of Section 10.1. The General Partner ratifies and approves the General Partner's June 23, 2026 amendment of Section 10.1 of the Agreement, which removed the bankruptcy of the General Partner as an event causing the dissolution and termination of the Partnership.

2. Amendment of Section 12.2. Section 12.2 of the Agreement is amended by deleting the words "or bankruptcy" from the phrase "the withdrawal, dissolution, or bankruptcy of the General Partner," so that the phrase reads "the withdrawal or dissolution of the General Partner," conforming Section 12.2 to Section 10.1.

3. No Dissolution by Reason of the Chapter 11 Cases. Neither the chapter 11 case of the General Partner nor the chapter 11 case of the Partnership dissolves the Partnership or requires it to wind up its affairs, no election to continue the Partnership is required by reason of either case, and the General Partner continues as the general partner of the Partnership.

4. New Article XVI. The Agreement is amended by adding the following Article XVI, which controls over any contrary provision of the Agreement:

## ARTICLE XVI CHAPTER 11 GOVERNANCE

> Section 16.1 Definitions. In this Article XVI, "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas; "Governance Consent" means the Written Consent of the General Partner of Mystic Camps Family Partnership, Ltd. that approved this Article XVI; and "Commitment Period" means the period from the effective date of this Article XVI for the duration of these cases, meaning the chapter 11 case of the Partnership and the cases jointly administered with it under Case No. 26-90621 (CML) in the Bankruptcy Court, and ending when a chapter 11 plan of the Partnership confirmed by the Bankruptcy Court becomes effective.

Section 16.2 Authority of the General Partner. Under Section 8.1(a), the General Partner has full control over the Partnership and its activities and assets, and the Limited Partners have no right of control or management power. Consistent with Section 10.301 of the Texas Business Organizations Code and sections 1123(a)(5) and 1142(a) of title 11 of the United States Code, the General Partner may take any action to carry out a chapter 11 plan of the Partnership confirmed by the Bankruptcy Court, including any sale or other disposition of Partnership property, any payment of creditors of the Partnership, and the winding up and termination of the Partnership, without further action by the Partners.

Section 16.3 No Withdrawal of the General Partner; No Elective Dissolution. During the Commitment Period, the General Partner will not withdraw or resign as general partner and will not elect to dissolve the Partnership under Section 10.2(a), except as provided in a chapter 11 plan confirmed by the Bankruptcy Court or by order of the Bankruptcy Court.

Section 16.4 Independent Fiduciaries. During the Commitment Period, the Partnership will not exercise any right as owner of Camp Mystic, LLC or Natural Fountains Properties, Inc. to remove or replace their independent fiduciaries, to revoke or limit their authority, or to amend their governing documents.

Section 16.5 Transfers. During the Commitment Period, the General Partner will not give its consent under Section 11.1(b) to any sale, assignment, pledge, or other transfer of any part of a Percentage Interest unless the transferee first agrees in writing to be bound by this Article XVI and the Governance Consent.

Section 16.6 No Amendment. During the Commitment Period, the General Partner will not adopt any amendment under Section 13.1 or propose any amendment under Section 13.2, and, notwithstanding Sections 13.1, 13.2, and 13.3, this Article XVI and the Agreement may not be amended, restated, or rescinded in any way.

Section 16.7 Successor General Partner. Any person that becomes a general partner of the Partnership during the Commitment Period, by removal of the General Partner under Article IX or otherwise, takes subject to this Article XVI and the Governance Consent.

5. No Other Changes. Except as amended by this Amendment, the Agreement remains in full force and effect. This Amendment may be signed in counterparts and by electronic signature.

As of the Effective Date.

**GENERAL PARTNER:**

MYSTIC CAMPS MANAGEMENT, LLC

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
____________________________________
Willetta A. Eastland
Manager
Date: 10/27/2026, 2026

Signed by:
DD90206457ED492...
____________________________________
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
____________________________________
George A. Eastland
Manager
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69690A67F405...
____________________________________
Edward S. Eastland
Manager
Date: 10/27/2026, 2026

# EXHIBIT A-4

Unanimous Written Consent of the Managers and the Members
of Mystic Camps Management, LLC

# UNANIMOUS WRITTEN CONSENT OF THE MANAGERS AND THE MEMBERS OF MYSTIC CAMPS MANAGEMENT, LLC

Pursuant to Sections 6.201 and 101.358 of the Texas Business Organizations Code (the "TBOC") and Sections 9 and 15 of the Second Amended & Restated Company Agreement dated as of October 31, 2023 (the "Company Agreement") of Mystic Camps Management, LLC, a Texas limited liability company (the "Company"), the undersigned, being (a) all of the managers of the Company (collectively, the "Managers") and (b) all of the members of the Company (collectively, the "Members"), waive notice of and the holding of a meeting and consent to the adoption of the following recitals and resolutions. This Unanimous Written Consent of the Managers and the Members of Mystic Camps Management, LLC ("Consent") has the same effect as a unanimous vote at a meeting duly called and held. Each individual who signs this Consent signs it solely in the capacity stated below that individual's signature and not individually. This Consent takes effect when it has been signed by all of the undersigned (the "Effective Date").

## RECITALS

WHEREAS, on June 24, 2026, Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("NFP"), Mystic Camps Family Partnership, Ltd. (the "Family Partnership"), and the Company (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), which are jointly administered under Case No. 26-90621 (CML) (the "Chapter 11 Cases");

WHEREAS, the Family Partnership is the sole member of Camp Mystic and the sole shareholder of NFP, and the Company is the sole general partner of the Family Partnership, with exclusive control of its business and affairs under Section 8.1(a) of the Second Amended & Restated Limited Partnership Agreement of the Family Partnership, as amended (the "Partnership Agreement");

WHEREAS, Willetta A. Eastland is the sole Member of the Company; the membership interest that Richard G. Eastland held at his death passed to his successors as assignees under Section 101.1115 of the TBOC, and no successor has been admitted as a Member;

WHEREAS, the Debtors moved for authority to appoint independent fiduciaries for Camp Mystic and NFP [Docket No. 205] and modified that request in their omnibus reply [Docket No. 267] (the "Reply" and, as so modified, the "Modified Relief"), and the Official Committee of Unsecured Creditors (the "Committee") and the United States Trustee moved to appoint a chapter 11 trustee [Docket Nos. 227 and 304] (the "Trustee Motions");

WHEREAS, on October 21, 2026, the Bankruptcy Court stated its rulings on the record (the "October 21 Ruling"), denied the Modified Relief without prejudice, and entered its Order on Motions to Appoint a Chapter 11 Trustee [Docket No. 390] (the "Trustee Order"). The Trustee Order denies the Trustee Motions without prejudice as to the Family Partnership and the Company, holds them in abeyance as to Camp Mystic and NFP, and permits the Debtors to file, by October 28, 2026, resolutions of each holder of a governance right in each Debtor implementing the requirements stated on the record and a proposed form of order to which each such holder consents;

WHEREAS, the Bankruptcy Court found that the conflicts of interest at Camp Mystic and NFP are material and can be remedied short of a trustee only if the persons who make the conflicted decisions are independent of the Eastland Parties (as defined in the October 21 Ruling) in every

respect that matters, including what is decided, what information is used, and when the decisions are made;

WHEREAS, the Bankruptcy Court found no cause to appoint a trustee for the Family Partnership or the Company and stated that their governance would otherwise remain as is, subject to resolutions of each holder of a governance right providing that no one will remove the independent fiduciaries, revoke or limit their authority, or amend the governing documents in any way for the duration of these cases, and noted that the Family Partnership, through the Company, controls who governs Camp Mystic and NFP;

WHEREAS, the Bankruptcy Court did not order any person to adopt this Consent and stated that it was not imposing a governance structure. The Bankruptcy Court stated that independence resting on the owners' own binding agreement, which the Bankruptcy Court enforces, is the remedy for the conflicts. This Consent is that agreement. Each signer adopts it voluntarily under the TBOC and the Company Agreement, in the capacity in which it signs, as its own binding agreement, with the understanding that the Bankruptcy Court did not order it and in the exercise of its own business judgment;

WHEREAS, this Consent is one of four consents of even date, one for each Debtor (together, the "Governance Consents"); this Consent governs only the Company, and the Governance Consent of each other Debtor governs that Debtor; the Governance Consent of Camp Mystic appoints Mark Andrews as its independent manager (the "Independent Manager"); and the Governance Consent of NFP elects the Honorable Craig A. Gargotta (Ret.) as its independent director (the "Independent Director" and, with the Independent Manager, the "Independent Fiduciaries");

WHEREAS, Willetta A. Eastland, Richard G. Eastland, Jr., George A. Eastland, and Edward S. Eastland (the "Eastland Managers") are the Managers, and the Managers and the Members have consulted with the Debtors' counsel, each individual signer has had the opportunity to consult with their individual counsel, and the Managers and the Members have determined that the actions in this Consent are in the best interests of the Company, its estate, its creditors, and other parties in interest;

NOW, THEREFORE, the Managers and the Members adopt the following resolutions:

**RESOLUTIONS**

1. <u>Governance of the Company.</u> RESOLVED, that the governance of the Company, for itself and as general partner of the Family Partnership, remains as provided in the Company Agreement and the Partnership Agreement, subject only to this Consent, and the Company Agreement is not amended;

2. <u>Commitment Period.</u> RESOLVED, that in this Consent "Commitment Period" means the period from the Effective Date for the duration of these cases, meaning the chapter 11 case of the Company and the cases jointly administered with it under Case No. 26-90621 (CML) in the Bankruptcy Court, and ending when a chapter 11 plan of the Company confirmed by the Bankruptcy Court becomes effective;

3. <u>General Partner Actions.</u> RESOLVED, that the Company is authorized and directed, for itself and as general partner of the Family Partnership, to execute and deliver the Governance Consent of the Family Partnership and the Fourth Amendment of the Partnership

Agreement and, through the Family Partnership, the Governance Consents of Camp Mystic and NFP, and that those Governance Consents and the governing documents approved in them are approved in all respects;

4. Exercise of Rights as General Partner. RESOLVED, that the Company will not exercise any right as general partner of the Family Partnership in any manner inconsistent with the authority of the Independent Fiduciaries, and will cause the Family Partnership to give any consent or approval of an owner that an action approved by an Independent Fiduciary and authorized by the Bankruptcy Court requires;

5. Specific Agreement and Consent to No Removal, No Limitation, and No Amendment. RESOLVED, that each signer, in the capacity in which it signs, specifically agrees to and consents to the following term stated by the Bankruptcy Court on the record on October 21, 2026, as it applies to the Company: no one will remove the Independent Fiduciaries, revoke or limit their authority, or amend the governing documents of the Company, or exercise the Company's rights as general partner to amend the governing documents of the Family Partnership, Camp Mystic, or NFP, in any way for the duration of these cases, being the Commitment Period; that each signer waives, for the Commitment Period, every right it may have under any governing document or applicable law to do any of those things, including the rights of the Members under Section 15 of the Company Agreement; and that this agreement and consent is irrevocable during the Commitment Period;

6. Binding Agreement of Each Holder of a Governance Right. RESOLVED, that, in furtherance of the foregoing agreement and consent, each signer, in the capacity in which it signs, agrees with each other signer and with the Company, for the benefit of the Company's estate, that during the Commitment Period:

(a) no person will remove or replace either Independent Fiduciary, or revoke, limit, or condition their authority, and no signer will take, support, or consent to any such action;

(b) no person will amend, restate, supplement, waive, or rescind the certificate of formation, the Company Agreement, or any other governing document of the Company in any way, and no signer will take, support, or consent to any such action;

(c) an Independent Fiduciary may be removed only as the governing documents of Camp Mystic or NFP, as applicable, provide;

(d) any vacancy in the office of an Independent Fiduciary will be filled only as the Governance Consent of Camp Mystic or NFP, as applicable, provides;

(e) no signer will sell, assign, pledge, or otherwise transfer any interest that carries a governance right in the Company unless the transferee first agrees in writing to be bound by this Consent, and any transferee takes subject to it, and no person will be admitted as a Member of the Company unless that person first agrees in writing to be bound by this Consent; and

(f) each signer will sign any further instrument needed to carry out this Consent;

7. Enforcement. RESOLVED, that this Consent is the signers' own binding agreement, adopted under Texas law; that each signer, in the capacity in which it signs, consents to its enforcement by the Bankruptcy Court, on motion of either Independent Fiduciary or any party in interest; that any act taken in violation of this Consent is void; and that the Company does not rely on sections 105(a) or 363 of the Bankruptcy Code to hold the governance structure in place;

8. Proposed Order. RESOLVED, that each signer approves, and consents to the entry of, the proposed form of order to be filed with the Governance Consents (the "Proposed Order"), and authorizes the Debtors' counsel to file this Consent with the other Governance Consents and the Proposed Order on or before October 28, 2026, and to present them at the hearing set for November 3, 2026;

9. No Admission; Reservation of Individual Rights. RESOLVED, that this Consent is not an admission by any signer of any fact or liability, or that any claim against any signer has merit; that each individual signer reserves all of his or her personal claims, defenses, and rights, including his or her own counsel and privileges, consistent with paragraph 8 of the Trustee Order and subject to the authority of the Independent Fiduciaries to determine the positions of Camp Mystic and NFP on them; that each signer may be heard in the Bankruptcy Court on any matter; and that nothing in this Consent is a vote to accept or reject any chapter 11 plan or the allowance, waiver, or release of any claim against or interest in any Debtor;

10. Prior Consents. RESOLVED, that this Consent supersedes every prior consent or resolution of the Company, including the written consent effective October 7, 2026, to the extent inconsistent with this Consent;

11. General Authority. RESOLVED, that the Managers are authorized, in the name and on behalf of the Company, for itself and as general partner of the Family Partnership, to execute and deliver all documents and take all other actions necessary or appropriate to carry out the purposes of these resolutions, subject to the orders of the Bankruptcy Court; and

12. Counterparts; Electronic Signatures. RESOLVED, that this Consent may be signed in counterparts, each of which is an original and all of which together are one instrument; that a signature delivered by electronic transmission or affixed through an electronic signature service is as effective as an original signature; and that this Consent shall be filed with the records of the proceedings of the Managers and the Members.

IN WITNESS WHEREOF, the undersigned have signed this Consent, each solely in the capacity stated, on the dates set forth below, and this Consent takes effect on the date of the last signature. By signing, each signer specifically agrees to and consents to the term that no one will remove the Independent Fiduciaries, revoke or limit their authority, or amend the governing documents of the Company in any way during the Commitment Period.

**MANAGERS:**

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Manager
Date: 10/27/2026, 2026

Signed by:
DD90206457FD492...
Richard G. Eastland, Jr.
Manager
Date: 10/27/2026, 2026

Signed by:
George A. Eastland
3FCC24AD98824CF...
George A. Eastland
Manager
Date: 10/26/2026, 2026

Signed by:
Edward Eastland
3ED69690A67F405...
Edward S. Eastland
Manager
Date: 10/27/2026, 2026

**MEMBERS:**

Signed by:
Willetta Eastland
ACE9AA42CC9B475...
Willetta A. Eastland
Member
Date: 10/27/2026, 2026

# EXHIBIT B

**Independent Fiduciary Written Acceptances**

1. Written Consent to Serve and Acceptance of Appointment of Mark Andrews

2. Written Consent to Serve and Acceptance of Election of the Honorable Craig A. Gargotta (Ret.)

# EXHIBIT B-1

Written Consent to Serve and Acceptance of Appointment
of Mark Andrews

**WRITTEN CONSENT TO SERVE AND ACCEPTANCE OF APPOINTMENT OF MARK ANDREWS**

I, Mark Andrews, give this written consent under paragraph 4(c) of the Bankruptcy Court's Order on Motions to Appoint a Chapter 11 Trustee [Docket No. 390] (the "Trustee Order"). Capitalized terms not defined here have the meanings given in the written consents of even date for Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("NFP"), Mystic Camps Family Partnership, Ltd. (the "Family Partnership"), and Mystic Camps Management, LLC ("MC Management") (together, the "Governance Consents"), and in the Bankruptcy Court's rulings stated on the record on October 21, 2026 (the "October 21 Ruling"). I consent as follows.

1. Acceptance of Appointment. I accept appointment as Independent Manager of Camp Mystic, LLC on the terms of the Governance Consents and the terms stated by the Bankruptcy Court in the October 21 Ruling.

2. Acceptance and Ratification of the Governance Documents. I have reviewed the Governance Consents and the governing documents adopted or amended under them, including the Second Amended & Restated Company Agreement of Camp Mystic, the Second Amended & Restated Bylaws of NFP, and the Fourth Amendment of the Limited Partnership Agreement of the Family Partnership (together with the Governance Consents, the "Governance Documents"). I do not sign the Governance Documents. By this consent, I accept, consent to, and ratify the Governance Documents as they apply to me, including each provision that appoints me, vests authority in me, or governs my removal, compensation, expenses, indemnification, and insurance, and I agree to be bound by those provisions.

3. Authority I Accept at Camp Mystic. I accept, and agree to exercise for Camp Mystic and its estate, sole and exclusive authority to manage Camp Mystic and to act for it in the Chapter 11 Cases and in every other matter, subject only to the Bankruptcy Code and the orders of the Bankruptcy Court, including:

(a) every Plan Matter, including the right to propose, file, amend, modify, withdraw, solicit, and consummate a chapter 11 plan and disclosure statement for Camp Mystic, to decide whether to file an amended plan, and to propose terms that explain how and by whom decisions for Camp Mystic will be made after confirmation, consistent with section 1129(a)(5) of the Bankruptcy Code;

(b) the Sale Process and any other sale, lease, or disposition of property outside the ordinary course of business;

(c) the defense and settlement, within or outside a chapter 11 plan, of the Tort Actions and every other claim arising from the July 4, 2025 flood, on behalf of Camp Mystic and its estate, including the selection and direction of counsel, the exercise of its rights under any insurance policy, and the allocation of shared policy limits and defense costs;

(d) every claim of Camp Mystic or its estate against an insider or affiliate, including the Eastland Parties, and every objection, counterclaim, setoff, recoupment, and defense to any claim asserted by an insider or affiliate, including indemnification claims;

(e) every decision of Camp Mystic in connection with any criminal, governmental, legislative, licensing, or regulatory investigation, including the pending investigation by the Texas Rangers: who represents Camp Mystic, how it responds to legal process, the scope of its cooperation, and any voluntary disclosure;

(f) exclusive control of the attorney-client privilege, work-product protection, and every other privilege of Camp Mystic, including whether to continue, modify, or end any common-interest or joint-defense agreement;

(g) the day-to-day administration of the chapter 11 case of Camp Mystic, including its schedules, statements of financial affairs, monthly operating reports, claims, executory contracts and unexpired leases, professionals, the direction of the Chief Restructuring Officer and the officers, and the appointment and removal of officers; and

(h) the information on which each of these decisions is made and the timing of each decision.

4. <u>Specific Undertakings.</u> Without limiting the authority I accept, I will:

(a) begin at once the evaluation of the estate's claims against insiders and affiliates, complete it in time to determine their treatment under any chapter 11 plan before votes are solicited, and protect them before any limitations period or other deadline expires, including those under section 546(a) of the Bankruptcy Code;

(b) address, as the Debtors represented to the Bankruptcy Court, the use and occupancy of estate property and vehicles by insiders, the accounting for flood insurance proceeds, accrued professional fees and expense reimbursements, and the designation of claims in the schedules of Camp Mystic;

(c) decide who represents Camp Mystic in any investigation and whether Camp Mystic remains a party to any joint-defense or common-interest arrangement;

(d) advocate solely for Camp Mystic and its estate on any matter in which its interests diverge from those of another Debtor, including the allocation of liability, insurance, and value among the estates; and

(e) gather information from the Eastland Parties and others as needed, while making every decision myself.

5. <u>Duties and Independence.</u> I will owe Camp Mystic, its estate, and its creditors the fiduciary duties of care and loyalty. I am independent of the Eastland Parties. I owe no duty to any Eastland Party in his, her, or its individual capacity. I will not act in any other capacity in the Chapter 11 Cases, including as an investor or acquirer, and for three years after my service ends neither I nor any affiliate of mine will invest in any Debtor or reorganized Debtor.

6. <u>Removal, Vacancy, and Commitment Period.</u> I understand and agree that during the Commitment Period, which runs for the duration of these cases as defined in the governing documents adopted under the Governance Consents, I may be removed only by order of the Bankruptcy Court for Cause, meaning my gross negligence or fraud in the performance of my duties, as found by the Bankruptcy Court after notice and a hearing, on motion of a party in interest;

that no one may revoke or limit my authority or amend the governing documents of any Debtor; and that any vacancy will be filled only as the Governance Consents provide. If I resign, I will give the Debtors, the Committee, and the United States Trustee reasonable notice and will cooperate in the transition to my successor. My service ends when the Commitment Period ends. Because it is not yet known whether, or which, chapter 11 plan will be confirmed, I will cooperate with, and assist in the transition to, any successor to my authority, whether a plan administrator, trustee, or other person, that a confirmed chapter 11 plan or an order of the Bankruptcy Court provides.

7. Compensation, Expenses, Indemnification, and Insurance. I will be compensated for my service at Camp Mystic at the rate of $15,000 per month, as fixed by the sole member of Camp Mystic, which may be paid to Trinity River Advisors at my direction, plus reimbursement of reasonable out-of-pocket expenses, as approved by the Bankruptcy Court after notice and an opportunity for parties in interest to be heard. I understand that compensation approved by the Bankruptcy Court will not be reduced or conditioned without further order of the Bankruptcy Court, that I will not file fee applications, and that the Debtors will disclose all amounts paid or reimbursed to me in their monthly operating reports. I accept indemnification on the terms provided in the Governance Consents. My service is conditioned on the binding of Side A independent director liability insurance covering me on terms and at a cost disclosed to, and approved by, the Bankruptcy Court.

8. Disclosure. The connections I disclosed in my declaration under Federal Rule of Bankruptcy Procedure 2014 [Docket No. 319] remain complete and accurate, including that my sister attended Camp Mystic as a child. I will promptly file a supplemental declaration if I learn of any additional connection with the Debtors, the Eastland Parties, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

9. Role of the Bankruptcy Court. I understand that the Bankruptcy Court will not decide internal disagreements of the Debtors, that settlements, uses of estate property outside the ordinary course of business, and dispositions of cash will come to the Bankruptcy Court in the ordinary way, and that parties in interest may be heard on any of them.

10. Effectiveness. This consent takes effect on the Effective Date of the Governance Consents and continues through the Commitment Period. A signature delivered by electronic transmission or affixed through an electronic signature service is as effective as an original signature.

DocuSigned by:
8492FE21581A48E...
Mark Andrews
Managing Director, Trinity River Advisors
Date: 10/27/2026, 2026

# EXHIBIT B-2

Written Consent to Serve and Acceptance of Election
of the Honorable Craig A. Gargotta (Ret.)

**WRITTEN CONSENT TO SERVE AND ACCEPTANCE OF ELECTION OF THE HONORABLE CRAIG A. GARGOTTA (RET.)**

I, The Honorable Craig A. Gargotta (Ret.), give this written consent under paragraph 4(c) of the Bankruptcy Court's Order on Motions to Appoint a Chapter 11 Trustee [Docket No. 390] (the "Trustee Order"). Capitalized terms not defined here have the meanings given in the written consents of even date for Camp Mystic, LLC ("Camp Mystic"), Natural Fountains Properties, Inc. ("NFP"), Mystic Camps Family Partnership, Ltd. (the "Family Partnership"), and Mystic Camps Management, LLC ("MC Management") (together, the "Governance Consents"), and in the Bankruptcy Court's rulings stated on the record on October 21, 2026 (the "October 21 Ruling"). I consent as follows.

1. Acceptance of Election. I accept election as Independent Director of Natural Fountains Properties, Inc. on the terms of the Governance Consents and the terms stated by the Bankruptcy Court in the October 21 Ruling.

2. Acceptance and Ratification of the Governance Documents. I have reviewed the Governance Consents and the governing documents adopted or amended under them, including the Second Amended & Restated Company Agreement of Camp Mystic, the Second Amended & Restated Bylaws of NFP, and the Fourth Amendment of the Limited Partnership Agreement of the Family Partnership (together with the Governance Consents, the "Governance Documents"). I do not sign the Governance Documents. By this consent, I accept, consent to, and ratify the Governance Documents as they apply to me, including each provision that elects me, vests authority in me, or governs my removal, compensation, expenses, indemnification, and insurance, and I agree to be bound by those provisions.

3. Authority I Accept at NFP. I accept, and agree to exercise for NFP and its estate, sole and exclusive authority to manage NFP and to act for it in the Chapter 11 Cases and in every other matter, subject only to the Bankruptcy Code and the orders of the Bankruptcy Court, including:

(a) every Plan Matter, including the right to propose, file, amend, modify, withdraw, solicit, and consummate a chapter 11 plan and disclosure statement for NFP, to decide whether to file an amended plan, and to propose terms that explain how and by whom decisions for NFP will be made after confirmation, consistent with section 1129(a)(5) of the Bankruptcy Code;

(b) the Sale Process and any other sale, lease, or disposition of property outside the ordinary course of business;

(c) the defense and settlement, within or outside a chapter 11 plan, of the Tort Actions and every other claim arising from the July 4, 2025 flood, on behalf of NFP and its estate, including the selection and direction of counsel, the exercise of its rights under any insurance policy, and the allocation of shared policy limits and defense costs;

(d) every claim of NFP or its estate against an insider or affiliate, including the Eastland Parties, and every objection, counterclaim, setoff, recoupment, and defense to any claim asserted by an insider or affiliate, including indemnification claims;

(e) every decision of NFP in connection with any criminal, governmental, legislative, licensing, or regulatory investigation, including the pending investigation by the Texas Rangers: who represents NFP, how it responds to legal process, the scope of its cooperation, and any voluntary disclosure;

(f) exclusive control of the attorney-client privilege, work-product protection, and every other privilege of NFP, including whether to continue, modify, or end any common-interest or joint-defense agreement;

(g) the day-to-day administration of the chapter 11 case of NFP, including its schedules, statements of financial affairs, monthly operating reports, claims, executory contracts and unexpired leases, professionals, the direction of the Chief Restructuring Officer and the officers, and the appointment and removal of officers; and

(h) the information on which each of these decisions is made and the timing of each decision.

4. Specific Undertakings. Without limiting the authority I accept, I will:

(a) begin at once the evaluation of the estate's claims against insiders and affiliates, complete it in time to determine their treatment under any chapter 11 plan before votes are solicited, and protect them before any limitations period or other deadline expires, including those under section 546(a) of the Bankruptcy Code;

(b) address, as the Debtors represented to the Bankruptcy Court, the use and occupancy of estate property and vehicles by insiders, the accounting for flood insurance proceeds, accrued professional fees and expense reimbursements, and the designation of claims in the schedules of NFP;

(c) decide who represents NFP in any investigation and whether NFP remains a party to any joint-defense or common-interest arrangement;

(d) advocate solely for NFP and its estate on any matter in which its interests diverge from those of another Debtor, including the allocation of liability, insurance, and value among the estates; and

(e) gather information from the Eastland Parties and others as needed, while making every decision myself.

5. Duties and Independence. I will owe NFP, its estate, and its creditors the fiduciary duties of care and loyalty. I am independent of the Eastland Parties. I owe no duty to any Eastland Party in his, her, or its individual capacity. I will not act in any other capacity in the Chapter 11 Cases, including as an investor or acquirer, and for three years after my service ends neither I nor any affiliate of mine will invest in any Debtor or reorganized Debtor.

6. Removal, Vacancy, and Commitment Period. I understand and agree that during the Commitment Period, which runs for the duration of these cases as defined in the governing documents adopted under the Governance Consents, I may be removed only by order of the Bankruptcy Court for Cause, meaning my gross negligence or fraud in the performance of my duties, as found by the Bankruptcy Court after notice and a hearing, on motion of a party in interest;

that no one may revoke or limit my authority or amend the governing documents of any Debtor; and that any vacancy will be filled only as the Governance Consents provide. If I resign, I will give the Debtors, the Committee, and the United States Trustee reasonable notice and will cooperate in the transition to my successor. My service ends when the Commitment Period ends. Because it is not yet known whether, or which, chapter 11 plan will be confirmed, I will cooperate with, and assist in the transition to, any successor to my authority, whether a plan administrator, trustee, or other person, that a confirmed chapter 11 plan or an order of the Bankruptcy Court provides.

7. <u>Compensation, Expenses, Indemnification, and Insurance.</u> I will serve without compensation and will be reimbursed for reasonable out-of-pocket expenses actually incurred in performing my duties, including mileage, lodging, and meals, as approved by the Bankruptcy Court after notice and an opportunity for parties in interest to be heard. I understand that I will not file fee applications and that the Debtors will disclose all amounts paid or reimbursed to me in their monthly operating reports. I accept indemnification on the terms provided in the Governance Consents. My service is conditioned on the binding of Side A independent director liability insurance covering me on terms and at a cost disclosed to, and approved by, the Bankruptcy Court.

8. <u>Disclosure.</u> The connections I disclosed in my declaration under Federal Rule of Bankruptcy Procedure 2014 [Docket No. 320] remain complete and accurate. I will promptly file a supplemental declaration if I learn of any additional connection with the Debtors, the Eastland Parties, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

9. <u>Role of the Bankruptcy Court.</u> I understand that the Bankruptcy Court will not decide internal disagreements of the Debtors, that settlements, uses of estate property outside the ordinary course of business, and dispositions of cash will come to the Bankruptcy Court in the ordinary way, and that parties in interest may be heard on any of them.

10. <u>Effectiveness.</u> This consent takes effect on the Effective Date of the Governance Consents and continues through the Commitment Period. A signature delivered by electronic transmission or affixed through an electronic signature service is as effective as an original signature.

Signed by:
Hon. Craig Gargotta
482E1A604EDA4B1
__________________________________
The Honorable Craig A. Gargotta (Ret.)
Independent Director
Date: 10/26/2026, 2026

# EXHIBIT C

**Compensation and Reimbursement Terms**

(i) Mark Andrews: $15,000 per month for service as Independent Manager of Camp Mystic, which may be paid to Trinity River Advisors at his direction, plus reimbursement of reasonable out-of-pocket expenses.

(ii) The Honorable Craig A. Gargotta (Ret.): No compensation for service as Independent Director of NFP; reimbursement of reasonable out-of-pocket expenses actually incurred in performing his duties, including mileage, lodging, and meals.

# EXHIBIT D

**Directors' and Officers' Liability Insurance**

*CAC Specialty Invoice No. 2627 to Camp Mystic, LLC, dated October 27, 2026, for Directors & Officers Side A – Primary $5M coverage: quoted premium of $90,000.00, surplus lines tax of $4,365.00, and stamping fee of $36.00, for a total of $94,401.00 (bank account information redacted).*

# EXHIBIT D

Directors' and Officers' Liability Insurance (Side A)
Terms and Cost

**Camp Mystic, LLC**
**2689 Highway 39**
**Hunt, TX 78024-3412**

| |
|---|
| LOOKUP CODE: CAMPMYS-01 |
| Inv #2627: Camp Mystic, LLC-FLP-ACG |
| Invoice Date: 10/27/2026 |

| Coverage | Description | Premium | |
|---|---|---|---|
| Directors & Officers Side A - Primary $5M | Quoted Premium | $ | 90,000.00 |
| | Surplus Lines Tax | $ | 4,365.00 |
| | Stamping Fee | $ | 36.00 |
| | **Grand Total** | **$** | **94,401.00** |

**Please reference account lookup code on your payment. Thanks!**

**CAC Specialty Client Trust Account ACH/Wire Instructions**

[redacted]

Please send remittance details to ar@cobbsallen.com.

If you receive any communication that CAC Specialty banking information has changed, you should immediately call (do not email) your CAC Specialty contact to notify them, and do not click on any links in that email message. We will NEVER change our banking information via email without utilizing a second form of confirmation. We will NEVER have any of our banks, or any other company, call on our behalf to make bank changes.